No. 21-30177

—————————————

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

—————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LEOPOLDO RIVERA-VALDES,

Defendant-Appellant.

—————————————

Appeal from the United States District Court
for the District of Oregon
Portland Division
No. 3:19-cr-00408-IM-1
The Honorable Karin J. Immergut

—————————————

OPENING BRIEF OF APPELLANT

—————————————

Kimberly-Claire E. Seymour
Assistant Federal Public Defender
859 Willamette Street, Suite 200
Eugene, OR 97405
(541) 465-6937

Attorney for Defendant-Appellant

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................. iii

Statement of Jurisdiction ........................................................... 1

Statement of Issues .................................................................. 2

Statement of the Case ............................................................... 3

    Nature of the Case ............................................................. 3

    Relevant Facts and Procedural History ......................................... 3

        A.    1994 Deportation Proceedings ............................................ 3

        B.    2019 Indictment for Illegal Reentry ...................................... 7

    Custody Status ................................................................ 8

Summary of Argument ................................................................ 9

Argument ............................................................................ 10

    Standard of Review ........................................................... 10

I.    The District Court Erred In Finding That The 1994 Removal Proceeding Satisfied Due Process For Purposes Of 18 U.S.C. § 1326(d)(3). ................................................................. 10

        A.    Under Earlier Precedent, The INA's Notice Requirement Was Deemed Satisfied And Constitutionally Sufficient By A Single Certified Mail Notice Sent To The Respondent's Last Provided Address, Regardless Of Whether The Notice Was Returned. ............ 11

        B.    In 2006, The Supreme Court's Decision In *Jones v. Flowers* Established That When A Certified Mail Notice Is Returned

"Unclaimed," Due Process Requires That The Government Take Additional Reasonable Steps To Provide Notice. ..............................14

C. *Jones*'s Constitutional Notice Standard Should Apply In The Deportation Context, Particularly Given A Noncitizen's Grave Interest In Remaining In The United States. .......................................17

D. The District Court Improperly Relied On Inapposite Case Law. .......19

E. This Court Should Remand To The District Court To Consider In The First Instance Whether The Due Process Violation Was Prejudicial And Whether The Other Prerequisites For Collateral Review Under § 1326(D) Were Met. .................................................21

Conclusion ..............................................................................................25

Statement of Related Cases...................................................................26

## INDEX TO APPENDIX

# TABLE OF AUTHORITIES

**Page**

## SUPREME COURT OPINIONS

*Cty. Allegheny v. ACLU Greater Pittsburg Chapter*,
492 U.S. 573 (1989) ............................................................. 18

*Dusenbery v. United States*,
534 U.S. 161 (2002) ............................................................. 14

*Fong Haw Tan v. Phelan*,
333 U.S. 6 (1948) ............................................................. 19

*Jones v. Flowers*,
547 U.S. 220 (2006) ............................................... 9, 13, 14, 15

*Kungys v. United States*,
485 U.S. 759 (1988) ............................................................. 24

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ...................................................... 13, 14

*Niz-Chavez v. Garland*,
141 S. Ct. 1474 (2021) ...................................................... 18-19

*Ramos v. Louisiana*
140 S. Ct. 1390 (2020) ......................................................... 17

*Sessions v. Dimaya*,
138 S. Ct. 1204 (2018) ......................................................... 19

*United States v. Mendoza-Lopez*,
481 U.S. 828 (1987) ............................................................. 10

*United States v. Palomar-Santiago*,
141 S. Ct. 1615 (2021) ......................................................... 10

*Walker v. City of Hutchinson*,
352 U.S. 112 (1956) ...................................................... 14, 20

iii

# FEDERAL COURT OPINIONS

*Arrieta v. INS*,
   117 F.3d 429 (9th Cir. 1997) .................................................. 13, 20, 21

*Dobrota v. INS*,
   311 F.3d 1206 (9th Cir. 2002) .................................................. 13, 19

*Echavarria v. Pitts*,
   641 F.3d 92 (5th Cir. 2011) ........................................................ 18

*Farhoud v. INS*,
   122 F.3d 784 (9th Cir. 1997) ........................................................ 11

*Farhoud v. INS*,
   122 F.3d 794 (9th Cir. 1997) ..................................................... 9, 13

*Flores-Chavez v. Ashcroft*,
   362 F.3d 1150 (9th Cir. 2004) .................................................. 9, 13

*Miller v. Gammie*,
   335 F.3d 889 (9th Cir. 2003) (en banc) .................................. 17-18, 20

*Olea-Reyes v. Gonzales*,
   177 F. App'x 697 (9th Cir. 2006) ................................................. 24

*Raya-Vaca*,
   771 F.3d (9th Cir. 2014) .............................................................. 22

*Rendon v. Holder*,
   400 F. App'x 218 (9th Cir. 2010) ................................................. 18

*United States v. Baldon*,
   956 F.3d 1115 (9th Cir. 2020) ...................................................... 20

*United States v. Melendez-Castro*,
   671 F.3d 950 (9th Cir. 2012) ........................................................ 23

*United States v. Pallares-Galan*,
   359 F.3d 1088 (9th Cir. 2004) ...................................................... 23

*United States v. Reyes-Bonilla*,
   671 F.3d 1036 (9th Cir. 2012) .................................................. 10, 22

*United States v. Shelby*,
939 F.3d 975 (9th Cir. 2019) ............................................................. 20

*United States v. Ubaldo-Figueroa*,
364 F.3d 1042 (9th Cir. 2004) ..................................................... 11, 22

*United States v. Zarate-Martinez*,
133 F.3d 1194 (9th Cir. 1998) .......................................................... 10

*Urbina-Osejo v. INS*,
124 F.3d 1314 (9th Cir. 1997) ..................................................... 13, 21

## UNITED STATES CODE

8 U.S.C. § 1252b ...................................................................... 11, 12

8 U.S.C. § 1254(e)(1) (1994) ............................................................. 3

8 U.S.C. § 1326 ................................................... 1, 3, 10, 21, 22, 24

18 U.S.C. § 3231 ............................................................................. 1

28 U.S.C. § 1291 ............................................................................. 1

28 U.S.C. § 1294 ............................................................................. 1

## STATE CASES

*In re Grijalva*,
21 I & N. Dec. 27 (BIA 1995) ...................................................... 12, 21

*Matter of M-R-A-*,
24 I. & N. Dec. 665 (BIA 2008) ........................................................ 12

**STATEMENT OF JURISDICTION**

The district court had original jurisdiction over the defendant's criminal prosecution for a violation of 8 U.S.C. § 1326 pursuant to 18 U.S.C. § 3231. The district court entered its final judgment of conviction on August 9, 2021. ER-4. The defendant filed a timely notice of appeal on August 13, 2021. ER-18. This Court has appellate jurisdiction under 28 U.S.C. §§ 1291 and 1294.

## STATEMENT OF ISSUES

Due process in deportation proceedings requires notice of the hearing time and location, which must be provided in a manner "reasonably calculated" to reach the respondent. Here, a single hearing notice was sent by certified mail to an address where mail had already been returned as undeliverable. The notice was returned as unclaimed, and no further steps were taken to effect notice. The question on appeal is:

I.    Whether Mr. Rivera-Valdes's due process rights were violated when immigration authorities ordered his deportation *in absentia* despite clear evidence that he did not receive notice of his deportation hearing, by way of mail returned as both undeliverable and "unclaimed," and no further steps were taken to provide notice.

## STATEMENT OF THE CASE

**Nature of the Case**

This is the direct appeal from the judgment of conviction for violating 8 U.S.C. § 1326 entered on August 9, 2021, by the Honorable Karen J. Immergut, United States District Judge for the District of Oregon. ER-4. Mr. Rivera-Valdes seeks this Court's review of the Opinion and Order entered on August 11, 2020, denying his motion to dismiss the indictment. ER-11.

**Relevant Facts and Procedural History**

### A.     1994 Deportation Proceedings

Mr. Rivera-Valdes was ordered deported from the United States at a hearing in August 1994. ER-179. Immigration officials and the Immigration Judge knew he was not informed of the hearing because he never received notice of its date, time, or location. ER-149, 179. They proceeded nonetheless. ER-179.

Mr. Rivera-Valdes is a Mexican national who first arrived in the United States in 1992. ER-12. In December 1993, he paid a third party to prepare an asylum application that falsely stated he was a citizen of Guatemala, which he submitted to the Immigration and Naturalization Service (INS). ER-173. The application listed his address as 4037 N. Cleveland Avenue, Portland, Oregon. ER-172.

3

On January 28, 1994, the INS mailed a notice to the Cleveland Avenue address, acknowledging receipt of Mr. Rivera-Valdes's request for asylum. ER-112. On February 3, 1994, and February 8, 1994, the INS mailed additional notices to the Cleveland Avenue address, which stated that Mr. Rivera-Valdes's employment authorization was approved and instructed him to appear in person at the INS office in Portland, Oregon, within forty-five days to pick up his employment authorization card. ER-113–20.

On March 3, 1994, Mr. Rivera-Valdes appeared at the Portland INS office to obtain his employment authorization. ER-173. By that point, however, INS officials had determined that Mr. Rivera-Valdes had purchased his asylum application from a third party (who had sold multiple copies of the birth certificate and was prosecuted). ER-174. Mr. Rivera-Valdes voluntarily withdrew the application. ER-175.

On the same day, March 3, 1994, INS officers personally served Mr. Rivera-Valdes with an Order to Show Cause (OSC), which stated that his removal hearing would be held at an address and on a date "to be calendared." ER-124. Page 4 of the OSC contained the following warning:

> You are required by law to provide immediately in writing an address (and telephone number, if any) where you can be contacted. You are required to provide written notice, within five (5) days, of any change in your address or telephone number to the office of the Immigration

4

Judge listed in this notice. Any notices will be mailed only to the last address provided by you. If you are represented, notice will be sent to your representative. If you fail to appear at the scheduled deportation hearing, you will be ordered deported *in your absence* if it is established that you are deportable and you have been provided the appropriate notice of hearing.

ER-125 (emphasis in original). Mr. Rivera-Valdes signed the OSC, and an officer also signed to affirm that she had read the OSC to Mr. Rivera-Valdes in Spanish. ER-126. The first page of the OSC, which was prepared by the INS in type-writing, listed the Cleveland Avenue address as Mr. Rivera-Valdes's address. ER-122.

On April 20, 1994, the INS District Counsel filed the OSC with the Office of the Immigration Judge and moved the court to schedule the case for a hearing. ER-128. A copy of the OSC mailed to the Cleveland Avenue address was returned as "not deliverable" by the United States Postal Service. ER-129.

On April 25, 1994, the Office of the Immigration Judge sent a hearing notice by certified mail to the Cleveland Avenue address, instructing Mr. Rivera-Valdes to appear for a deportation hearing on August 12, 1994. ER-130. The hearing notice was returned as "unclaimed" on May 23, 1994. ER-131, 132. Unclaimed mail does not signify that the mail was refused; it simply means that no one claimed it.[1]

---

[1] "Unclaimed" indicates that the addressee abandoned or failed to call for mail. *507 Mailer Services*, USPS Postal Explorer, https://pe.usps.com/text/dmm300/507.htm (last visited April 5, 2022).

The United States offered no proof in the record below to show that Mr. Rivera-Valdes was actually served with the hearing notice or received notice of the hearing date. Mr. Rivera-Valdes submitted an affidavit stating that he never received notice that the deportation hearing was scheduled and did not know he had been ordered to appear at that hearing. ER-158, 159.

The deportation hearing took place as scheduled on August 12, 1994. ER-179. Mr. Rivera-Valdes did not appear. ER-179. The Immigration Judge found that he was properly served with the OSC and "duly notified" of the hearing, even though the hearing notice had been returned "unclaimed" and an earlier mailing was returned as "not deliverable." ER-149, 179. The Immigration Judge ordered Mr. Rivera-Valdes deported *in absentia* and issued a warrant for his deportation that same day. ER-179, 180. On August 30, 1994, the INS sent Mr. Rivera-Valdes a Form I-166 instructing him to appear at the INS office for deportation. ER-136. The letter was sent by certified mail to the Cleveland Avenue address and was returned as "not deliverable." ER-137.

6

On October 17, 2006, Immigration and Customs Enforcement (ICE) agents found Mr. Rivera-Valdes living in Portland, Oregon.[2] ER-139. He was deported on October 21, 2006, pursuant to the August 1994 warrant of deportation. ER-141.

### B.    2019 Indictment for Illegal Reentry

On April 8, 2019, ICE officers learned of Mr. Rivera-Valdes's presence in the District of Oregon and referred the case for criminal prosecution. ER-185. The federal grand jury indicted Mr. Rivera-Valdes for illegal reentry on September 10, 2019, alleging return to the United States after his August 1994 deportation order. ER-185. Mr. Rivera-Valdes filed a motion to dismiss the indictment, alleging the underlying deportation proceedings violated his due process rights because he had not received adequate notice. ER-160. The government responded, arguing that Mr. Rivera-Valdes had not established a due process violation, that he had not established prejudice, and that he had not satisfied the procedural prerequisites for collateral review. ER-84.

Following a hearing, the district court denied Mr. Rivera-Valdes's motion to dismiss the indictment. ER-11, 193. The district court held that Mr. Rivera-Valdes failed to show that the government's method of service was not "reasonably

---

[2] ICE is a successor agency to INS, which was disbanded on March 1, 2003. *Overview of INS History*, USCIS History Office and Library, 11 (2012), https://www.uscis.gov/sites/default/files/document/fact-sheets/INSHistory.pdf.

calculated" to reach him and that the procedures provided sufficient due process. ER-18. Because the district court found that Mr. Rivera-Valdes's due process rights were not violated, it did not reach the government's remaining arguments. ER-19 n.2.

On August 9, 2021, Mr. Rivera-Valdes entered a conditional guilty plea, preserving the right to appeal the district court's denial of his motion to dismiss. ER-49, 50. The district court accepted Mr. Rivera-Valdes's plea and proceeded to sentencing. ER-36. Mr. Rivera-Valdes filed a timely notice of appeal. ER-187.

**Custody Status**

After entering a conditional guilty plea, Mr. Rivera-Valdes was sentenced to imprisonment for a period of time served, followed by one year of supervised release. ER-5, 6. Mr. Rivera-Valdes remains out of custody serving the one-year term of supervised release.

## SUMMARY OF ARGUMENT

Individuals facing deportation are entitled to due process under the Fifth Amendment, which encompasses the right to a full and fair hearing and notice of that hearing. *Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir. 1997). To satisfy due process requirements, the notice of deportation proceedings must be reasonably calculated to reach the individual facing removal. *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1155 (9th Cir. 2004).

Here, the evidence below established that the INS District Counsel and the Office of the Immigration Judge conducted Mr. Rivera-Valdes's removal hearing in his absence, despite knowing that he had never received notice of that hearing. In accord with the Supreme Court decision in *Jones v. Flowers*, 547 U.S. 220 (2006), this Court should find that the notice of hearing returned by the post office as "unclaimed" is not notice that was "reasonably calculated" to reach Mr. Rivera-Valdes. This Court should reverse the denial of Mr. Rivera-Valdes's motion to dismiss and remand for further proceedings.

## ARGUMENT

**Standard of Review**

This Court reviews de novo "a claim that a defect in a prior removal proceeding precludes reliance on the final removal order in a subsequent § 1326 proceeding." *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1042 (9th Cir. 2012).

## I. The District Court Erred in Finding That The 1994 Deportation Proceeding Satisfied Due Process For Purposes Of 18 U.S.C. § 1326(d)(3).

In a criminal prosecution under 8 U.S.C. § 1326, "the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987)). This opportunity is codified at 8 U.S.C. § 1326(d), which empowers illegal reentry defendants to challenge the fundamental fairness of the deportation orders underlying the charged crime. To prevail, defendants must show that: "(1) they have exhausted any administrative remedies, (2) they were deprived of the opportunity for judicial review, and (3) the entry of the order was fundamentally unfair." *United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1620 (2021) (quoting 8 U.S.C. § 1326(d) (internal quotation marks and alterations omitted)). An underlying deportation order is "fundamentally unfair" if defects in the proceedings violated the

10

defendant's due process rights and caused prejudice. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004).

Here, the district court erred in refusing to dismiss the indictment. The only question the district court addressed was whether Mr. Rivera-Valdes established that his right to due process was violated. This Court should reverse because Supreme Court precedent has established that additional process is required when a notice sent only by certified mail is returned "unclaimed."

A.   **Under Earlier Precedent, The INA's Notice Requirement Was Deemed Satisfied And Constitutionally Sufficient By A Single Certified Mail Notice Sent To The Respondent's Last Provided Address, Regardless Of Whether The Notice Was Returned.**

Individuals facing deportation are entitled to due process under the Fifth Amendment, encompassing a full and fair hearing and notice of that hearing. *Farhoud v. INS*, 122 F.3d 784, 796 (9th Cir. 1997). The Immigration and Nationality Act (INA) in effect in 1994 set forth notice requirements applicable to deportation proceedings. The statute required that the government prove "by clear, unequivocal, and convincing evidence" that "written notice . . . has been provided to the alien or the alien's counsel of record" in order for an immigration judge to order removal *in absentia*. 8 U.S.C. § 1252b(c)(1).

11

Section 1252b(a)(2)(A) specifies that written notice of deportation proceedings "shall be given in person to the alien (or, if personal service is not practicable, written notice shall be given by certified mail to the alien or to the alien's counsel of record, if any) in the order to show cause or otherwise, of (i) the time and place at which proceedings will be held." The term "certified mail" is defined as "certified mail, return receipt requested." 8 U.S.C. § 1252b(f)(1). The INA further provides that the Order to Show Cause must specify the requirement that the alien immediately provide the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted, and immediately provide a written record of any change of address or telephone number. 8 U.SC. § 1252b(a)(1)(F)(i) and (ii).

The Board of Immigration Appeals (BIA) has evaluated the sufficiency of notice under the INA on several occasions. The BIA has acknowledged a presumption of delivery when notice is sent by certified mail. *Matter of M-R-A-*, 24 I. & N. Dec. 665, 673 (BIA 2008). In *In re Grijalva*, 21 I & N. Dec. 27, 37 (BIA 1995), the BIA held that a notice of hearing sent by certified mail to the individual's last known address and returned as "unclaimed" satisfied the INA's statutory notice requirements.

12

Appellate courts have also evaluated the constitutionality of notice procedures under the INA on review of BIA opinions. These decisions establish that an individual facing removal "does not have to actually receive notice of a deportation hearing in order for the requirements of due process to be satisfied." *Farhoud*, 122 F.3d at 796. Instead, due process requires that an individual facing removal receive notice of their deportation hearings that is "reasonably calculated" to reach them. *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1155 (9th Cir. 2004); *see Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) (evaluating the adequacy of notice given to beneficiaries of a common trust fund). The government generally satisfies notice requirements "by mailing notice of the hearing to an alien at the address last provided to the INS." *Dobrota v. INS*, 311 F.3d 1206, 1211 (9th Cir. 2002) (citing *Urbina-Osejo v. INS*, 124 F.3d 1314, 1317 (9th Cir. 1997) and *Arrieta v. INS*, 117 F.3d 429, 431–32 (9th Cir. 1997)).

While the district court here found that due process was satisfied when the INS sent notice by certified mail to Mr. Rivera-Valdes's last provided address, superseding Supreme Court precedent instructs that due process requires further efforts in the particular circumstances presented here—specifically, when the government has only made a single attempt at certified mail notice and becomes aware that that attempt at notice has failed. *Jones v. Flowers*, 547 U.S. 220 (2006).

13

**B.** **In 2006, The Supreme Court's Decision In *Jones v. Flowers* Established That When A Certified Mail Notice Is Returned "Unclaimed," Due Process Requires That The Government Take Additional Reasonable Steps To Provide Notice.**

In 2006, in *Jones v. Flowers*, the Supreme Court addressed the notice required before the State of Arkansas could constitutionally extinguish a property owner's interest in his home. 547 U.S. 220 (2006). There, the State twice mailed certified letters to Jones's address. *Id*. at 223–24. Nobody was home to sign for the letters and nobody retrieved them from the post office within 15 days, so the letters were returned marked "unclaimed." *Id.*

The Court reiterated its precedent that notice is constitutionally sufficient it if is "reasonably calculated" to reach the intended recipient when sent, but it also made clear that the "notice required will vary with circumstances and conditions." *Id.* at 226 (citing *Dusenbery v. United States*, 534 U.S. 161, 170 (2002), *Mullane*, 339 U.S. at 314, and *Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956)). The Court rejected the proposition that a person who actually desired to inform a property owner of an impending tax sale of a house would do nothing more when a certified letter sent to the property's owner was returned unclaimed. *Id.* at 229. Chief Justice Roberts explained that "[f]ailure to follow up would be unreasonable, despite the fact that the letters were reasonably calculated to reach their intended recipients *when delivered to the postman*." *Id.* (emphasis added). The Court analogized to a

14

situation in which letters taken by the postman were immediately "dropped . . . down a storm drain[.]" *Id*. Though "reasonably calculated" to reach the recipient at the outset, due process would require the party to make additional efforts at notice. *Id.* The Court noted that most courts of appeals and state supreme courts have decided that "when the government learns its attempt at notice has failed, due process requires the government to do something more[.]" *Id.* at 227 (citing cases).

The respondent in *Jones* argued that reasonable follow-up measures were not required because notice was sent to the address that Jones had provided, and Jones had a legal obligation to keep that address updated. *Id.* at 231. The Court rejected those arguments, finding that "failure to comply with a statutory obligation to keep [one's] address updated [does not] forfeit[ ] [one's] right to constitutionally sufficient notice." *Id.* at 232 (citing Br. for United States as Amicus Curiae, at 16 n.5, *Jones v. Flowers*, 547 U.S. 220 (2006) ("[A] party's ability to take steps to safeguard its own interests does not relieve the State of its constitutional obligation.")).

Here, the district court reasoned that the certified mail notice of hearing comported with due process because Mr. Rivera-Valdes had been warned of his duty to report a change in address. ER-17–18. But *Jones* clearly contravenes that analysis. In *Jones*, the Court found the unclaimed notice constitutionally insufficient under

nearly identical circumstances. Instead, just like the unclaimed mailings in *Jones*, when Mr. Rivera-Valdes's notice of hearing was returned as unclaimed, the immigration judge "had good reason to suspect . . . that [Mr. Rivera-Valdes] was no better off than if the notice had never been sent." *Id.* at 230 (internal quotations omitted). That is especially the case here, where the INS's earlier attempted mailing of the Order to Show Cause and the motion to schedule a hearing, sent to the same address, had already been returned as "undeliverable" just weeks before the hearing notice was sent.

As the Court explained in *Jones*:

> Using certified mail provides the State with documentation of personal delivery and protection against false claims that notice was never received. That added security, however, comes at a price—the State also learns when notice has not been received. . . . [T]he State cannot simply ignore that information[.]

*Id.* at 237.

The Supreme Court in *Jones* identified additional reasonable steps that the State should have taken to provide notice, including: "resend[ing] the notice by regular mail, so that a signature was not required," and "post[ing] notice on the front door," or "address[ing] otherwise undeliverable mail to 'occupant.'" *Id.* at 235. In this case, the immigration court could have easily undertaken one or more of these additional, reasonable steps upon return of the unclaimed notice letter. Where the

16

government "is exerting extraordinary power" against Mr. Rivera-Valdes, an individual facing removal from the country, "[i]t is not too much to insist that the [government] do a bit more to attempt to let him know about [the removal hearing] when the notice letter addressed to him is returned unclaimed." *Id.* at 239.

This Court should find that, upon the immigration court's receipt of the returned unclaimed notice, the steps taken were not "reasonably calculated" to provide actual notice; there were additional, reasonable measures available to provide notice, and proceeding *in absentia* without additional follow up was "unreasonable."

### C. *Jones*'s Constitutional Notice Standard Should Apply In The Deportation Context, Particularly Given A Noncitizen's Grave Interest In Remaining In The United States.

Although *Jones* was not an immigration case arising under the INA, its constitutional implications are equally applicable here. "It is usually a judicial decision's reasoning—its *ratio decidendi*—that allows it to have life and effect in the disposition of future cases." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1404 (2020); *see also Ramos*, 140 S. Ct. at 1416 n.6 (Kavanaugh, J., concurring in part) ("In the American system of stare decisis, the result and the reasoning each independently have precedential force."); *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) ("'[T]he principle of *stare decisis* directs us to adhere not only to the holdings

17

of our prior cases, but also to their explications of the governing rules of law.")
(quoting *Cty. Allegheny v. ACLU Greater Pittsburg Chapter*, 492 U.S. 573, 668
(1989) (Kennedy, J., concurring in part and dissenting in part)).

Indeed, *Jones* has been applied in a variety of circumstances outside of the
property forfeiture context. *See Echavarria v. Pitts*, 641 F.3d 92, 95 n.2 (5th Cir.
2011) (collecting cases). This Court in *Rendon v. Holder*, 400 F. App'x 218 (9th Cir.
2010) applied *Jones* to an analysis of proper notice in the immigration context where
a petitioner had applied for legalization. Although unpublished, its reasoning fully
applied *Jones* to the immigration actions, finding that "[t]he INS took the necessary
additional reasonable steps" to locate the petitioner's address after notice was sent
by certified mail and returned unclaimed. *Id.* at 219.

Moreover, the *Jones* standard must be applied in this context given the
interests at stake. The *Jones* Court explained that the constitutional adequacy of a
particular form of notice is assessed by balancing the government's interest against
"the individual interest sought to be protected" by the Constitution. 339 U.S. at 315.
The opportunity to appear before an immigration judge when facing removal is
paramount. "A notice to appear serves as the basis for commencing a grave legal
proceeding. As the government has acknowledged, it is like an indictment in a
criminal case . . . ." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1482 (2021) (citing Tr.

of Oral Arg. in *Pereira v. Sessions*, O. T. 2017, No. 17–459, p. 39) (internal quotations omitted). In applying the full measure of the void-for-vagueness doctrine in the immigration context, the Supreme Court stated that due process notice applied to deportation proceedings "'in view of the grave nature of deportation,' . . . a 'drastic measure,' often amounting to lifelong 'banishment or exile[.]'" *Sessions v. Dimaya*, 138 S. Ct. 1204, 1213 (2018) (quoting *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948)).

Mr. Rivera-Valdes's ability to address an immigration judge when facing deportation from the United States is a monumentally significant interest that required the government to do more to inform him of his hearing than send a single notice to an address that has already proven problematic, especially once that notice was returned unclaimed. "Although the INS undeniably has a significant interest in enforcing rules surrounding its proceedings, mechanical adherence to these rules cannot take precedence over" Mr. Rivera-Valdes's interest in the opportunity for a "full and fair hearing" guaranteed him by due process. *Dobrota*, 311 F.3d at 1213.

### D. The District Court Improperly Relied On Inapposite Case Law.

The district court erred by failing to address whether the notice provided to Mr. Rivera-Valdes was constitutionally sufficient under the standard set forth in *Jones*, which clarified the meaning of "reasonably calculated" in the particular

factual context at issue here. "'The issues decided by the higher court need not be identical,' only that the Supreme Court 'undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.'" *United States v. Baldon*, 956 F.3d 1115, 1121 (9th Cir. 2020) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)); *accord United States v. Shelby*, 939 F.3d 975, 978 (9th Cir. 2019). The district court incorrectly relied on factually distinguishable decisions and cases where notice was deemed to be *statutorily* sufficient, without addressing constitutional due process.

The district court's reliance on *Arrieta v. INS*, 117 F.3d 429 (9th Cir. 1997), for example, was improper. In *Arrieta*, this Court reviewed a petitioner's appeal from a decision of the BIA. *Id.* at 430. The Court was not presented with a constitutional question addressing the requirements of due process. Instead, it considered solely whether the *statutory* notice requirements of the INA were satisfied. *Id.* at 431. Yet, as illustrated in *Jones*, complying with a statute's notice procedures is not always sufficient to comply with constitutional due process, as the "notice required will vary with circumstances and conditions." 547 U.S. 220, 227 (citing *Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956)).

*Arrieta* is also factually distinguishable. There, the notice of deportation hearing was returned "attempted," not "unclaimed," and there was no prior

20

indication that the petitioner's address was not good. *Id.* at 431. In any event, *Arrieta* preceded the Supreme Court's articulation of the constitutional notice standard in *Jones*.

The district court's reliance on the BIA's decision in *In re Grijalva*, 21 I & N. Dec. 27, 37 (BIA 1995), is similarly misplaced. As in *Arrieta*, the BIA in *Grijalva* assessed whether notice was statutorily sufficient pursuant to the INA. The decision made no finding about the notice required under the Due Process Clause. *Id.*

Finally, the district court's citation to *Urbina-Osejo v. INS*, 124 F.3d 1314 (9th Cir. 1997), is also inapplicable to the circumstances here. In *Urbina-Osejo*, the immigration judge sent notice of the removal hearing to the address provided by the petitioner, but the notice was not returned as undeliverable. *Id.* at 1316. Therefore, when the immigration judge held the removal hearing in the petitioner's absence, it had no evidence that there was improper delivery or nondelivery.

**E.    This Court Should Remand To The District Court To Consider In The First Instance Whether The Due Process Violation Was Prejudicial And Whether The Other Prerequisites For Collateral Review Under § 1326(d) Were Met.**

When due process errors marred the defendant's underlying removal order, the second prong of establishing that a removal order was "fundamentally unfair" requires the defendant to show that the errors were prejudicial. Prejudice entails a

showing of "a 'plausible' ground for relief from deportation." *Ubaldo-Figueroa*, 364 F.3d at 1050. To meet the plausibility threshold, the defendant need not show that he "actually would have been granted relief." *Id.* It is sufficient to put forth "some evidentiary basis on which relief could have been granted." *United States v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014) (quoting *Reyes-Bonilla*, 671 F.3d at 1049–50). Section 1326(d) also requires a defendant on collateral review to establish exhaustion of administrative remedies and deprivation of judicial review.

In the district court, Mr. Rivera-Valdes argued that he satisfied each requirement for collateral review under § 1326(e). ER-160. He contended that the due process violations were prejudicial because he had plausible grounds for voluntary departure. ER-167–70. Mr. Rivera-Valdes's lack of serious negative equities—no criminal history and no prior removals—provided a plausible basis for voluntary departure relief. ER-169. As to § 1326(d)(1) and (2), Mr. Rivera-Valdes argued .that he had no reason or opportunity to pursue a motion to reopen. ER-78. Because his deportation hearing was held *in absentia*, he was never informed of his ability to file a motion to reopen his deportation proceedings. ER-78. Furthermore, when he was arrested by ICE agents in 2006, he was deported a mere four days later, which afforded him no opportunity to pursue a motion to reopen. ER-78. This

resulted in a deprivation of his right to appeal the IJ's decision to the BIA. ER-76–79, 170.

However, because the district court erroneously concluded that no due process violation occurred, it did not reach the question of prejudice. ER-19 n.2. Rather than deciding that issue in the first instance on appeal, this Court should remand the case back to the district court with instructions to consider whether the due process error was prejudicial. *See United States v. Melendez-Castro*, 671 F.3d 950, 954-55 (9th Cir. 2012) ("We remand to the district court for consideration of prejudice in the first instance, and the district court should set forth on the record the reasons for its ultimate decision."); *United States v. Pallares-Galan*, 359 F.3d 1088, 1104 (9th Cir. 2004) ("[T]he district court did not reach the issue of prejudice, and we prefer that it consider it initially.").

Although the government below attempted to characterize Mr. Rivera-Valdes as statutorily ineligible for voluntary departure, that is not consistent with precedent. Below, the government argued that Mr. Rivera-Valdes would have been statutorily precluded from applying for voluntary departure relief because he lacked "good moral character." 8 U.S.C. § 1254(e)(1) (1994). Specifically, the government argued that Mr. Rivera-Valdes admitting to making a false, fictitious, or fraudulent statement regarding his place of birth and using a false birth certificate knowing it

contained false information. However, the Supreme Court has held that the category of noncitizen statutorily precluded from voluntary departure relief for giving false testimony for the purpose of obtaining immigration benefits is narrowly "limited to oral statements made under oath." *Kungys v. United States*, 485 U.S. 759, 780 (1988) (recognizing that "falsified documents and statements not made under oath" are not "false testimony" for the purposes of defining good moral character). Thus, Mr. Rivera-Valdes was not statutorily precluded from relief.

Nor was voluntary departure relief implausible. By voluntarily and timely recanting the materials that contained misrepresentations, Mr. Rivera-Valdes effectively "purge[d] [the] misrepresentation[s] and remove[d] [them] from further consideration[.]" *Olea-Reyes v. Gonzales*, 177 F. App'x 697, 700 (9th Cir. 2006) (citation omitted) (finding that petitioner was not removable for willfully misrepresenting a material fact because he promptly retracted his initial claim to United States citizenship, but, for unrelated reasons, petitioner was ineligible for voluntary departure). Thus, Mr. Rivera-Valdes had plausible grounds for a discretionary grant of voluntary departure.

Having established that his 1994 deportation order was entered in violation of due process, this Court should remand the matter to the district court to address the remaining elements of his collateral attack under 8 U.S.C. § 1326(d).

**Conclusion**

For the reasons set forth herein, this Court should reverse the judgment of conviction and the opinion and order denying Mr. Rivera-Valdes' motion to dismiss the indictment and remand for further proceedings.

Respectfully submitted this 29th day of April, 2022.

*/s/ Kimberly-Claire E. Seymour*
Kimberly-Claire E. Seymour
Attorney for Defendant-Appellant

## STATEMENT OF RELATED CASES

I, Kimberly-Claire E. Seymour, undersigned counsel of record for defendant-appellant, Leopoldo Rivera-Valdes, state pursuant to the Ninth Circuit Court of Appeals Rule 28-2.6, that I know of no other cases that should be deemed related.

Dated this 29th day of April, 2022.

*/s/ Kimberly-Claire E. Seymour*
Kimberly-Claire E. Seymour
Attorney for Defendant-Appellant