No. 21-30177

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

UNITED STATES OF AMERICA,

PLAINTIFF-APPELLEE,

V.

LEOPOLDO RIVERA-VALDES,

DEFENDANT-APPELLANT.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

THE HONORABLE KARIN J. IMMERGUT, U.S. DISTRICT JUDGE
D.C. NO. 3:19-CR-00408-IM
_____

ANSWERING BRIEF OF PLAINTIFF-APPELLEE
_____

SCOTT ERIK ASPHAUG
UNITED STATES ATTORNEY
DISTRICT OF OREGON
AMY E. POTTER
APPELLATE CHIEF
**SARAH BARR**
ASSISTANT UNITED STATES ATTORNEY
1000 SW 3RD AVENUE, SUITE 600
PORTLAND, OREGON 97204
TELEPHONE: (503) 727-1000

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................ii

STATEMENT OF JURISDICTION & BAIL STATUS.................................. 1

STATEMENT OF ISSUE PRESENTED ....................................................... 1

STATEMENT OF FACTS ................................................................................ 1

SUMMARY OF THE ARGUMENT ............................................................... 5

ARGUMENT ..................................................................................................... 6

    A.  Standard of Review..................................................................................... 6

    B.  The District Court Properly Denied Defendant's Motion to Dismiss
        the Indictment ......................................................................................... 6

        1.  Defendant Failed to Show a Due Process Violation ....................... 8

            a.  The Notice of Hearing was Constitutionally Adequate............................ 8

            b.  *Jones* Does not Supersede This Court's Holding that Certified
               Mail Sent to the Alien's Address of Record is Sufficient ....................... 10

            c.  *Jones* is Distinguishable on the Facts ........................................... 14

        2.  Defendant Did Not Exhaust His Administrative Remedies ....................... 16

        3.  Defendant Was Not Deprived of Judicial Review......................... 18

        4.  Defendant Suffered No Prejudice.................................................... 19

CONCLUSION ................................................................................................ 26

STATEMENT OF RELATED CASES.......................................................... 27

CERTIFICATE OF COMPLIANCE ............................................................ 28

i

# TABLE OF AUTHORITIES

## Cases

*Ahir v. Mukasey*, 527 F.3d 912 (9th Cir. 2008) ................................................. 24

*Aracely Coello-Amador v. Ashcroft*, 125 F. App'x 917 (10th Cir. 2005) .............................. 9

*Arrieta v. INS*, 117 F.3d 429 (9th Cir. 1997) ......................................................... 9

*Azarte v. Ashcroft*, 394 F.3d 1278 (9th Cir. 2005) .................................................... 20

*Castro-Ramirez v. Holder*, 591 F. App'x 586 (9th Cir. 2015) ............................................ 11

*Chaidez v. Gonzales*, 486 F.3d 1079 (9th Cir. 2007) .................................................... 10

*Chavajay-Hernandez v. Barr*, 785 F. App'x 392 (9th Cir. 2019) ......................................... 11

*Chi Wing Chan v. Holder*, 485 F. App'x 880 (9th Cir. 2012) ............................................. 11

*Climaco v. Garland*, 856 F. App'x 699 (9th Cir. 2021) ............................................. 10–11

*Dada v. Mukasey*, 554 U.S. 1 (2008) ................................................................. 20

*Derezinski v. Mukasey*, 516 F.3d 619 (2008) ..................................................... 13, 15–16

*Dobrota v. I.N.S.*, 311 F.3d 1206 (9th Cir. 2002) ..................................................... 8

*Farhoud v. I.N.S.*, 122 F.3d 794 (9th Cir. 1997) ................................................... 8–9

*Flores v. Holder*, 518 F. App'x 550 (9th Cir. 2013) ................................................... 11

*Fuentes-Argueta v. I.N.S.*, 101 F.3d 867 (2d Cir. 1996) ................................................ 9

*Giday v. I.N.S.*, 113 F.3d 230 (D.C. Cir. 1997) ....................................................... 9

*Jones v. Flowers*, 547 U.S. 220 (2006) ........................................................... 8, 10–15

*Lopez-Lopez v. Holder*, 358 F. App'x 926 (9th Cir. 2009) ............................................... 10

*Kungys v. United States*, 485 U.S. 759 (1988) ....................................................... 22

*Maghradze v. Gonzales*, 462 F.3d 150 (2d Cir. 2006) ................................................... 9

*Maldonado–Perez v. INS*, 865 F.2d 328 (D.C.Cir.1989) ................................................ 12

*Martinez v. Barr*, 941 F.3d 907 (9th Cir. 2019) ...................................................... 18

*Matter of Grijalva*, 21 I&N Dec. 27 (BIA 1995) ....................................................... 9

ii

## Cases (cont.)

*Matter of Pinzon*, 26 I. & N. Dec. 189 (BIA 2013) ............................................... 21

*Mejia-Hernandez v. Holder*, 633 F.3d 818 (9th Cir. 2011) ..................................... 11

*Olea-Reyes v. Gonzales*, 177 F. App'x 697 (9th Cir. 2006) .................................... 24

*Onyejekwe v. I.N.S.*, 35 F. App'x 510 (9th Cir. 2002) ............................................. 11

*Pazcoguin v. Radcliffe*, 308 F.3d 934 (9th Cir. 2002) .............................................. 21

*Peralta-Cabrera v. Gonzales*, 501 F.3d 837 (7th Cir. 2007) ..................................... 9

*Rendon v. Holder*, 400 F. App'x 218 (9th Cir. 2010) ......................................... 12–13

*Robles v. Barr*, 772 F. App'x 437 (9th Cir. 2019) .................................................. 11

*Sanchez v. Barr*, 795 F. App'x 533 (9th Cir. 2020) ................................................ 11

*Sembiring v. Gonzales*, 499 F.3d 981 (9th Cir. 2007) ........................................ 12–13

*Singh v. Lynch*, 643 F. App'x 649 (9th Cir. 2016) .................................................. 11

*Smith v. Marsh*, 194 F.3d 1045 (9th Cir. 1999) ....................................................... 6

*United States v. Arias-Ordonez*, 597 F.3d 972 (9th Cir. 2010) .............................. 17

*United States v. Alvarado-Pineda*, 774 F.3d 1198 (9th Cir. 2014) ........................... 6

*United States v. Barajas-Alvarado*, 655 F.3d 1077 (9th Cir. 2011) ....................... 24

*United States v. Bustos-Ochoa*, 704 F.3d 1053 (9th Cir. 2012) ......................... 19–20

*United States v. Calan-Montiel*, 4 F.4th 496 (7th Cir. 2021) .................................... 7

*United States v. Castellanos-Avalos*, 22 F.4th 1142 (9th Cir. 2022) ......................... 7

*United States v. Estrada-Trochez*, 66 F.3d 733 (5th Cir. 1995) ............................... 11

*United States v. Flores*, 901 F.3d 1150 (9th Cir. 2018) .......................................... 24

*United States v. Flores-Perez*, 1 F.4th 454 (6th Cir. 2021) ..................................... 17

*United States v. Garcia-Martinez*, 228 F.3d 956 (9th Cir. 2000) ........................... 19

*United States v. Gonzalez-Alvarez*, 2018 WL 2717265 (S.D. Cal. May 18, 2018) ............. 23

## Cases (cont.)

*United States v. Gonzalez-Flores*, 804 F.3d 920 (9th Cir. 2015) ......................................22–23

*United States v. Gonzalez-Valencia*, 3 F.4th 1208 (9th Cir. 2021) ................................. 7, 17

*United States v. Gonzalez-Villalobos*, 724 F.3d 1125 (9th Cir. 2013) ......................7, 18–19

*United States v. Gutierrez-Alba*, 128 F.3d 1324 (9th Cir. 1997) ...........................20–21

*United States v. Hinojosa-Perez*, 206 F.3d 832 (9th Cir. 2000) ..........................................9, 18

*United States v. Melendez-Castro*, 671 F.3d 950 (9th Cir. 2012) ........................................... 7

*United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021) ..........................................7, 16–17

*United States v. Reyes-Bonilla*, 671 F.3d 1036 (9th Cir. 2012) .........................................7, 19

*United States v. Rojas-Pedroza*, 716 F.3d 1253 (9th Cir. 2013) ......................................23–24

*United States v. Simmons*, 782 F.3d 510 (9th Cir. 2015) .............................................. 6

*United States v. Valdez-Novoa*, 780 F.3d 906 (9th Cir. 2015) ........................................7, 19

*Vivanco-Rodriguez v. Lynch*, 604 F. App'x 557 (9th Cir. 2015) ......................................... 11

*Wijeratne v. I.N.S.*, 961 F.2d 1344 (7th Cir. 1992) ................................................... 11

*Yilmaz v. Att'y Gen. of U.S.*, 150 F. App'x 180 (3d Cir. 2005) ................................... 9

*Zamorano v. Garland*, 2 F.4th 1213 (9th Cir. 2021)..............................................16–17, 19

## Statutes

8 U.S.C. § 1101..............................................................................20, 22

8 U.S.C. § 1158 ..................................................................................... 24

8 U.S.C. § 1182 ................................................................................20–21

8 U.S.C. § 1252 ..................................................................... 8, 11–12, 17

8 U.S.C. § 1254 ..................................................................................... 20

8 U.S.C. § 1324 ..................................................................................... 24

8 U.S.C. § 1326..............................................................................5, 7, 16–21

## Statutes (cont.)

18 U.S.C. § 1001 ........................................................................... 21, 24

18 U.S.C. § 1546 ............................................................................... 24

18 U.S.C. § 3231 ................................................................................. 1

28 U.S.C. § 1291 ................................................................................. 1

Pub. L. No. 104–208, 110 Stat. 3009–546 ....................................... 20

## Regulations

8 C.F.R. § 1003.23 ............................................................................ 17

## STATEMENT OF JURISDICTION & BAIL STATUS

Defendant is appealing his conviction in case 3:19-CR-00408-IM. The district court had jurisdiction over this case under 18 U.S.C. § 3231. Defendant was sentenced on August 9, 2021, and the district court entered judgment that same day. ER-4, 20. Defendant filed a timely notice of appeal on August 13, 2021. ER-187. This Court has jurisdiction over this appeal. 28 U.S.C. § 1291.

Defendant is not in custody, having completed his time-served sentence.

## STATEMENT OF ISSUE PRESENTED

Did the district court correctly deny defendant's motion to dismiss the indictment charging him with illegal reentry when defendant (1) failed to show he was denied due process in his removal hearing, (2) did not exhaust his administrative remedies, (3) was not deprived of judicial review, and (4) suffered no prejudice in the removal order?

## STATEMENT OF FACTS

Defendant is a native and citizen of Mexico. On December 21, 1993, defendant filed three signed documents with the Immigration and Naturalization Service ("INS") claiming to be a citizen of Guatemala seeking asylum from persecution in Guatemala: (1) a Form I-589 Request for Asylum in the United States, along with a Guatemalan birth certificate in his name; (2) a Form G-325A, providing biographic information; and (3) a Form I-765 Application for Employment Authorization. ER-

1

105–11. On all forms, defendant listed his address as 4037 N. Cleveland Ave.,[1]

Portland, Oregon 97212 ("the Cleveland Avenue address"). ER-105, 110–11.

The next month, the INS mailed a receipt notice to the Cleveland Avenue

address acknowledging receipt of the request for asylum. ER-112. Days later, the INS

mailed two separate approval notices to the Cleveland Avenue address stating that

defendant's employment authorization was approved. ER-113–20. The approval

notices instructed defendant to appear in person at the INS office in Portland,

Oregon to pick up his employment authorization card. *Id.*

Less than a month after INS mailed the notices, defendant appeared at the INS

office to pick up his employment card, as instructed by the notices. ER-121. He

presented a fraudulent Guatemalan birth certificate as proof of identity to pick up the

card. *Id.* When confronted, defendant admitted that he was a native and citizen of

Mexico who paid $200 for the Guatemalan birth certificate and paperwork. *Id.* He

withdrew his application for asylum. ER-127.

While defendant was still at the office, the INS issued an Order to Show Cause

("OSC"), charging defendant with being subject to deportation. ER-122–26. The OSC

is written in English and Spanish. For defendant's address of record, the OSC lists the

Cleveland Avenue address. ER-122. The OSC advises that the Office of the

---

[1] Some of the documents in the record appear to say "Clevenland" while other say
"Cleveland." Defendant did not argue below or on appeal that there is a distinction
between Clevenland and Cleveland. *See, e.g.*, SER-19–20. The United States treats it as
a single address.

Immigration Judge ("Immigration Court") would schedule and give notice of a deportation hearing. ER-124. It explains that "[y]ou will have a hearing before an immigration judge, scheduled no sooner than 14 days from the date you are served with this Order to Show Cause (unless you request in writing an earlier hearing date)." ER-123. It further advises, "[y]ou are required to be present at your deportation hearing prepared to proceed. If you fail to appear at any hearing after having been given written notice of the date, time and location of your hearing, you will be ordered deported in your absence . . . ." ER-125. The OSC warns:

> You are required by law to provide immediately in writing an address (and telephone number, if any) where you can be contacted. You are required to provide written notice, within five (5) business days, of any change in your address or telephone number to the office of the Immigration Judge listed in this notice. Any notices will be mailed only to the last address provided by you. . . . If you fail to appear at the scheduled deportation hearing, you will be deported *in your absence* if it is established that you are deportable and you have been provided the appropriate notice of the hearing.

*Id.* (emphasis in original). The OSC was read to defendant in the Spanish language. ER-126. The OSC was personally served to him. *Id.* He signed the OSC acknowledging receipt, and his fingerprint confirms personal service. *Id.* He was released to await the hearing notice from the Immigration Court. *Id.* Defendant does not argue that he did not receive or understand the OSC.

Approximately seven weeks later, the INS District Counsel filed the OSC with the Immigration Court and moved the court to schedule the case for a hearing. ER-128. INS also mailed a copy of the motion to the Cleveland Avenue address. *Id.* The

3

U.S. Postal Service ("USPS") returned the mail as undeliverable. ER-129. Five days later, the Immigration Court sent a hearing notice to the Cleveland Avenue address instructing defendant to appear for a deportation hearing on August 12, 1994. ER-130. The hearing notice was sent by certified mail. ER-131–33. It was returned as unclaimed a month later. *Id.* at 131.

Defendant failed to appear at his deportation hearing. The Immigration Judge ("IJ") found that he had been properly served with the OSC and hearing notice. ER-134. The IJ found deportability established and ordered defendant deported *in absentia*. *Id.* Two weeks later, the INS Deportation and Detention ("D&D") office sent defendant a "bag and baggage" Form I-166 instructing him to appear at the INS office for deportation. ER-135–36. The letter was sent via certified mail to the Cleveland Avenue address. ER-137–38. It was returned as undeliverable. *Id.* at 137.

Defendant remained in the United States and arranged to have his family smuggled to the United States from Mexico in 1999. ER-140. He took no action to fix his illegal immigration status and evaded immigration authorities for twelve years. In 2006 ICE officers found defendant living in a different neighborhood in Portland, Oregon. ER-139. He was deported pursuant to the 1994 order on October 21, 2006. ER-183.

On April 8, 2019, ICE officers learned of defendant's presence in the District of Oregon and reinstated his removal order. ER-141. On September 10, 2019, a

federal grand jury returned a single-count indictment charging defendant with illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a). ER-185–86.

Defendant filed a motion to dismiss the indictment, collaterally attacking the removal order. ER-160. He argued that his removal order violated due process because he never received notice of his deportation hearing and that he suffered prejudice because, in his view, he could have received voluntary departure. ER-164, 167. He also argued that the alleged due process violation satisfied the required showing that he exhausted administrative remedies and was deprived of judicial review; he made no further exhaustion or deprivation argument. ER-170.

The District Court denied defendant's motion on August 11, 2020. ER-11. The court found that he received due process. *Id.* Because that finding was dispositive, the court did not reach the other elements of the collateral attack. ER-19, n.2.

## SUMMARY OF THE ARGUMENT

Defendant cannot challenge his removal because he has not met any of the requirements for a collateral attack under 8 U.S.C. § 1326(d). His removal proceeding comported with due process because the notice of hearing was sent by certified mail to his address of record on the OSC, which he was personally served. He suffered no prejudice in the removal order because his asylum fraud rendered him ineligible for voluntary departure, and discretionary relief was not plausible given that fraud and his

5

minimal equities. Moreover, he did not exhaust his administrative remedies and was not deprived of judicial review.[2]

The district court properly denied the motion to dismiss. This Court should affirm.

## ARGUMENT

### A.    Standard of Review

The district court's denial of a motion to dismiss an indictment is reviewed *de novo* when the motion is based on an alleged due process defect in an underlying removal proceeding. *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014). This Court may affirm on any basis supported by the record even if it was not the basis relied on by the district court. *See United States v. Simmons*, 782 F.3d 510, 516 (9th Cir. 2015).

### B.    The District Court Properly Denied Defendant's Motion to Dismiss the Indictment.

A defendant charged with illegal reentry may not collaterally attack the underlying removal order unless he demonstrates that: (1) he exhausted any

---

[2] Defendant's opening brief does not argue that he exhausted his administrative remedies and was deprived of judicial review. He argues only that he suffered a due process violation and seeks remand for a finding of prejudice. The United States therefore deems the argument that he exhausted his administrative remedies and was deprived of judicial review raised in defendant's motion to dismiss, but not argued in his opening brief, waived. *See, e.g.*, *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("'[A]rguments not raised by a party in its opening brief are deemed waived.'").

administrative remedies that may have been available to seek relief against his removal order; (2) the removal proceedings improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d)(1)–(3). A removal order is fundamentally unfair if the defendant's due process rights were violated by a constitutional defect in the removal proceeding and the defendant suffered prejudice resulting from the defect. *United States v. Melendez-Castro*, 671 F.3d 950, 953 (9th Cir. 2012).

The requirements for a collateral attack "must all be satisfied." *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1126 (9th Cir. 2013). "[E]ach of the statutory requirements of § 1326(d) is mandatory," and a showing of due process error does not automatically satisfy the other two requirements. *United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1622 (2021); *see also United States v. Gonzalez-Valencia*, 3 F.4th 1208, 1210 (9th Cir. 2021); *United States v. Castellanos-Avalos*, 22 F.4th 1142, 1146 (9th Cir. 2022); *United States v. Calan-Montiel*, 4 F.4th 496, 498 (7th Cir. 2021) ("Federal courts cannot create equitable exceptions to statutes.").

Defendant bears the burden of establishing each requirement of § 1326(d). *See* 8 U.S.C. § 1326(d)(3); *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1039 (9th Cir. 2012); *United States v. Valdez-Novoa*, 780 F.3d 906, 917 (9th Cir. 2015). Here, defendant has not made any of the required showings under § 1326(d). Failing to establish even one dooms his claim.

### 1. Defendant Failed to Show a Due Process Violation.

It is well-settled that notice of a deportation hearing is constitutionally adequate when it is sent by certified mail to the alien's address of record after personal service of an OSC. On appeal, defendant abandons the contrary arguments he made to the district court,[3] and instead argues that *Jones v. Flowers*, 547 U.S. 220 (2006) supersedes this robust body of case law and requires the government to take "additional steps" to provide notice of a deportation hearing. But this Court has never held so. And *Jones* is distinguishable on several grounds.

### a. The Notice of Hearing was Constitutionally Adequate.

At the time of defendant's hearing, deportation proceedings were initiated by service of the OSC. *See* 8 U.S.C. § 1252b(a)(1) (1994). The OSC must be served by personal service or by certified mail if personal service is impracticable. *Id.* Once the OSC is served, "[a]n alien does not have to actually receive notice of a deportation hearing in order for the requirements of due process to be satisfied." *Dobrota v. I.N.S.*, 311 F.3d 1206, 1211 (9th Cir. 2002). Rather, "due process is satisfied if service is conducted in a manner 'reasonably calculated' to ensure that notice reaches the alien."

---

[3] Before the District Court, defendant argued that (1) there was no evidence in his INS file that the court sent him a hearing notice; and (2) if the court did send notice, it sent it to a non-existent address. He also relied on case law that relates to service by regular mail—not service by certified mail, as occurred in this case; and service of the OSC—not service of the hearing notice, as is the issue in this case. He does not make these arguments on appeal.

*Farhoud v. I.N.S.*, 122 F.3d 794, 796 (9th Cir. 1997), *as amended* (Sept. 2, 1997), *as amended* (Oct. 6, 1997).

An "unclaimed" notice of a deportation hearing sent by certified mail to the alien's address of record comports with due process. *Id.* (certified mail sent but not received); *Yilmaz v. Att'y Gen. of U.S.*, 150 F. App'x 180, 185 (3d Cir. 2005) (unclaimed); *Aracely Coello-Amador v. Ashcroft*, 125 F. App'x 917, 919 (10th Cir. 2005) (certified mail sent and signed-for but not received by alien); *Giday v. I.N.S.*, 113 F.3d 230, 234 (D.C. Cir. 1997) (unclaimed); *Fuentes-Argueta v. I.N.S.*, 101 F.3d 867, 872 (2d Cir. 1996) (unclaimed); *see also Matter of Grijalva*, 21 I&N Dec. 27, 33 (BIA 1995) (unclaimed); *see also Arrieta v. INS*, 117 F.3d 429 (9th Cir. 1997) (attempted).

An alien's own lack of diligence in receiving notice does not give rise to a due process violation where notice was properly sent and the alien failed to update his address. *United States v. Hinojosa-Perez*, 206 F.3d 832, 837 (9th Cir. 2000); *see also Peralta-Cabrera v. Gonzales*, 501 F.3d 837, 843 (7th Cir. 2007) (an alien cannot "make himself unreachable, and then later ask to have his case reopened because he did not receive notice"); *Maghradze v. Gonzales*, 462 F.3d 150, 154 (2d Cir. 2006) (in absentia removal proper where alien thwarted delivery by relocating and failing to provide a change of address).

Defendant concedes that due process is met when a hearing notice is sent in a manner that is "reasonably calculated" to reach the alien. Op. Br. at 8. He concedes that notice is generally satisfied when mailed to the alien's address of record. *Id.* at 12–

13. But he now argues that *Jones* supersedes this Court's well-settled holding that notice is constitutionally sufficient when sent by certified mail to the alien's address of record. And he contends that under *Jones*, notice here was not "reasonably calculated" to reach him and the Immigration Court was required to do more. Defendant is wrong on both the law and the facts.

### b. *Jones* Does not Supersede This Court's Holding that Certified Mail Sent to the Alien's Address of Record is Sufficient.

*Jones* considered whether the Due Process Clause requires the government to take additional reasonable steps to notify a property owner when certified notice of a tax sale is returned undelivered. *Jones*, 547 U.S. at 225. It reached a narrow holding in the tax sale milieu: "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, *if it is practicable to do so.*" *Id.* (emphasis added).

This Court has not adopted *Jones* in the notice-of-deportation-hearing context. Rather, this Court has repeated, post-*Jones*, that a notice of hearing sent by certified mail to the alien's address of record comports with due process because it is "reasonably calculated" to notify the alien. *See Chaidez v. Gonzales*, 486 F.3d 1079, 1085 (9th Cir. 2007) (reconfirming the propriety of sending a hearing notice by certified mail, and distinguishing the scenario where the OSC is sent by certified mail); *Lopez-Lopez v. Holder*, 358 F. App'x 926, 927 (9th Cir. 2009); *see also Climaco v. Garland*, 856 F.

App'x 699, 700 (9th Cir. 2021) (even service by regular mail is proper if "reasonably calculated" to reach the alien).

This Court has also repeated, post-*Jones*, that a hearing notice sent by certified mail to the alien's address of record satisfies the statutory notice requirements, absent substantial and probative proof of non-delivery or improper delivery. *See, e.g., Mejia-Hernandez v. Holder*, 633 F.3d 818, 822 (9th Cir. 2011); *Sanchez v. Barr*, 795 F. App'x 533, 534 (9th Cir. 2020); *Chavajay-Hernandez v. Barr*, 785 F. App'x 392, 393 (9th Cir. 2019); *Robles v. Barr*, 772 F. App'x 437, 438 (9th Cir. 2019); *Singh v. Lynch*, 643 F. App'x 649, 650 (9th Cir. 2016); *Vivanco-Rodriguez v. Lynch*, 604 F. App'x 557, 558 (9th Cir. 2015); *Castro-Ramirez v. Holder*, 591 F. App'x 586 (9th Cir. 2015); *Flores v. Holder*, 518 F. App'x 550, 551 (9th Cir. 2013); *Chi Wing Chan v. Holder*, 485 F. App'x 880, 881 (9th Cir. 2012).

In turn, the statutory provisions regarding notice and *in absentia* requirements necessarily meet constitutional due process requirements. *Onyejekwe v. I.N.S.*, 35 F. App'x 510, 511 (9th Cir. 2002) (statutory standard for *in absentia* proceedings does not violate due process); *United States v. Estrada-Trochez*, 66 F.3d 733, 736 (5th Cir. 1995) (statutory notice provisions meet constitutional due process by giving a reasonable opportunity to be present); *Wijeratne v. I.N.S.*, 961 F.2d 1344, 1346 (7th Cir. 1992) ("if the IJ complied with Section 1252(b), there is no due process violation"); *Maldonado–Perez v. INS*, 865 F.2d 328, 332–33 (D.C. Cir. 1989) (*in absentia* order proper because statutory requirements meet the minimum constitutional requirements); 8 U.S.C. §

1252b(2) (1994) (providing requirements for notice); 8 U.S.C. § 1252(b)(1) (1994) ("the alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held"); 8 U.S.C. § 1252(b) (1994) (*in absentia* proceeding permissible if alien has been given a reasonable opportunity to be present and fails to attend without reasonable cause).

Here, the notice of hearing and *in absentia* proceedings comported with the statutory requirements. Defendant does not argue otherwise. Therefore, the notice of hearing and the *in absentia* proceeding met the minimum due process standards.

Defendant cites *Rendon v. Holder*, 400 F. App'x 218 (9th Cir. 2010) to argue that this Court applies *Jones* to "immigration actions." Op. Br. at 24. That is a leap too far. First, *Rendon* did not involve the statutory or constitutional authority governing service of deportation hearing notices. Second, it cites *Jones* without analysis. Indeed, it cites *Sembiring v. Gonzales*, 499 F.3d 981, 989–90 (9th Cir. 2007) in the sentence just before. That case reiterates that attempted delivery of a hearing notice by certified mail can be sufficient even when the alien does not receive it. *Id.* at 986. Third, while *Rendon* observes that the INS took "additional reasonable steps" to locate Rendon's address after a certified mailing was returned unclaimed, citing *Jones*, it does not hold that additional steps are required. Fourth, the limited facts provided in *Rendon* suggest the presence of circumstances that may give rise to the need for "additional steps": the alien filed an affirmative benefits application and followed up with an appeal, albeit

12

untimely—which shows an incentive to keep the INS apprised of his address. *See, e.g.,*
*Sembiring*, 499 F.3d at 986 (noting the strong presumption of effective service can be
overcome by substantial and probative evidence otherwise). Not so here, where
defendant filed a fraudulent asylum application and, when caught, was personally
served an OSC. Fifth, this Court has not relied on *Jones* in any other immigration case,
and its use in *Rendon* is outweighed by the dozens of cases issued after *Rendon* that
espouse this Court's traditional holding that one-time notice by certified mail is
presumed sufficient.

Moreover, the tax sale context of *Jones* does not transfer to the deportation
hearing context. It may be reasonable to require the government to assume that an
unclaimed notice of property sale did not reach the recipient given a property owner's
obvious interest in retaining property, 547 U.S. at 229–30. It is not, however,
reasonable to similarly assume that an unclaimed notice of a deportation hearing did
not reach an alien who knew from the OSC that deportation proceedings had
commenced and that a hearing notice would be coming. The more reasonable
inference is that the alien avoided receiving the hearing notice by absconding.
*Derezinski v. Mukasey*, 516 F.3d 619, 622 (2008).

*Jones* requires no more process than the certified hearing notice to the alien's
address of record that the Immigration Court sent.

### c. *Jones* is Distinguishable on the Facts.

Even if *Jones* applied, it would not change the outcome here. *Jones* requires reasonable apprisal, and defendant was reasonably apprised of his hearing when the Immigration Court sent by certified mail a hearing notice to the address that defendant had just weeks earlier confirmed was his address of record in the OSC.

*Jones* reconfirmed that due process does not require actual notice. 547 U.S. at 226. It imposed a circumstance-specific inquiry: "due process requires the government to provide 'notice reasonably calculated, *under all the circumstance*s, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (emphasis added). Where notice is reasonably calculated to apprise, due process is met. *Id.* Where it is not practicable to take additional steps to apprise, due process is met. *Id.* at 234.

*Jones* is distinguishable on the facts. It involved the sale of a property whose owner had provided an address of record 30 years before the initiation of the tax sale. Notice of the tax sale commenced three years after the state had any contact with the property owner (via tax payment by mortgage). And the state did not personally contact the owner to apprise him of the initiation of the tax sale; rather, the notice of initiation itself was made by certified mail. *Jones* found that additional reasonable steps could have been taken, such as notice by regular mail or posting notice on the property door. *Id.* at 234–35. The state's failure to take any such measures violated due process.

14

Those circumstances are a far cry from this case. Whereas Jones received no notice that the tax sale had begun, defendant knew when he was served the OSC that deportation proceedings were now pending against him. Jones had no reason to expect notice of a tax sale; the OSC advised defendant to expect a hearing notice from the Immigration Court. Jones gave his address when he opened the mortgage 30 years before the tax sale, and his mortgage was paid off—with no continued contact with the state—three years before the tax sale began. Defendant confirmed his address of record on the OSC just weeks before the Immigration Court mailed the hearing notice.

It was reasonable for the Immigration Court to believe that certified mail sent to the address on the OSC would reach him. Defendant had, after all, signed and fingerprinted his acknowledgment of the OSC content. The mail was returned as unclaimed, which means "the addressee abandoned or failed to call for the mail."[4] In other words, the address was correct and the addressee was reachable at that address—he just chose not to receive it.

Finally, whereas Jones had a strong claim to his property, defendant had no strong claim "to remain in this country and may thus have been unwilling to show up for a hearing-where he might have been taken into custody." *Derezinski*, 516 F.3d at

---

[4] USPS Archived DDM, F010 Basic Information, Exhibit 4.1 (USPS Endorsements for Mail Undeliverable as Addressed), available at https://pe.usps.com/archive/html/dmmarchive20030810/F010.htm (last accessed June 5, 2022).

622. Moreover, defendant's "subsequent effort to evade removal is consistent with an inference that he willfully refused to attend the hearing." *Id.*

The hearing notice sent by certified mail to defendant's recent address of record, after personal service of the OSC, was reasonably calculated under all the circumstances to reach him. The Immigration Court was not obligated to take additional steps to apprise him of the hearing. Defendant received due process. His conviction must be affirmed.

### 2. Defendant Did Not Exhaust His Administrative Remedies.

Defendant does not claim on appeal that he exhausted his administrative remedies. Op. Br. at 23. Rather, he asks this Court to ignore this statutory requirement and simply remand the case to consider prejudice. But remand makes no sense where, even if the district court found prejudice, he still falls short of § 1326(d) for failing to exhaust administrative remedies or show deprivation of judicial review. This Court should affirm the denial of defendant's motion to dismiss because he has not exhausted his administrative remedies.

Defendant must show exhaustion of administrative remedies; simply alleging a violation of due process is not enough. Entry of the removal order "is quite distinct from whether the noncitizen exhausted his administrative remedies (by appealing the immigration judge's decision to the BIA) or was deprived of the opportunity for judicial review (by filing a petition for review of a BIA decision with a Federal Court of Appeals)." *Palomar-Santiago*, 141 S. Ct. at 1621. Accordingly, this Court "may not

16

excuse a failure to exhaust when, as in § 1326(d), Congress uses mandatory language in an administrative exhaustion provision." *Zamorano v. Garland*, 2 F.4th 1213, 1225 (9th Cir. 2021) (internal quotations and citations omitted); *see also Gonzalez-Valencia*, 3 F.4th at 1210; *United States v. Flores-Perez*, 1 F.4th 454, 457–58 (6th Cir. 2021) (rejecting defendant's argument that exhaustion should be excused based on the alleged due process violation).

"Administrative review of removal orders exists precisely so noncitizens can challenge the substance of immigration judges' decisions." *Palomar-Santiago*, 141 S. Ct. at 1621. Even if an IJ does commit error, it "does not excuse the noncitizen's failure to comply with a mandatory exhaustion requirement if further administrative review, and then judicial review if necessary, could fix that very error." *Id.*

Here, defendant could have filed a motion to reopen the *in absentia* removal order, but did not timely do so for purposes of collateral attack. *United States v. Arias-Ordonez*, 597 F.3d 972, 977 (9th Cir. 2010); 8 U.S.C. § 1252b(c)(3) (1994); 8 C.F.R. § 1003.23(b)(4)(iii). Defendant did not file a motion to reopen in the twenty-five years between his removal order and the initiation of this criminal prosecution. Or in the thirteen years between being removed and the initiation of this prosecution. Or even in the nine-plus months between his initial appearance in this case and his motion to dismiss the indictment. He has now filed a motion to reopen, ER-148, but it was filed three weeks after he filed his collateral attack on the order.

17

The plain language of § 1326(d), requires a defendant to have "*exhausted* any administrative remedies that may have been available" at the time the collateral attack is made. Exhaustion means defendant must put the issue before the IJ and the Board of Immigration Appeals ("BIA") so that the agency has "the opportunity to pass on" the issue before it is raised for the first time in a collateral proceeding. *See, e.g.*, *Martinez v. Barr*, 941 F.3d 907, 922 (9th Cir. 2019) (finding no exhaustion where judicial appeal was filed prematurely before the BIA ruled on the motion). Here, defendant sought to vindicate his administrative remedies only after he made his collateral attack. He has not met the plain statutory requirement of § 1326(d).

### 3. Defendant Was Not Deprived of Judicial Review.

Defendant does not claim on appeal that he was deprived of judicial review. Nor could he, as he was not. He knew he was in removal proceedings when he was served the OSC in 1994. He knew he had been ordered removed in 2006 when he was, in fact, removed on that order. He illegally reentered the United States and did not file a motion to reopen, although he could have. Had defendant failed to prevail on a motion to reopen, "the doors to the courts were open to his lack of notice due process argument." *Hinojosa-Perez*, 206 F.3d at 836. Indeed, judicial review remains available on his late-filed motion to reopen. He has identified no obstacle to judicial review. This, alone, forecloses his collateral attack. *Gonzalez-Villalobos*, 724 F.3d at 1132 ("[W]here the defendant has failed to identify any obstacle that prevented him

from obtaining judicial review of a deportation order, he is not entitled to such review as part of a collateral attack under 8 U.S.C. § 1326(d).").

### 4. Defendant Suffered No Prejudice.

Even if he succeeded in showing due process, exhaustion, and deprivation of judicial review, defendant must demonstrate that he suffered prejudice. A defendant bears the burden of establishing actual prejudice. 18 U.S.C. § 1326(d)(3); *Reyes-Bonilla*, 671 F.3d at 1049; *see also Valdez-Novoa*, 780 F.3d at 917 ("We reaffirm that the burden to show prejudice rests with the defendant"); *United States v. Garcia-Martinez*, 228 F.3d 956, 963–64 (9th Cir. 2000) (defendant must establish actual prejudice).

To establish actual prejudice, the defendant must show that he had "plausible grounds for relief from deportation." *Garcia-Martinez*, 228 F.3d at 963. Plausibility requires more than what is merely "conceivable." *Valdez-Novoa*, 780 F.3d at 914. A mere possibility of relief from removal is not enough. *Id.*

A plausible claim to relief "requires some evidentiary basis on which relief could have been granted, not merely a showing that some form of immigration relief was theoretically possible." *Reyes-Bonilla*, 671 F.3d at 1049–50. Moreover, plausibility requires that a respondent be "apparently eligible" for relief before an adjudicator is tasked with assessing such relief. *Valdez-Novoa*, 780 F.3d at 914; *Zamorano*, 2 F.4th at 1223. The prejudice must be of a "manner so as potentially to affect the outcome of the proceedings; a mere showing that [he] would have availed himself of the procedural protections denied him is not enough." *United States v. Bustos-Ochoa*, 704

F.3d 1053, 1056 (9th Cir. 2012). Defendant has not made—and cannot make—any such showing.

Defendant claims voluntary departure was plausible. It was not. An alien who seeks voluntary departure "must first establish his statutory eligibility for that relief and then show that he is entitled to a favorable exercise of agency discretion." *United States v. Gutierrez-Alba*, 128 F.3d 1324, 1326 (9th Cir. 1997). Defendant was statutorily barred from voluntary departure, and he has not shown it was plausible that the IJ would have granted it as a matter of discretion anyway.

Defendant could not meet the statutory good moral character requirement. In 1994, voluntary departure required the applicant to establish good moral character for a period of five years immediately preceding the application. 8 U.S.C. § 1254(e) (1994).[5] The statute defines "good moral character" to exclude persons convicted of, or who admit the commission of, or who admit committing acts which constitute the essential elements of, a crime involving moral turpitude. 8 U.S.C. § 1101(f)(3) (1994) (defining good moral character); 8 U.S.C. § 1182(a)(2)(A)(i)(I) (1994) (describing class

---

[5] The voluntary departure provisions changed pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Division C of Pub. L. No. 104–208, 110 Stat. 3009–546 (September 30, 1996). IIRIRA created two different forms of voluntary departure with new eligibility requirements. These forms of voluntary departure are not at issue in this case. *See Azarte v. Ashcroft*, 394 F.3d 1278, 1284 (9th Cir. 2005), *abrogated on other grounds by Dada v. Mukasey*, 554 U.S. 1 (2008) (discussing the history of voluntary departure).

of aliens excludable for moral turpitude); *Gutierrez-Alba*, 128 F.3d at 1326. Defendant was in this category.

The offense of knowingly and willfully making a false, fictitious, or fraudulent statement or representation, or using a false writing or document knowing it to contain a materially false, fictitious or fraudulent statement or entry, in any matter within the jurisdiction of the federal government, is a crime involving moral turpitude. *Matter of Pinzon*, 26 I. & N. Dec. 189 (BIA 2013) (knowingly and willfully making any materially false, fictitious, or fraudulent statement to obtain a United States passport in violation of 18 U.S.C. § 1001(a)(2) is a crime involving moral turpitude).

Defendant made a false, fictitious or fraudulent statement regarding his place of birth in a federal asylum application. He provided a false birth certificate knowing it contained materially false information about his (fictitious) birth in Guatemala. He also made materially false statements about alleged persecution that he suffered in his (fictitious) home country of Guatemala. Defendant admitted this conduct. *See* ER-121, 127. Although there are procedural safeguards to using the admission of an alien before a finding of per se no good moral character may be made, *see Pazcoguin v. Radcliffe*, 292 F.3d 1209, 1216 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc*, 308 F.3d 934 (9th Cir. 2002), if he had showed up to his hearing, requested voluntary departure, and been questioned by the immigration judge, his truthful admission to filing a fraudulent asylum application would necessarily preclude a

finding of good moral character because the false statements were made within five years of the hearing. Defendant was not statutorily eligible for voluntary departure.

Defendant's argument to the contrary has no merit. He cites *Kungys v. United States*, 485 U.S. 759 (1988), for the proposition that "the Supreme Court has held that the category of noncitizen statutorily precluded from voluntary departure relief for giving false testimony for the purpose of obtaining immigration benefits is narrowly 'limited to oral statements made under oath.'" Op. Br. at 30. But that proposition conflates separate issues. *Kungys* did not involve voluntary departure or the good moral character ground involving moral turpitude, § 1101(f)(3). It considered a different good moral character provision—8 U.S.C. § 1101(f)(6), which applies to "one who has given false testimony for the purpose of obtaining any benefits under this charter." That provision is not at issue here.

Defendant was statutorily barred from voluntary departure because admitting that he filed a fraudulent asylum application and birth certificate to get asylum and work authorization is an admission to committing acts which constitute the essential elements of a crime involving moral turpitude. He was barred under § 1101(f)(3).

Defendant has also not shown that discretionary relief was plausible. This Court assesses discretion by employing a two-step process to determine whether an alien has made a showing of plausible relief in voluntary departure.

First, the Court considers "the positive and negative factors an IJ would consider relevant to an exercise of discretion." *United States v. Gonzalez-Flores*, 804 F.3d

920, 927 (9th Cir. 2015); *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1264 (9th Cir. 2013). "Favorable equities include long residence, close family ties to the United States, and humanitarian needs." *Rojas-Pedroza*, 716 F.3d at 1265. "Unfavorable equities include 'the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and any other evidence of bad character or the undesirability of the applicant as a permanent resident.'" *Id.*

Second, the Court must determine whether, considering all the factors and the circumstances of an alien's case, the alien "carried the burden of proving it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor." *Gonzalez-Flores*, 804 F.3d at 927. In assessing whether the defendant carries his burden, the Court must "focus on whether aliens with similar circumstances received relief." *Id.* at 927–28. The existence of a single case that is arguably on point is "plainly insufficient." *Id.* at 928. Rather, it means "only that it is 'possible' or 'conceivable' that a similarly situated alien would be afforded voluntary departure." *Id.*

Where negative factors exist, a countervailing showing of positive equities is central to a favorable exercise of discretion. *Rojas-Pedroza*, 716 F.3d at 1265; *Gonzales-Flores*, 804 F.3d at 928–29; *see also United States v. Gonzalez-Alvarez*, Case No. 18-cr-00149-BAS, 2018 WL 2717265, at *17 (S.D. Cal. May 18, 2018) (collecting cases in which plausible relief was found because substantial positive equities overcame

23

negative criminal history). It is not enough to simply argue that aliens with worse criminal records than defendant were found to have plausible claims to voluntary departure. *Rojas-Pedroza*, 716 F.3d at 1265.

Here, defendant cites not even a single case where a similarly situated alien was granted voluntary departure. Instead, he cites a case that does not address discretionary relief and suggests that timely admitting his fraud overcomes the fact that he committed the fraud, as well as the other negative factors. Op. Br. at 30 (citing *Olea-Reyes v. Gonzales*, 177 F. App'x 697, 700 (9th Cir. 2006)). It does not work that way. Even considering the timely admission as a positive factor, his many negative factors far outweigh his lack of positive ones.

On the negative side, defendant committed asylum fraud. Favorable discretion is not plausible when the alien engaged in immigration fraud. *United States v. Flores*, 901 F.3d 1150, 1163 (9th Cir. 2018) (addressing withdrawal of an application for admission, discretionary relief at a port of entry similar to voluntary departure); *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1090 (9th Cir. 2011) (same). Immigration fraud is serious enough that it gives rise to several federal crimes. *See* 8 U.S.C. § 1324c(a)(5); 18 U.S.C. § 1001; 18 U.S.C. § 1546. Asylum fraud is so serious that an applicant found to have filed a frivolous asylum application—one in which the alien deliberately fabricates a material element of the application—becomes permanently ineligible for any benefits under the Immigration and Nationality Act. 8 U.S.C. § 1158(d)(6); *Ahir v. Mukasey*, 527 F.3d 912, 916 (9th Cir. 2008).

24

Here, defendant filed a frivolous asylum application with the INS. He claimed that he was born in Guatemala, bought a fake birth certificate in his name, then filed it to support his asylum application. He paid a third party to prepare a false asylum claim alleging persecution in his fictitious home country, then he signed his name and filed it. And he personally presented the false birth certificate to the INS as identification when he showed up to pick up his work authorization. But defendant is from Mexico who had no claim to persecution in Guatemala.

Not only did defendant commit asylum fraud, a serious negative factor, he had no positive equities to make voluntary departure plausible. At the time of his hearing, he had no family in the United States; he had lived in this country for barely a year; and he had no other substantial ties to the United States or particular humanitarian needs. Although he had a job, this "positive equity" is mitigated by the fact that any work authorization was premised on his fraud. His lack of criminal history is not a significant positive given that he had only been in the United States a short time. And, of course, he did commit a crime, namely, immigration fraud. His admission of that conduct, while a positive factor, does not outweigh the fact that he committed it in the first place, or the other negative factors.

With no positive equities and many negative factors, including one very serious one, favorable exercise of discretion was not plausible. The lack of demonstrated prejudice forecloses defendant's claim.

## CONCLUSION

This Court should affirm the judgment.

DATED this 30th day of June, 2022.

Respectfully submitted,

SCOTT ERIK ASPHAUG
United States Attorney
District of Oregon

AMY E. POTTER
Appellate Chief

*/s/ Sarah Barr*
SARAH BARR
Assistant U.S. Attorney

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

| 9th Cir. Case Number(s) | 21-30177 |
|---|---|

The undersigned attorney or self-represented party states the following:

⦿ I am unaware of any related cases currently pending in this court.

◯ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

◯ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

| Signature | s/Sarah Barr | Date | Jun 30, 2022 |
|---|---|---|---|

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17**          27          *New 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 21-30177

I am the attorney or self-represented party.

**This brief contains** | 6,495 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

( • ) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ( ) it is a joint brief submitted by separately represented parties;

    ( ) a party or parties are filing a single brief in response to multiple briefs; or

    ( ) a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [         ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Sarah Barr      **Date** | Jun 30, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*