No. 21–30177

_____

United States Court of Appeals
for the Ninth Circuit

_____

UNITED STATES OF AMERICA,
Plaintiff-Appellee,
v.

LEOPOLDO RIVERA-VALDES,
Defendant-Appellant.

_____

Appeal from the United States District Court
for the District of Oregon
Portland Division
No. 3:19-cr-00408-IM-1
The Honorable Karin J. Immergut, District Judge

_____

**Petition for Rehearing and Rehearing En Banc**

_____

Kimberly-Claire E. Seymour
Assistant Federal Public Defender
859 Willamette Street, Eugene, Oregon 97401
Kimberly_Seymour@fd.org
(541) 465-6937
Attorney for Defendant-Appellant
Leopoldo Rivera-Valdes

# Table of Contents

**Page**

Table of Authorities ................................................................. iii

Introduction and Rule 35(b)(1) Statement ................................ 1

Procedural and Factual Background ....................................... 3

    A.    Deportation Proceedings .......................................... 3

    B.    Federal Court Proceedings ....................................... 7

Reasons for Granting the Petition ......................................... 10

    A.    The majority failed to follow clear, binding precedent applying *Jones* to determine the due process adequacy of notice. ............................................... 10

        1.    This Court's precedent holds that *Jones* provides the framework for due process in the immigration context. ..................................... 11

        2.    The majority's reasons for not following *Jones* are untenable. .......................................... 15

    B.    The Court should reject Judge Bumatay's suggestion that a lower due process notice standard applies to noncitizens in the immigration context. .............................. 18

    C.    The Court should reject Judge Baker's introduction of claims not asserted by the government that lack factual development. ........................................ 21

    D.    The Court should remand for the district court to determine under *Jones* whether "additional reasonable steps" were available. ........................... 21

Conclusion ............................................................................... 23

## Appendix

Opinion (filed June 17, 2024) .................................................. Appendix-1

# Table of Authorities

**Page(s)**

## Cases

*Al Mutarreb v. Holder,*
    561 F.3d 1023 (9th Cir. 2009) ........................................................ 14

*Andia v. Ashcroft,*
    359 F.3d 1181 (9th Cir. 2004) ........................................................ 2

*Arevalo v. Barr,*
    950 F.3d 15 (1st Cir. 2020) ............................................................ 16

*Barraza Rivera v. INS,*
    913 F.2d 1443 (9th Cir. 1990) ........................................................ 19

*Campos-Sanchez v. INS,*
    164 F.3d 448 (9th Cir. 1999) .......................................................... 19

*Chaidez v. Gonzalez,*
    486 F.3d 1079 (9th Cir. 2007) ........................................................ 14

*Covey v. Town of Somers,*
    351 U.S. 141 (1956) ...................................................................... 13

*DeMarco v. United States,*
    415 U.S. 449 (1974) ...................................................................... 21

*Demore v. Kim,*
    538 U.S. 510 (2003) .............................................................. 18-19, 20

*Dobrota v. INS,*
    311 F.3d 1206 (9th Cir. 2002) .................................................... 17, 20

*Echavarria v. Pitts,*
    641 F.3d 92 (5th Cir. 2011) ............................................................ 16

*Farhoud v. INS,*
    122 F.3d 794 (9th Cir. 1997) .................................................... 2, 19-20

*Flores-Chavez v. Ashcroft*,
362 F.3d 1150 (9th Cir. 2004) ........................................................ 2

*Fong Haw Tan v. Phelan*,
333 U.S. 6 (1948) ........................................................................ 16

*Grimm v. City of Portland*,
971 F.3d 1060 (9th Cir. 2020) ................................................. 15-16

*Hart v. Massanari*,
266 F.3d 1155 (9th Cir. 2001) ................................................. 10-11

*Haskell v. Harris*,
745 F.3d 1269 (9th Cir. 2014) ...................................................... 22

*Ibarra-Flores v. Gonzales*,
439 F.3d 614 (9th Cir. 2006) ...................................................... 20

*J.B. v. United States*,
916 F.3d 1161 (9th Cir. 2019) ...................................................... 15

*Jones v. Flowers*,
547 U.S. 220 (2006) .................................................................. 1,
2-3, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 20, 21, 22, 23

*Khan v. Ashcroft*,
374 F.3d 825 (9th Cir. 2004) ........................................................ 2

*Kisor v. Wilkie*
588 U.S. 558 (2019) .................................................................... 21

*Miller v Gammie*,
335 F.3d 889 (9th Cir. 2003) (en banc) ..................................... 11, 15

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ................................................. 11, 12, 13, 14, 16

*Peralta-Cabrera v. Gonzales*,
501 F.3d 837 (7th Cir. 2007) ...................................................... 16

iv

*Perez-Alevante v. Gonzales,*
    197 F. App'x 191 (3d Cir. 2006) ...................................................... 16

*Plyler v. Doe,*
    457 U.S. 202 (1982) ............................................................................ 19

*Popa v. Holder,*
    571 F.3d 890 (9th Cir. 2009) ........................................................... 17

*Pullman-Standard, Div. of Pullman v. Swint,*
    456 U.S. 273 (1982) ............................................................................ 21

*Ramos v. Louisiana,*
    590 U.S. 83 (2020) .............................................................................. 11

*Rendon v. Holder,*
    400 F. App'x 218 (9th Cir. 2010) ................................................... 14

*Reno v. Flores,*
    507 U.S. 292 (1993) ............................................................................ 19

*Robinson v. Hanrahan,*
    409 U.S. 38 (1972) .............................................................................. 13

*Sessions v. Dimaya,*
    584 U.S. 148 (2018) ............................................................................ 16

*Taylor v. Yee,*
    780 F.3d 928–38 (9th Cir. 2014) .................................................... 16

*Thompson v. Hebdon,*
    7 F.4th 811 (9th Cir. 2021) .............................................................. 11

*United States v. Hinojosa-Perez,*
    206 F.3d 832 (9th Cir. 2000) ........................................................... 17

*United States v. Ped,*
    943 F.3d 427 (9th Cir. 2019) ........................................................... 13

*United States v. Rivera-Valdes,*
    105 F.4th 1118 (9th Cir. 2024) ..................................... 8-9, 13, 17, 22

v

*Urbina-Osejo v. INS*,
    124 F.3d 1314 (9th Cir. 1997) ........................................................ 17

*Williams v. Mukasey*,
    531 F.3d 1040 (9th Cir. 2008) ................................................ 10, 13

*Yi Tu v. Nat'l Trans. Safety Bd.*,
    470 F.3d 941 (9th Cir. 2006) ................................................... 15, 18

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ......................................................................... 19

*Zivotofsky ex rel. Zivotofsky v. Clinton*,
    566 U.S. 189 (2012) ......................................................................... 22

## Statutes

6 U.S.C. § 471 (2002) .................................................................... 1

## Other

Fed. R. App. P. 35 ....................................................................... 1, 3

Fed. R. App. P. 40 ....................................................................... 1

vi

The defendant-appellant, through counsel, respectfully petitions the Court pursuant to Rules 35 and 40 of the Federal Rules of Appellate Procedure for rehearing and rehearing en banc on the following question:

> Does governing precedent require that *Jones v. Flowers*, 547 U.S. 220, 225 (2006), provides the analytical framework for determining the adequacy of notice of an immigration hearing under the Due Process Clause?

For the reasons provided in Judge Sanchez's dissent, the answer should be yes.

## Introduction and Rule 35(b)(1) Statement

An Immigration Judge ordered Mr. Leopoldo Rivera-Valdes removed from the United States in absentia in 1994. When the Immigration and Naturalization Service (INS) initiated the proceedings, it sent a copy of the Order to Show Cause (OSC) to a Portland address that Mr. Rivera-Valdes had provided on an earlier application.[1] The postal service returned the mailing as "Not Deliverable as Addressed/Unable to Forward." The immigration court then sent a notice with the date of

---

[1] The agency known as the INS was disbanded in 2003 with its functions replaced by Immigration and Customs Enforcement (ICE). 6 U.S.C. § 471(a) (2002).

1

the hearing by certified mail to the same address, which was returned as "unclaimed." The INS did nothing further to provide Mr. Rivera-Valdes notice of his removal hearing. Immigration officials and the Immigration Judge knew he was not informed of the hearing because he never received notice of its date, time, or location. The hearing proceeded nonetheless.

Due process requires that notice of an immigration hearing be provided in a manner "reasonably calculated" to reach the noncitizen. *Khan v. Ashcroft*, 374 F.3d 825, 829 (9th Cir. 2004); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1155-56 (9th Cir. 2004); *Farhoud v. INS,* 122 F.3d 794, 796 (9th Cir. 1997). If petitioners do not receive actual or constructive notice of deportation proceedings, "it would be a violation of their rights under the Fifth Amendment of the Constitution to deport them in absentia." *Andia v. Ashcroft*, 359 F.3d 1181, 1185 (9th Cir. 2004). In *Jones v. Flowers*, the Supreme Court held that, for notice to be "reasonably calculated, under all circumstances" to inform parties, when the government "becomes aware . . . that its attempt at notice has failed," it must take "additional reasonable steps to provide notice[.]" 547 U.S. 220, 225,

2

226-27 (2006). Thus, Mr. Rivera-Valdes was denied his due process right to a full and fair hearing because the INS sent a single hearing notice by certified mail to an address where mail had already been returned as undeliverable, and no further steps were taken to effect notice.

Over Judge Sanchez's dissent, the majority opinion perpetuates the constitutional due process violation by refusing to apply clearly established Supreme Court precedent and creating conflicts with decisions from this Court. These errors require the full Court's intervention, not only to secure national uniformity and compliance with clearly established Supreme Court authority, but also due to the gravity of the Fifth Amendment principle that "persons" refers to all people present in this country. Fed. R. App. P. 35(a), (b)(1).

## Procedural and Factual Background

### A.    Deportation Proceedings

Mr. Rivera-Valdes is a Mexican national who first arrived in the United States in 1992. ER-12. In December 1993, he paid a third party to prepare an asylum application that falsely stated he was a citizen of Guatemala, which he submitted to the INS. ER-173. The application

3

listed his address as 4037 N. Cleveland Avenue, Portland, Oregon. ER-172.

On January 28, 1994, the INS mailed a notice to the Cleveland Avenue address, acknowledging receipt of Mr. Rivera-Valdes's request for asylum. ER-112. On February 3 and 8, 1994, the INS mailed additional notices to the Cleveland Avenue address, which stated that Mr. Rivera-Valdes's employment authorization was approved and instructed him to appear in person at the INS office within forty-five days to pick up his employment authorization card. ER-113–20.

On March 3, 1994, Mr. Rivera-Valdes appeared at the INS office to obtain his employment authorization. ER-173. By that point, however, INS officials had determined that Mr. Rivera-Valdes had purchased his asylum application from a third party (who had sold multiple copies of the birth certificate and had been prosecuted). ER-174. Mr. Rivera-Valdes voluntarily withdrew the application. ER-175.

On the same day, INS officers personally served Mr. Rivera-Valdes with an Order to Show Cause (OSC), which stated that his removal hearing would be held at an address and on a date "to be calendared."

ER-124. The form required advice of any change of address within five days and warned that an in absentia hearing would take place if he did not appear and had been provided "appropriate notice of hearing." ER-125. Mr. Rivera-Valdes signed the OSC, and an officer also signed to affirm that she had read the OSC to Mr. Rivera-Valdes in Spanish. ER-126. The first page of the OSC, which was typed in by the INS, listed Cleveland Avenue as Mr. Rivera-Valdes's address. ER-122.

On April 20, 1994, the INS District Counsel filed the OSC with the Office of the Immigration Judge and moved the court to schedule the case for a hearing. ER-128. A copy of the OSC mailed to the Cleveland Avenue address was returned as "not deliverable" by the United States Postal Service. ER-129.

On April 25, 1994, the Office of the Immigration Judge sent a hearing notice by certified mail to the Cleveland Avenue address, instructing Mr. Rivera-Valdes to appear for a deportation hearing on August 12, 1994. ER-130. The hearing notice was returned as "unclaimed"

on May 23, 1994. ER-131, 132. Unclaimed mail does not signify that the mail was refused; it simply means that no one claimed it.[2]

The deportation hearing took place as scheduled on August 12, 1994. ER-179. Mr. Rivera-Valdes did not appear. ER-179. The Immigration Judge found that he was properly served with the OSC and "duly notified" of the hearing, even though the hearing notice had been returned "unclaimed" and an earlier mailing was returned as "not deliverable." ER-149, 179. The Immigration Judge ordered Mr. Rivera-Valdes deported in absentia and issued a warrant for his deportation that same day. ER-179, 180. On August 30, 1994, the INS sent Mr. Rivera-Valdes a Form I-166 instructing him to appear at the INS office for deportation. ER-136. The letter was sent by certified mail to the Cleveland Avenue address and was returned as "not deliverable." ER-137.

On October 17, 2006, ICE agents found Mr. Rivera-Valdes living in Portland, Oregon. ER-139. He was deported on October 21, 2006, pursuant to the August 1994 warrant of deportation. ER-141.

---

[2] "Unclaimed" indicates that the addressee abandoned or failed to call for mail. *507 Mailer Services*, USPS Postal Explorer, https://pe.usps.com/ text/dmm300/507.htm (last visited July 22, 2024).

## B.    Federal Court Proceedings

A federal grand jury indicted Mr. Rivera-Valdes for illegal reentry on September 10, 2019, alleging that he unlawfully returned to the United States after the August 1994 deportation. ER-185. Mr. Rivera-Valdes filed a motion to dismiss the indictment, arguing that the in absentia deportation proceedings violated his due process rights because he had not received adequate notice. ER-160.

The government responded that Mr. Rivera-Valdes had not established a due process violation, that he had not established prejudice, and that he had not satisfied the procedural prerequisites for collateral review. ER-84. However, the United States offered no proof that Mr. Rivera-Valdes was actually served with the hearing notice or received notice of the hearing date. Mr. Rivera-Valdes submitted an affidavit stating that he never received notice that the deportation hearing had been scheduled and did not know he had been ordered to appear at that hearing. ER-158, 159.

Following a hearing, the district court denied Mr. Rivera-Valdes's motion to dismiss the indictment. ER-11, 193. The district court held

that Mr. Rivera-Valdes failed to show that the government's method of service was not "reasonably calculated" to reach him and that the procedures provided sufficient due process. ER-18. Because the district court found that Mr. Rivera-Valdes's due process rights were not violated, it did not reach the government's remaining arguments as to prejudice or the procedural requirements for collateral review. ER-19 n.2.

On August 9, 2021, Mr. Rivera-Valdes entered a conditional guilty plea, preserving the right to appeal the district court's denial of his motion to dismiss. ER-49, 50. The district court sentenced him to imprisonment for time served, followed by one year of supervised release. ER-36.

Mr. Rivera-Valdes appealed. ER-187. In the majority, per curiam decision, the panel affirmed the district court's denial of the motion to dismiss. The panel applied the rule that due process is satisfied if service is "conducted in a manner reasonably calculated" to ensure that notice reaches the individual, holding that "mailing notice of immigration proceedings to a noncitizen's last provided address"—the statutory requirement—is constitutionally sufficient," even if the individual never received the notice. *United States v. Rivera-Valdes*, 105 F.4th 1118,

1121-22 (9th Cir. 2024) (internal citations omitted). The panel concluded that the "additional reasonable steps" framework in *Jones* did not apply in the immigration context, and that, even if *Jones* applied, there were no additional reasonable steps for the government to take. *Id.* at 1124.

Judge Bumatay wrote in a concurring opinion that "[d]ue process is context specific" and applying *Jones* in the immigration context would "break new constitutional ground." *Id.* at 1124-26 (Bumatay, J., concurring). Judge Baker, sitting by designation, filed a separate concurrence, agreeing with the per curiam opinion that compliance with the statutory notice requirements satisfied due process, and adding that the immigration context is distinguishable from *Jones* because Mr. Rivera-Valdes received "notice to expect notice" of a deportation hearing. *Id.* at 1126-27. Both concurrences rely on considerations – not argued by the government – about burdens to immigration enforcement. *Id.* at 1126-28.

9

Judge Sanchez dissented, concluding that not only was *Jones* the appropriate framework to analyze adequate notice, but the Ninth Circuit had already implemented the *Jones* framework in the immigration context. *Id.* at 26 (Sanchez, J., dissenting) (citing *Williams v. Mukasey*, 531 F.3d 1040, 1042 (9th Cir. 2008)). He explained that none of the cases relied on in the majority opinion involving lack of actual notice addressed the specific circumstance present in this case: Whether mailed notice is constitutionally sufficient "when the government knows its method of notice was ineffective and takes no additional steps that are reasonably available to it." *Id.* at 27. Judge Sanchez would have vacated and remanded for the district court to address in the first instance specific factual questions under *Jones* regarding whether and what additional reasonable steps were available. *Id.*

## Reasons for Granting the Petition

### A. The majority failed to follow clear, binding precedent applying *Jones* to determine the due process adequacy of notice.

The majority's opinion contravenes the foundational principle of stare decisis, that "binding authority must be followed unless and until overruled by a body competent to do so." *Hart v. Massanari*, 266 F.3d

10

1155, 1170 (9th Cir. 2001). The panel should have been bound by "the 'reasoning or theory,' not just the holding, of Supreme Court decisions (even in the face of prior contrary Ninth Circuit precedent)." *Thompson v. Hebdon*, 7 F.4th 811, 827 (9th Cir. 2021) (citing *Miller v Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)); *see also Ramos v. Louisiana*, 590 U.S. 83, 104 (2020) ("It is usually a judicial decision's reasoning— its *ratio decidendi*—that allows it to have life and effect in the disposition of future cases."). Here, *Jones* provides the applicable rationale for due process notice requirements, and prior binding Circuit precedent applies the *Jones* framework in the immigration context. The panel's approach improperly abandons Supreme Court due process jurisprudence as well as binding Circuit precedent and dilutes the process due to noncitizens present in the United States.

> **1.** **This Court's precedent holds that *Jones* provides the framework for due process in the immigration context.**

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), the Supreme Court held that due process requires the govern-

11

ment to provide notice that is "reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections" by means "such as one desirous of actually informing" the recipient. 339 U.S. at 314. The later decision in *Jones* elaborated on what "reasonably calculated" means in the specific circumstance where the government has knowledge that its attempt to provide notice has failed. 547 U.S. at 226.

In *Jones*, where the government sought to take property, the Court held that the government "must take additional reasonable steps to attempt to provide notice . . . if practicable to do so." *Jones*, 547 U.S. at 234. The Court reasoned that "a person who actually desired to inform" another would not "do nothing when a certified letter . . . is returned unclaimed." *Id.* at 229. Instead, a reasonable sender "desirous of actually informing" the recipient would "take further reasonable steps if any were available." *Id.* at 230.

*Jones*'s reasoning drew upon previous Supreme Court decisions holding that the government must "consider unique information about

an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case." *Id.* at 230; *see Robinson v. Hanrahan*, 409 U.S. 38, 40 (1972) (holding that notice sent to a home address was inadequate when the state knew that the recipient was in prison); *Covey v. Town of Somers*, 351 U.S. 141, 146-147 (1956) (holding that notice by mailing, posting, and publication was inadequate when officials knew the recipient was incompetent).

This Court has explicitly adopted the *Mullane-Jones* standard as providing the "'appropriate analytical framework' for considering the adequacy of notice of government action" in an immigration case. *Williams*, 531 F.3d at 1042. The majority wrongly casts *Williams* aside, arguing that the opinion did not "squarely address[ ]" whether *Jones*'s "additional reasonable steps" requirement applies in the immigration context. *Rivera-Valdes*, 105 F.4th at 1122-23. Contrary to the majority's position, the citation to *Jones* does not "merely lurk in the record." *Id.* at 1122 (citing *United States v. Ped*, 943 F.3d 427, 4434 (9th Cir. 2019)). Instead, the citation to *Jones* in *Williams* is an explanation of the governing rule of law, defining the "reasonably calculated" framework that

satisfies due process. 547 U.S. at 225. *Jones*'s "additional reasonable steps" rule is an elaboration of the "reasonably calculated" standard that cannot be severed from the governing framework.

Moreover, the majority's rejection of *Jones* radically departs from this Circuit's decisions that routinely evaluate the adequacy of notice under *Jones. See Chaidez v. Gonzalez*, 486 F.3d 1079, 1086 n.8 (9th Cir. 2007) (referencing *Jones* but finding it unnecessary to analyze due process under this standard due to relevant regulatory changes); *Al Mutarreb v. Holder*, 561 F.3d 1023, 1027 (9th Cir. 2009) (referencing *Jones* in discussion of failure to take additional reasonable steps, but finding removal order invalid on other grounds and assuming that notice was sufficient); *Rendon v. Holder*, 400 F. App'x 218, 219 (9th Cir. 2010) (citing *Jones* and finding that the INS took the necessary "additional reasonable steps" to locate the petitioner's address).

In sum, the majority opinion departs from foundational due process principles and binding Circuit precedent by failing to apply the *Mullane-Jones* due process framework in this immigration case.

14

### 2. The majority's reasons for not following *Jones* are untenable.

The panel majority's refusal to apply *Jones* is inconsistent with the reasoning and mode of analysis in *Jones* and fails to follow this Court's previous application of *Jones* in the immigration context. *See Miller*, 335 F.3d at 899-900 (describing the mandatory rules of stare decisis). The Supreme Court in *Jones* reasoned that "a person who actually desired to inform" another would not "do nothing when a certified letter . . . is returned unclaimed." 547 U.S. at 229.

The majority's proposal of excluding immigration proceedings from due process notice requirements is inconsistent with the broad application of *Jones* to all due process contexts. This Court has relied on *Jones* to assess the adequacy of notice in a variety of government proceedings affecting real and personal property, licensing, privacy, and other protected legal interests. *See, e.g., Yi Tu v. Nat'l Trans. Safety Bd.*, 470 F.3d 941, 946 (9th Cir. 2006) (applying *Jones* to pilot license suspension proceedings); *J.B. v. United States*, 916 F.3d 1161, 1173-74 (9th Cir. 2019) (applying *Jones* to subpoena of tax records); *Grimm v. City of Portland*, 971 F.3d 1060, 1067-68 (9th Cir. 2020) (applying *Jones*

15

to towing of car); *Taylor v. Yee*, 780 F.3d 928, 935-38 (9th Cir. 2014) (applying *Jones* in action challenging escheatment statute).

The individual interests at stake for a person facing removal are no less serious. The Supreme Court has called removal "a 'drastic measure,' often amounting to lifelong 'banishment or exile[.]'" *Sessions v. Dimaya*, 584 U.S. 148, 157 (2018) (quoting *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948)). In *Dimaya*, the Court concluded that, under the Due Process Clause, "the grave nature of deportation," warranted application of "the most exacting vagueness standard," an aspect of fair notice. *Id.* Evidence of various circuits applying the *Mullane-Jones* notice framework to government action in the immigration context further refutes the majority's exclusionary proposal. *See, e.g., Arevalo v. Barr*, 950 F.3d 15, 20 (1st Cir. 2020) (notice of motion to reinstate removal order); *Perez-Alevante v. Gonzales*, 197 F. App'x 191, 195-96 (3d Cir. 2006) (notice of removal hearing); *Echavarria v. Pitts*, 641 F.3d 92, 94-95 (5th Cir. 2011) (notice of immigration bond demand); *Peralta-Cabrera v. Gonzales*, 501 F.3d 837, 845 (7th Cir. 2007) (notice of removal hearing).

16

The majority misplaces reliance on Circuit decisions that pre-date *Jones*, none of which involved a claim that the government was aware its notice had not reached the intended recipient. *Rivera-Valdes*, 105 F.4th at 1121-22 (citing *Urbina-Osejo v. INS*, 124 F.3d 1314, 1317 (9th Cir. 1997); *United States v. Hinojosa-Perez*, 206 F.3d 832, 837 (9th Cir. 2000); *Dobrota v. INS*, 311 F.3d 1206, 1211 (9th Cir. 2002)). The single citation to post-*Jones* authority similarly does not address the specific question of "whether due process entails further responsibility" in this circumstance. *Rivera-Valdes*, 105 F.4th at 1121-22 (citing *Popa v. Holder*, 571 F.3d 890 (9th Cir. 2009), *overruled on other grounds by Lopez v. Barr*, 925 F.3d 396 (9th Cir. 2019)); *Jones*, 547 U.S. at 227 (posing the question of whether due process entails further responsibility when the government becomes aware its attempt at notice has failed).

The majority further argues that compliance with statutory requirements alone is enough to satisfy due process in every case, even when notice is not achieved. *Id.* at 1123. The Supreme Court in *Jones* explicitly rejected this argument, requiring that the government "consider unique information about an intended recipient *regardless of*

17

*whether a statutory scheme is reasonably calculated to provide notice*."
*Jones*, 547 U.S. at 230 (emphasis added); *see also Yi Tu*, 470 F.3d at
945-46 (rejecting agency claim that, because it was statutorily author-
ized to give notice by certified mail, its notice of pilot license suspension
proceedings sent by certified mail was constitutionally adequate) (citing
*Jones*, 547 U.S. at 224).

Here, the returned, unclaimed mail gave the government unique
information to consider about Mr. Rivera-Valdes. Regardless of whether
the statutory notice provisions relied on by the majority were previously
determined to be reasonably calculated to provide notice, *Jones* governs
the analysis when one particular "circumstance and condition" –
knowledge by the state actor that its initial attempt to provide notice
has failed – varies the constitutionally required notice. *Jones*, 547 U.S.
at 227.

**B.    The Court should reject Judge Bumatay's sugges-
tion that a lower due process notice standard ap-
plies to noncitizens in the immigration context.**

It is well established that due process applies to immigration pro-
ceedings, including removal hearings. *Demore v. Kim*, 538 U.S. 510

(2003); *Reno v. Flores*, 507 U.S. 292 (1993). The Due Process Clause applies to "persons," so: "Whatever his status under the immigration laws, a noncitizen is surely a 'person' in any ordinary sense of that term." *Plyler v. Doe*, 457 U.S. 202, 210 (1982). "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments. Indeed, we have clearly held that the Fifth Amendment protects aliens whose presence in this country is unlawful from invidious discrimination by the Federal Government." *Id.* (internal citations omitted).

Both the Supreme Court and the Ninth Circuit have clearly stated that the Fifth Amendment and its Due Process Clause protect the right to a full and fair hearing along with adequate notice of that hearing, regardless of a person's citizenship status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir. 1999); *see also Barraza Rivera v. INS*, 913 F.2d 1443, 1447 (9th Cir. 1990) ("The Fifth Amendment guarantees due process in deportation proceedings."); *Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir. 1997) (Due

Process Clause protections apply in deportation proceedings); *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620 (9th Cir. 2006) (the Fifth Amendment grants due process in removal proceedings).

Although it is true that Congress may create rules in the immigration context that would be unacceptable if applied to citizens, *Demore v. Kim*, 538 U.S. 510, 521-522 (2003), courts have not held that there is a lower standard for adequacy of notice to noncitizens facing removal proceedings than applies to notice in other contexts or to citizens. On the contrary, this Court has squarely held that due process requires notice of removal proceedings be "reasonably calculated" to reach the intended recipient to comport with due process. *Dobrota v. INS*, 311 F.3d 1206, 1210 (9th Cir. 2002). That is the identical due process standard addressed in *Jones*.

Because Judge Bumatay's concurrence disregards longstanding precedent and attempts to create an inferior standard of due process protections for noncitizens, the Court should reject it.

20

**C.    The Court should reject Judge Baker's introduction of claims not asserted by the government that lack factual development.**

Judge Baker's concurrence consists largely of policy arguments based on statistics provided in an addendum, none of which were argued by the government or adduced in the district court. "But even the most sensible policy argument would not empower us to ignore . . . the demands of the Constitution." *Kisor v. Wilkie*, 588 U.S. 558, 619 (2019) (Roberts, C.J., concurring in part). The Court should reject arguments not asserted by the government and disregard factual claims that were not developed or even presented in the district court. *See Pullman-Standard, Div. of Pullman v. Swint*, 456 U.S. 273, 291-92 (1982) ("[Factfinding] is the basic responsibility of district courts, rather than appellate courts . . . [T]he Court of Appeals should not have resolved in the first instance this factual dispute which had not been considered by the District Court.") (quoting *DeMarco v. United States*, 415 U.S. 449, 450 (1974)).

**D.    The Court should remand for the district court to determine under *Jones* whether "additional reasonable steps" were available.**

In the absence of factual development, the majority opinion erred by engaging in an analysis of additional reasonable steps available to the

government. *Rivera-Valdes*, 105 F.4th at 13 ("[E]ven if *Jones*'s 'additional reasonable steps' standard did supersede the constitutional adequacy of notice as recognized in our cases, the government still satisfied due process because no additional reasonable steps existed that were practicable for it to take.").

This Court is "a court of review, not first view." *Haskell v. Harris*, 745 F.3d 1269, 1271 (9th Cir. 2014); *see also Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 201 (2012). Its role is limited to determining whether the district court abused its discretion or otherwise erred and does not include making novel findings of fact. *Id.* Here, the district court did not undertake any fact-finding on whether the government could have taken additional reasonable steps to notify Mr. Rivera-Valdes of his pending removal hearing. *See Rivera-Valdes*, 105 F.4th at 1137 (Sanchez, J., dissenting) ("[W]hether the government could have taken additional reasonable steps to effect notice . . . was never undertaken by the district court, [and] we do not know what evidence the government could or would present."); ER-18, 19 n.2 (finding that the notice provided was sufficient and declining to reach the remaining arguments).

22

The panel should not have substantively evaluated a factual issue that was not first fully developed before the district court. The Court should vacate the denial of the motion to dismiss and remand for the district court to determine the application of *Jones* to the facts of this case in the first instance.

## Conclusion

For the foregoing reasons, this Court should grant rehearing and rehearing en banc.

Respectfully submitted July 31, 2024.

*s/ Kimberly-Claire E. Seymour*
Kimberly-Claire E. Seymour
Attorney for Defendant-Appellant

United States Court of Appeals

for the Ninth Circuit

## Form 11. Certificate of Compliance for Petitions for Rehearing

9th Cir. Case Number 23–35030

I am the attorney or self-represented party.

I certify that pursuant to 9th Circuit Rule 35-4 or 40-1, the attached petition for rehearing and rehearing en banc is prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and contains the following number of words: 4,107.

**Signature:** *s/Kimberly-Claire E. Seymour*      **Date:** July 31, 2024

24

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-30177 |
| *Plaintiff-Appellee*, | D.C. No. |
| v. | 3:19-cr-00408- IM-1 |
| LEOPOLDO RIVERA-VALDES, | |
| *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the District of Oregon
Karin J. Immergut, District Judge, Presiding

Argued and Submitted November 9, 2022
Portland, Oregon

Filed June 17, 2024

Before: Patrick J. Bumatay and Gabriel P. Sanchez, Circuit
Judges, and M. Miller Baker,[*] International Trade Judge.

---

[*] The Honorable M. Miller Baker, Judge for the United States Court of
International Trade, sitting by designation.

Appendix-1

Per Curiam Opinion;
Concurrence by Judge Bumatay;
Concurrence by Judge Baker;
Dissent by Judge Sanchez

### SUMMARY[**]

### Criminal Law

In a per curiam opinion, the panel affirmed the district court's denial of Leopoldo Rivera-Valdes's motion to dismiss an indictment charging him with illegal reentry under 8 U.S.C. § 1326 in a case in which Rivera-Valdes, who failed to appear at his 1994 deportation proceeding, argued that immigration authorities violated his due process rights by ordering him deported *in absentia* despite the notice of the deportation hearing being returned as undeliverable or unclaimed.

The panel held that the deportation *in absentia* did not violate due process. The panel wrote that whether Rivera-Valdes actually received the notice, the government followed its statutory obligations and reasonably attempted to inform him of the hearing by mailing notice to his last (and only) provided address. Rejecting Rivera-Valdes's argument that additional steps to notify him of his deportation hearing were required under *Jones v. Flowers*, 547 U.S. 220 (2006), the panel disagreed with Rivera-Valdes

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that this court has already adopted *Jones*'s "additional reasonable steps" requirement in the immigration context; disagreed with Rivera-Valdes that *Jones*'s "additional step" framework applies here; and concluded that even if *Jones*'s "additional reasonable steps" standard did supersede the constitutional adequacy of notice as recognized in this court's cases, the government still satisfied due process because no additional reasonable steps existed that were practicable for it to take.

Judge Bumatay concurred. He wrote that to the extent this court is bound to use an interest-balancing framework to address whether service of notice passes constitutional muster, he joins the per curiam opinion. He wrote separately to express his concerns with the dissent's attempt to break new constitutional ground to resolve this case by seeking to import *Jones*'s "additional steps" requirement to the immigration context.

Court of International Trade Judge Baker concurred. Noting that the per curiam opinion distinguishes *Jones*, he wrote that if the court allowed the presumption of service to be rebutted by merely showing that a notice of deportation hearing was returned as unclaimed or undeliverable as the dissent proposes, then it would reward an alien's evasion, throw sand in the gears of immigration efforts, and cast doubt on the validity of tens, if not hundreds, of thousands of deportations *in absentia* since 1996. He wrote that *Jones* is also distinguishable because the property owner in that case did not receive notice to expect notice.

Judge Sanchez dissented. He wrote that despite precedent clarifying that the general rules concerning adequacy of notice apply in the immigration context, the majority holds that *Jones* does not apply in the context of

immigration proceedings, and resolves the appeal by relying
on pre-*Jones* circuit precedent that did not address whether
mailed notice comports with due process when the
government knows its method of notice was ineffective and
takes no additional steps that are reasonably available to it.
He would vacate and remand for further proceedings.

**COUNSEL**

Sarah Barr (argued) and Suzanne Miles, Assistant United
States Attorneys; Amy E. Potter, Appellate Chief; Scott E.
Asphaug, United States Attorney, District of Oregon; United
States Department of Justice, Office of the United States
Attorney, Portland, Oregon; for Plaintiff-Appellee.

Kimberly-Claire E. Seymour (argued), Assistant Federal
Public Defender; Eugene, Oregon; for Defendant-Appellant.

## OPINION

PER CURIAM:

Thirty years ago, Leopoldo Rivera-Valdes failed to appear at his deportation hearing and was ordered deported *in absentia.* He did not attend this hearing despite being directly given an order to appear and then being sent the date of the hearing by certified mail at the address he provided to immigration officials. In 2006, after being apprehended, he was finally deported.

After being deported, Rivera-Valdes again unlawfully entered the United States. In 2019, he was charged with illegal reentry under 8 U.S.C. § 1326. In the district court, he challenged the indictment, alleging that his 1994 *in absentia* deportation order violated due process. The district court denied the motion. Rivera-Valdes then entered a conditional guilty plea, preserving the right to appeal the constitutional challenge to his deportation. He now appeals.

Because Rivera-Valdes failed to establish that his deportation violated his due process rights, we affirm.

## I.

Rivera-Valdes, a citizen of Mexico, unlawfully entered the United States in 1992. In December 1993, he applied for asylum and work authorization, falsely claiming that he was a citizen of Guatemala. In that application, Rivera-Valdes provided his address as "4037 N. Cleveland, Portland, OR, 97212." In January 1994, the then-Immigration and Naturalization Service sent Rivera-Valdes a notice acknowledging receipt of the asylum application by regular mail to his Portland address.

In two notices, dated February 3 and 8, the INS informed Rivera-Valdes that his application for work authorization was approved and instructed him to pick up the authorization at a local INS office. Again, the INS mailed the notices to the Portland address provided by Rivera-Valdes.

Rivera-Valdes presumably received notice of the work authorization approval because he showed up at the local INS office to pick it up on March 3. There, he presented a false Guatemalan birth certificate as proof of his identity. But his deception was discovered. Immigration officials did not hand Rivera-Valdes the work authorization, instead serving him with an "order to show cause and notice of hearing." The order and notice directed him to appear at deportation proceedings before an immigration judge at a date to be calendared. An immigration official also read the order to Rivera-Valdes in Spanish and he signed the notice, acknowledging its receipt.

The order and notice listed Rivera-Valdes's Portland address and warned him that he was required by law to immediately notify the immigration court within five days of any address change. It stated that "[a]ny notices will be mailed only to the last address provided . . . ." The order and notice further advised him that he would be ordered deported *in absentia* if he failed to attend his deportation hearing. Rivera-Valdes did not provide the government with any notice of a change of address.

On April 20, the INS moved the immigration court to schedule a hearing and mailed a copy of the motion to Rivera-Valdes at the Portland address. The postal service returned the mail as "Not Deliverable As Addressed/Unable To Forward."

On April 25, the immigration court sent Rivera-Valdes notice that his deportation hearing was scheduled for August 12—this time, the notice was sent by certified mail. The postal service returned this mailing as "unclaimed" a month later.

Rivera-Valdes failed to appear at his August 12 deportation hearing, and the immigration judge ordered him deported *in absentia*.

## II.

A defendant charged with violating § 1326 may collaterally attack his underlying deportation order. *See United States v. Martinez*, 786 F.3d 1227, 1230 (9th Cir. 2015). To prevail, a defendant must show that (1) he exhausted administrative remedies; (2) the deportation proceedings improperly deprived him of an opportunity for judicial review; and (3) the deportation order was fundamentally unfair. 8 U.S.C. § 1326(d); *see also United States v. Palomar-Santiago*, 593 U.S. 321, 326 (2021). A deportation order is fundamentally unfair if the defendant's due process rights were violated "by defects in his underlying deportation proceeding," and the defendant suffered prejudice as a result. *Martinez*, 786 F.3d at 1230.

## A.

On appeal, Rivera-Valdes argues that immigration authorities violated his due process rights by ordering him deported *in absentia* despite the notice of the deportation hearing being returned as undeliverable or unclaimed. We disagree.

At the time of Rivera-Valdes's 1994 deportation, Congress required that each alien receive written notice of deportation proceedings in person or "by certified mail." 8

U.S.C. § 1252b(a)(1), (2) (repealed 1996). That statute specified that the alien "must immediately provide" a contact address and "must provide the Attorney General immediately with a written record of any change of the alien's address." *Id*. § 1252b(a)(1)(F)(i)–(ii). If the alien failed to provide up-to-date address information, then Congress said that "written notice shall not be required." *Id.* § 1252b(a)(2). And if the alien failed to attend deportation proceedings after being given notice "at the most recent address provided," Congress commanded that the alien "be ordered deported . . . in absentia" so long as the notice requirements were met. *Id*. § 1252b(c)(1).

Under this statutory regime, service of a deportation notice by certified mail only created a rebuttable "presumption of proper delivery." *Arrieta v. INS*, 117 F.3d 429, 431 (9th Cir. 1997). If an alien could "establish that her mailing address has remained unchanged, that neither she nor a responsible party working or residing at that address refused service, and that there was nondelivery or improper delivery by the Postal Service, then she [had] rebutted the presumption of effective service." *Id*. at 432. The burden then shifted to the government "to show that a responsible party refused service." *Id*.

More than 25 years ago, we concluded that the government's compliance with these notice provisions satisfied due process, even if the alien did not "actually receive notice of [the] deportation hearing." *Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir. 1997). In that case, the notice was sent by certified mail to the address provided by the alien and acknowledged by someone at that address. *Id*. The alien claimed that he "did not actually and personally receive the notice of hearing." *Id*. That fact did not make a difference because, we said, "due process is satisfied if

service is conducted in a manner 'reasonably calculated' to ensure that notice reaches the alien." *Id*. And the certified mailing was enough to meet this standard. *Id*.

In the following years, we repeatedly affirmed that mailing notice of immigration proceedings to an alien's last provided address is constitutionally sufficient. *See, e.g.*, *Urbina-Osejo v. INS*, 124 F.3d 1314, 1317 (9th Cir. 1997) ("Notice of a deportation hearing sent by regular mail to the last address provided by the alien to the INS satisfies the requirements of constitutional due process[.]" (simplified)); *United States v. Hinojosa-Perez*, 206 F.3d 832, 837 (9th Cir. 2000) (holding that an alien's "attempt to claim prejudice from the failure to send notice to a place where he no longer lived is unpersuasive" given that he was "adequately warned of his responsibility to keep his address current"); *Dobrota v. INS*, 311 F.3d 1206, 1211 (9th Cir. 2002) (finding that the government satisfies due process "by mailing notice of [a] hearing to an alien at the address last provided").

We held the same in *Popa v. Holder*, 571 F.3d 890 (9th Cir. 2009), *overruled on other grounds by Lopez v. Barr*, 925 F.3d 396 (9th Cir. 2019). In that case, the government mailed a notice to appear to the alien's last provided address in Nevada. *Id*. at 898. The alien then moved to California without informing the government, which later mailed a hearing notice to her Nevada address. *Id*. As a result, the alien didn't receive the notice and missed her removal proceeding, and an immigration judge ordered her removed *in absentia*. *Id.* at 893. None of this posed a due process problem. As we said, an alien "does not have to actually receive notice of a deportation hearing in order for the requirements of due process to be satisfied." *Id.* at 897. Instead, due process "is satisfied if service is conducted in a manner 'reasonably calculated' to ensure that notice reaches

the alien." *Id.* (quoting *Farhoud*, 122 F.3d at 796).  There, the alien's "right to due process was not violated because the Immigration Court mailed notice of her hearing to [her] last provided address." *Id*. at 898.

Here, our precedent shows that the government complied with due process.  Rivera-Valdes provided the government with his Portland address in his asylum application.  The government personally served him with the order and notice that instructed him to inform the government of any change to his address.  Not only that, but an immigration official read the order to him.  Rivera-Valdes gave no change of address.  The government then sent notice of his deportation hearing to his Portland address via certified mail.  Whether he actually received the notice, the government followed its statutory obligations and reasonably attempted to inform him of the hearing by mailing notice to his last (and only) provided address.  We thus hold that Rivera-Valdes's deportation *in absentia* did not violate due process.

**B.**

Despite this clear precedent, Rivera-Valdes argues on appeal that the government should have taken additional steps to notify him of his deportation hearing because, according to him, such steps were required under *Jones v. Flowers*, 547 U.S. 220 (2006).  In *Jones*, the Supreme Court considered the due process rights of a homeowner whose house was forcibly sold by the State for failure to pay property taxes.  To notify the homeowner, the State sent two notices of the tax sale by certified mail to the house that were returned as "unclaimed." *Id*. at 223–24.  The State then sold the home. *Id*.  The Court said that these procedures violated due process.  In "extinguishing a property owner's interest in a home," *id.* at 229, "the State should have taken

additional reasonable steps to notify [the homeowner], if practicable to do so," *id*. at 234.

*Jones* does not help Rivera-Valdes for three reasons.

First, we disagree that our court has already adopted *Jones*'s *"*additional reasonable steps" requirement in the immigration context. While we must, of course, follow the binding precedent of prior panels, *see Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc), this applies only when a prior panel "squarely addresses" the issue, *United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) (simplified). "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *United States v. Ped*, 943 F.3d 427, 434 (9th Cir. 2019) (simplified). Thus, when a "prior case does not raise or consider the implications of a legal argument, it does not constrain" a new panel's analysis. *Kirilyuk*, 29 F.4th at 1134 (simplified).

Neither Rivera-Valdes nor the dissent cites any case applying *Jones*'s "additional reasonable steps" framework to the immigration context. The dissent principally relies on *Williams v. Mukasey*, 531 F.3d 1040, 1042 (9th Cir. 2008), to claim that we applied *Jones*'s broad ruling to immigration proceedings. But in *Williams*, we cited *Jones* only once, and we did so only to support the Supreme Court latest's articulation of the well-known *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), due process standard. The sum total of *Williams*'s invocation of *Jones* was this:

> Under that framework, "due process requires the government to provide 'notice reasonably

> calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jones v. Flowers*, 547 U.S. 220, 226, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. 652).

*Williams* thus didn't apply *Jones*'s "additional reasonable steps" framework to the immigration context. None of the other precedential cases cited by the dissent apply *Jones*'s "additional reasonable steps" requirement either. *See Chaidez v. Gonzales*, 486 F.3d 1079, 1086 n.8 (9th Cir. 2007) (declining to address *Jones* in the context of who is a "responsible person[]" for the delivery of certified mail); *Al Mutarreb v. Holder*, 561 F.3d 1023, 1027–28 (9th Cir. 2009) (mentioning *Jones* but declining to resolve questions about adequacy of notice in that case by assuming it was sufficient).

Second, we disagree that *Jones*'s "additional step" framework applies here. The notice required by due process "will vary with circumstances and conditions," *Jones*, 547 U.S. at 227 (quoting *Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956)), and "assessing the adequacy of a particular form of notice requires balancing the 'interest of the [government]' against 'the individual interest sought to be protected by the [Due Process Clause]'" in the circumstances at issue, *id*. at 229 (quoting *Mullane*, 339 U.S. at 314). In the immigration context, we've said that "actual notice" is unnecessary and that service must only be "'reasonably calculated' to ensure that notice reaches the alien." *Farhoud*, 122 F.3d at 796.

Appendix-12

The statutory regime in place at the time of Rivera-Valdes's 1994 deportation hearing was "'reasonably calculated' to ensure that" Rivera-Valdes received notice. *See id.* This statutory scheme, which required aliens to update their addresses and permitted aliens to rebut the presumption of service, distinguishes this case from *Jones* and adequately balances the relevant competing interests in the immigration context.

Indeed, the contexts of *Jones* and deportation proceedings are quite different. An alien who has unlawfully entered the country has obvious reasons to avoid appearing for a deportation hearing—unlike a property owner, who has no reason to ignore an imminent tax sale. Requiring the government to do more than send notice to the last address provided would reward evasion of service. Thus, by failing to comply with his statutory obligations, Rivera-Valdes "relieve[d] the government of its responsibility to provide" him with any more notice of the hearing. *See Popa*, 571 F.3d at 897.[1]

Third, even if *Jones*'s "additional reasonable steps" standard did supersede the constitutional adequacy of notice as recognized in our cases, the government still satisfied due process because no additional reasonable steps existed that were practicable for it to take. Rivera-Valdes was personally served the "order to show cause and notice of hearing" initiating his deportation proceedings, which was also read to him. The order and notice warned Rivera-Valdes that he must update his address and told him that future notices would be sent to him by mail only. The government then

---

[1] We express no view on *Jones*'s application in the immigration context outside of the statutory regime that existed in 1994, at the time of Rivera-Valdes's deportation hearing.

sent Rivera-Valdes notice of the deportation hearing by certified mail to the only address he provided.  Not only that, the government *also* used regular mail to send its motion to schedule the hearing.  These mailings were returned as "unclaimed" or "not deliverable."  *See Jones*, 547 U.S. at 235 (explaining that resending by regular mail an unclaimed notice of hearing previously sent by certified mail is a reasonable follow-up measure).  The government possessed no other information about Rivera-Valdes's whereabouts.  Given this, under *Jones*, there were no practicable, reasonable steps left for the government to take.  *Id*. at 234 ("[I]f there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing.").[2]

## III.

We thus affirm the district court's denial of the motion to dismiss.

**AFFIRMED.**

---

[2] The dissent would give Rivera-Valdes another bite at the apple by remanding for the district court to consider whether there were any additional, reasonable steps the government could have taken.  Even if we agreed that *Jones* applied here, we fail to see how a remand could further develop the factual record about events that transpired thirty years ago.  Moreover, we note that Rivera-Valdes raised his *Jones* argument for the first time on appeal, which explains why the district court never considered this issue in the first instance.  He can hardly complain about our failure to remand to the district court a question that he never addressed below.

BUMATAY, Circuit Judge, concurring:

As the per curiam opinion establishes, this is a straightforward case under our precedent. The government sent notice of the deportation hearing by certified mail to the last address provided by Leopoldo Rivera-Valdes. Case after case says that this satisfies due process and that there's nothing wrong with the *in absentia* deportation order here. To the extent that our court is bound to use an interest-balancing framework to address whether service of notice passes constitutional muster, *see Mullane v. Central Hanover Bank & Trust Company*, 339 U.S. 306, 314 (1950), I join the per curiam opinion. But I write separately to express my concerns with the dissent's attempt to break new constitutional ground to resolve this case.

## I.

Due process is context specific. When it comes to immigration, courts have "largely defer[red] to the political branches" on what process is due to aliens in removal proceedings. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1215 (9th Cir. 2022) (Bumatay, J., concurring). That's because "the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (simplified). Thus, it's firmly established that "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003).

Rather than accept this principle, the dissent pursues a novel ruling—one that would upend how many immigration proceedings operate. Despite the government's compliance

with applicable statutory notice requirements, the dissent says that's not enough and now the government must also meet the extra burdens set out in *Jones v. Flowers*, 547 U.S. 220 (2006). To my knowledge, no circuit court has ever required this.

It's easy to see why *Jones* doesn't directly apply to the immigration context. In *Jones*, the Supreme Court held that due process requires the government to "take additional reasonable steps to provide notice" to a homeowner "before taking the owner's property." *Id*. at 223. There, Gary Jones owned a house in Little Rock, Arkansas, for over 30 years. *Id*. He paid the mortgage on the house for 30 years. *Id*. For those 30 years, the mortgage company paid Jones's property taxes. *Id*. But after he finished paying off the mortgage, the property taxes went unpaid. *Id*. The State declared the property delinquent and sought to sell the home. *Id*. To notify Jones, the State sent two notices of the forced tax sale to the home by certified letter. *Id*. at 223–24. Both letters were returned to the State as "unclaimed." *Id*. at 224. The State sold Jones's house despite the return of its two notices. *Id*. The buyer, Linda Flowers, then moved to evict Jones's daughter from the house, which led to the case being brought before the Court. *Id.* at 224–25. These procedures, the Court said, violated due process. To sell a property owner's house, the Court held that "the State should have taken additional reasonable steps to notify [the homeowner], if practicable to do so." *Id.* at 234.

For the first time in our circuit, the dissent seeks to import *Jones*'s "additional steps" requirement to the immigration context. According to the dissent, if the government discovers that notice of immigration proceedings has failed to reach an alien, that "triggers an obligation on the government's part to take additional

reasonable steps to effect notice" on the alien "if it is practicable to do so." Dissent 26 (citing *Jones*, 547 U.S. at 226). While our court has cited *Jones* for general due process principles in immigration cases, *no* decision has ever required the government to take "additional reasonable steps to effect notice" if it learns that an alien failed to receive actual notice.

There are at least four problems with expanding due process like this.

First, the dissent's view of the law conflicts with circuit precedent. Our caselaw makes clear that certified mailing of notice to the last provided address is constitutionally adequate—even if the alien did not receive actual notice. *See* Per Curiam Op. 8–10. And our court has continued to adhere to this precedent after *Jones* was decided in 2006, and even after *Williams v. Mukasey*, 531 F.3d 1040, 1042 (9th Cir. 2008), which the dissent thinks governs, was decided in 2008. *See, e.g.*, *Popa v. Holder*, 571 F.3d 890 (9th Cir. 2009), *overruled on other grounds by Lopez v. Barr*, 925 F.3d 396 (9th Cir. 2019); *Poursina v. USCIS*, 936 F.3d 868, 876 (9th Cir. 2019) (holding that the government "satisfie[s] due process [when it sen[ds] notice by regular mail to the address given.") (simplified). Indeed, the only difference between this case and all the other cases upholding *in absentia* removals in similar circumstances is that the government became aware that notice was "undeliverable" or "unclaimed." But that distinction isn't enough to upset our precedent when the government acted reasonably in attempting to notify Rivera-Valdes.

Second, there's no reason to graft the procedural protections required to remove a person from his home onto the process to remove an illegal alien from this country. As

the Supreme Court has said, the regulation of immigration is a "fundamental sovereign attribute" under our Constitution. *See Trump*, 585 U.S. at 702. So "the removal context is a unique enclave" when it comes to due process. *Rodriguez Diaz*, 53 F.4th at 1216 (Bumatay, J., concurring). And the due process rules for forfeiting a citizen's home do not easily map onto immigration proceedings. Recall that "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522. Thus, while illegal aliens are protected by due process, that doesn't mean they are entitled to the full panoply of rights afforded to a person whose home is being seized by the government. Above all, *Jones* was expressly animated by the government's "exerti[on of] extraordinary power against a property owner—taking and selling a house he owns." 547 U.S. at 239. And so, the Court reasoned, it was not asking "too much to insist that the State do a bit more to attempt to let him know about it when the notice letter addressed to him is returned unclaimed." *Id*. Though the removal of an alien is no doubt a solemn process, the rights involved are not the same.

Third, note that the dissent doesn't say what additional steps the government should have taken here. Instead, the dissent's preferred remedy is for our court to remand this case so that the district court can figure it all out. But given that the government possessed no other information about Rivera-Valdes's whereabouts, what additional steps could the government have taken? Short of ordering the government to conduct a *manhunt* for Rivera-Valdes, it's hard to think of any. Not only would such a requirement contravene our precedent, *see Popa*, 571 F.3d at 897 (noting that an alien "does not have to actually receive notice of a deportation hearing in order for the requirements of due

process to be satisfied"), but it would constitute a profound intrusion into the executive branch. In fact, Rivera-Valdes likely failed to update his address precisely because he *did not* want the government to know where he was. Forcing the government to engage in a game of cat-and-mouse, attempting to provide notice to those who have every reason to evade government attention, is beyond the requirements of due process and thoroughly unworkable. Even accepting *Jones*, the Court said that the government need not go very far to provide actual notice. *See Jones*, 547 U.S. at 235–36 ("We do not believe the government was required to go [so] far" as searching for a new address in the phonebook or other government records such as income-tax rolls). And we can't just throw up our hands and ask the district court to solve the issue for us.

Fourth, I fear what this view of the law would mean for immigration proceedings writ large. Importing *Jones*'s "additional reasonable steps" requirement to the immigration setting would put on unsure footing every removal, deportation, and immigration conviction where the government had *any inkling* that the alien did not receive actual notice. The result would wreck the federal courts' dockets with an explosion of litigation and require the government to re-examine the adequacy of its notice procedures for the entire immigration system. It would undermine finality for hundreds, if not thousands, of cases. While this would be the price to pay if due process requires it, nothing in the text and historical understanding of the Fifth Amendment supports this. We should not court chaos so carelessly.

BAKER, Judge, concurring:

The per curiam opinion, which I join, applies the due process balancing test of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–15 (1950).[1] *Ante* at 11–12. In so doing, it distinguishes *Jones v. Flowers*, 547 U.S. 220 (2006), reasoning that the statutory scheme in place at the time of Rivera-Valdes's 1994 deportation hearing adequately balanced the relevant competing interests by giving him the right to rebut the presumption of effective service. *Ante* at 13. Under that regime, Rivera-Valdes could have done so by demonstrating that his "mailing address . . . remained unchanged, that neither [he] nor a responsible party working or residing at that address refused service, and that there was nondelivery or improper delivery by the Postal Service . . . ." *Arrieta v. I.N.S.*, 117 F.3d 429, 432 (9th Cir. 1997). He made no such showing below.

If we allowed the presumption of service to be rebutted by merely showing that a notice of deportation hearing was returned as unclaimed or undeliverable as the dissent proposes,[2] then it would reward an alien's evasion and throw

---

[1] Binding precedent holds that the Due Process Clause applies to deportation (now known as removal) hearings. *See Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."); *see also Dobrota v. INS*, 311 F.3d 1206, 1210 (9th Cir. 2002) ("Aliens facing deportation are entitled to due process under the Fifth Amendment to the United States Constitution, encompassing a full and fair hearing and notice of that hearing.").

[2] Although this case involves an unclaimed *certified* mailing, under the dissent's logic a returned *regular* mailing would also rebut the presumption of service and require the government to at least consider

sand in the gears of immigration enforcement efforts. *Cf.
Terminiello v. City of Chicago*, 337 U.S. 1, 37 (1949)
(Jackson, J., dissenting) (stressing the importance of "a little
practical wisdom" in applying the "constitutional Bill of
Rights"). It would also cast doubt on the validity of tens, if
not hundreds, of thousands of the nearly 1.4 million (and
counting) deportations *in absentia* since 1996, and some
untold number before that.[3] Due process, however, does not

what other means were available to provide notice to the alien. This
matters because federal law mandated service of a notice of deportation
by certified mail from 1990 through 1996. Immigration Act of 1990, Pub.
L. 101-649, § 545(a), 104 Stat. 4978, 5061–62. Congress then changed
the statute to require service by regular mail, Pub. L. 104-208, § 304, 110
Stat. 3009, 3009-587 to 3009-589 (1996), a requirement that persists to
this day, *see* 8 U.S.C. § 1229.

Before 1990, the law left the manner of service to the agency's
discretion: "[T]he alien shall be given notice, reasonable under all the
circumstances, of the nature of the charges against him and of the time
and place at which the proceedings will be held." Immigration and
Nationality Act of 1952, Pub. L. 82-414, § 242(b)(1), 66 Stat. 163, 209.
From 1979 to 1990, service of a notice of hearing could be accomplished
by either personal service or regular mail. *See* 8 C.F.R. § 242.1(c) (1979)
(describing available means to serve a notice of hearing as "personal
service or . . . routine service"); 8 C.F.R. § 103.5a(a)(1) (1979) (defining
"routine service" as service by regular mail). From 1957 to 1979, the
agency served such notices personally or by certified mail. *See* 8 C.F.R.
§ 242.1(c) (1958).

[3] As detailed in the attached addendum, the government deported 1.376
million aliens *in absentia* from 1996 through the first quarter of fiscal
year 2024. (Like others, I have been unable to locate such data for years
before 1996. *See* Ingrid Eagly & Steven Shafer, *Measuring* In Absentia
*Removal in Immigration Court*, 168 U. Pa. L. Rev. 817, 823 n.25 (2020)
(explaining that the Executive Office for Immigration Review was
unable to provide FOIA-requested removal *in absentia* data for years not
included in its 2000 statistical yearbook, i.e., 1995 and earlier).)

"place [such] impossible or impractical obstacles in the way" of the government protecting its "vital interest[s]," *Mullane*, 339 U.S. at 313–14, which surely include thwarting unlawful entry into the United States.

*Jones* is also distinguishable for a second reason—the property owner in that case did not "receive[] notice to expect notice." *Derezinski v. Mukasey*, 516 F.3d 619, 622 (7th Cir. 2008) (Posner, J.). Here, in contrast, immigration officials personally served Rivera-Valdes with an order to show cause and notice that he would be mailed a deportation hearing date.

In the context of unlawful entry into the United States, notice to expect notice of a deportation hearing also adequately balances the competing interests of the alien and the government. "The Constitution does not require that an effort to give notice succeed." *Ho v. Donovan*, 569 F.3d 677, 680 (7th Cir. 2009) (Easterbrook, J.) (citing *Dusenbery v. United States*, 534 U.S. 161 (2002)). "If it did, then people could evade knowledge, and avoid responsibility for their conduct, by burning notices on receipt—or just leaving them unopened," *id.*, or, I might add, by declining—as Rivera-Valdes did—to notify the government of any change in

---

The Postal Service reports that in fiscal year 2014, 4.3 percent of mail was returned as undeliverable. *See* https://www.uspsoig.gov/reports/audit-reports/management-advisory-strategies-reducing-undeliverable-addressed-mail. Using that percentage as a conservative proxy yields the conclusion that the notice of deportation was returned as unclaimed or undeliverable in at least 60,000 deportations *in absentia* since 1996. In my view, the actual number is likely far larger because individuals seeking to evade deportation are not a representative sample of available data involving unclaimed mail. Such persons of necessity move more often than the general population and have every reason *not* to keep immigration authorities advised of their whereabouts.

address after receiving notice to expect notice.[4] "Conscious avoidance of information is a form of knowledge." *Id*.

---

[4] On this record, common sense tells us that Rivera-Valdes absconded because the INS's motion to schedule his hearing sent by regular mail was returned as "Not Deliverable As Addressed/Unable to Forward."

**Addendum to Judge Baker's Concurrence**

| *In Absentia* Removal (Deportation) Orders, 1996–2024 | | |
|---|---|---|
| Fiscal Year | Number | Source |
| 1996 | 54,178 | 2000 EOIR Statistical Yearbook[1] |
| 1997 | 48,461 | |
| 1998 | 42,243 | 2002 EOIR Statistical Yearbook[2] |
| 1999 | 40,719 | |
| 2000 | 39,721 | |
| 2001 | 36,764 | |
| 2002 | 37,316 | 2006 EOIR Statistical Yearbook[3] |
| 2003 | 36,948 | |
| 2004 | 47,407 | |
| 2005 | 100,937 | 2009 EOIR Statistical Yearbook[4] |
| 2006 | 102,850 | |
| 2007 | 35,578 | |
| 2008 | 21,360 | |
| 2009 | 18,658 | |
| 2010 | 20,412 | |

---

[1] Exec. Office for Immigration Review, *Statistical Year Book 2000*, at L1, https://www.justice.gov/sites/default/files/eoir/legacy/2001/05/09 /SYB2000Final.pdf.

[2] Exec. Office for Immigration Review, *Statistical Year Book 2002*, at H1, https://web.archive.org/web/20060629172106/http://www.justice .gov/eoir/statspub/fy02syb.pdf.

[3] Exec. Office for Immigration Review, *FY 2006 Statistical Yearbook*, at H1, https://www.justice.gov/sites/default/files/eoir/legacy/2008/04/18 /fy06syb.pdf.

[4] Exec. Office for Immigration Review, *FY 2009 Statistical Yearbook*, at H1, https://www.justice.gov/sites/default/files/eoir/legacy/2010/03/04 /fy09syb.pdf.

| 2011 | 18,467 | 2018 EOIR Report[5] |
|---|---|---|
| 2012 | 16,491 | |
| 2013 | 18,345 | |
| 2014 | 25,909 | 2024 EOIR Report[6] |
| 2015 | 38,260 | |
| 2016 | 34,305 | |
| 2017 | 42,044 | |
| 2018 | 46,213 | |
| 2019 | 91,285 | |
| 2020 | 87,843 | |
| 2021 | 8,536 | |
| 2022 | 62,646 | |
| 2023 | 159,720 | |
| 2024 (first quarter) | 42,714 | |
| Total | 1,376,330 | |

---

[5] Exec. Office for Immigration Review, In Absentia *Removal Orders* (2018), https://web.archive.org/web/20180611231211/https://www.justice.gov/eoir/page/file/1060851/download.

[6] Exec. Office for Immigration Review, In Absentia *Removal Orders* (2024), https://www.justice.gov/eoir/media/1344881/dl.

SANCHEZ, Circuit Judge, dissenting:

When the adequacy of the government's notice to a proceeding is challenged under the Due Process Clause of the Fifth or Fourteenth Amendments, we analyze such claims under *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), and *Jones v. Flowers*, 547 U.S. 220 (2006). Under the Supreme Court's precedents, if the government becomes aware that its attempt to provide notice has failed, for example when mailed notice of a proceeding is returned unclaimed, that knowledge obligates the government to take additional reasonable steps to effect notice, if it is practicable to do so. *See Jones*, 547 U.S. at 225. Since *Jones* was decided, we have applied these due process requirements in a wide range of government proceedings affecting real property, chattel, government benefits, licenses, privacy, and other legally protected interests. *See infra* 31–32. Notably, our court has already "clarif[ied] that the general rules concerning adequacy of notice [under *Mullane* and *Jones*] … apply in the immigration context." *See Williams v. Mukasey*, 531 F.3d 1040, 1042 (9th Cir. 2008).

Despite this clear precedent, the majority holds that *Jones* does not apply in the context of immigration proceedings. The majority offers no plausible explanation why the due process protections announced in *Jones* should bypass immigrant petitioners, and it errs by disregarding our binding precedent in *Williams*. *See Balla v. Idaho*, 29 F.4th 1019, 1028 (9th Cir. 2022) ("We are bound by the law of our circuit, and only an en banc court or the U.S. Supreme Court can overrule a prior panel decision."). Compounding its mistake, the majority resolves this appeal by relying on pre-*Jones* circuit precedent that did not address whether mailed

notice comports with due process when the government knows its method of notice was ineffective and takes no additional steps that are reasonably available to it. As *Jones* and other decisions of our circuit make clear, mere adherence to statutory notice requirements does not resolve whether the government has satisfied its constitutional obligations. Because the district court did not analyze appellant's due process challenge under *Jones*, I would vacate and remand for further proceedings before the district court. I respectfully dissent.

## I.

A defendant may collaterally attack the removal order underlying an indictment for illegal reentry under 8 U.S.C. § 1326 by arguing that the proceeding that produced the order violated his Fifth Amendment right to due process. *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987); *see, e.g.*, *United States v. Melendez-Castro*, 671 F.3d 950, 953 (9th Cir. 2012). To prevail, the defendant must show (1) he exhausted administrative remedies for the removal order; (2) the deportation proceedings improperly deprived him of an opportunity for judicial review; and (3) entry of the removal order was fundamentally unfair. 8 U.S.C. § 1326(d); *see also United States v. Palomar-Santiago*, 593 U.S. 321, 324–25 (2021). "An underlying order is 'fundamentally unfair' if (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014).

Appellant Leopoldo Rivera-Valdes ("Rivera-Valdes") moved to dismiss his indictment, claiming that the underlying removal proceedings violated his right to due

process under the Fifth Amendment because the mailed notice of hearing was not "reasonably calculated to reach" him. Although he was personally served with an Order to Show Cause ("OSC"), the OSC did not advise him of the date, time, and place of his removal hearing, instead stating that the hearing was "to be calendared and notice provided" at a later date. Appellant's motion to dismiss asserted that the notice of hearing was not reasonably calculated to reach him because the agency sent the notice by certified mail to an address that did not exist and the notice was returned to the agency as "unclaimed."

The district court, reaching no other legal question, concluded the notice of hearing was "reasonably calculated" when sent by certified mail to the address listed on his asylum application and denied the motion to dismiss. The court relied on pre-2006 precedent to conclude that the government satisfies due process by "mailing notice of the hearing to an alien at the address last provided to the INS." *Dobrota v. INS*, 311 F.3d 1206, 1211 (9th Cir. 2002). *See also Urbina-Osejo v. INS*, 124 F.3d 1314, 1317 (9th Cir. 1997); *United States v. Hinojosa-Perez*, 206 F.3d 832, 836–37 (9th Cir. 2000).

On appeal, Rivera-Valdes contends the agency did not use means reasonably calculated to notify him of his removal hearing when the agency sent notice by certified mail, learned the notice had gone unclaimed, and took no additional reasonable steps to effect notice. The government does not meaningfully dispute Rivera-Valdes's factual assertions nor his constitutional right to reasonably calculated notice. Instead, the government contends sending notice by certified mail to the address listed on the asylum application was sufficient to satisfy both statutory and constitutional requirements. In short, the parties dispute

what "reasonably calculated" notice requires under the circumstances presented here.

## II.

Where due process requires notice of government action, *Mullane* and *Jones* provide "the 'appropriate analytical framework' for considering the adequacy of notice of government action." *Williams*, 531 F.3d at 1042. "[D]ue process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jones*, 547 U.S. at 226 (quoting *Mullane*, 339 U.S. at 314). As *Mullane* explains, "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." 339 U.S. at 315. Adequate notice does not require actual notice. *See Dusenbery v. United States*, 534 U.S. 161, 169 (2002). But adequate notice will generally require something more than employing means that knowingly result in a failure to provide notice—as *Jones* elaborated.

In *Jones*, the Arkansas Commissioner of State Lands sent two notices to petitioner Gary Jones by certified mail that his property taxes were delinquent. 547 U.S. at 223–24. The notices explained that unless Jones redeemed the property, it would be subject to public sale. *Id.* Both certified letters were sent to the address registered by Jones and both were returned "unclaimed." *Id.* at 224. The Commissioner took no further steps to notify Jones of his tax delinquency. *Id.* at 229. The home was sold at a tax foreclosure sale to respondent Linda Flowers at a fraction of its fair market value. *Id.* at 224. Following the sale, Jones sued the Commissioner and Flowers in state court, asserting

that the Commissioner's failure to provide adequate notice
of the tax sale and resulting loss of his home was a violation
of his right to due process. *Id.* The Arkansas Supreme Court
affirmed the trial court's grant of summary judgment for the
defendants, holding that attempting notice by certified mail
in accordance with state law satisfied due process. *Id.* at
224–25.

The Supreme Court reversed and held that "when mailed
notice of a tax sale is returned unclaimed, the State must take
additional reasonable steps to attempt to provide notice to
the property owner before selling his property, if it is
practicable to do so." *Id.* at 225. The Court reasoned that "a
person who actually desired to inform" another would not
"do *nothing* when a certified letter . . . is returned
unclaimed." *Id*. at 229 (emphasis added). Adequacy of
notice still depends on "'all the circumstances.'" *Id.* at 226
(quoting *Mullane*, 339 U.S. at 314). But after *Jones*,
"knowledge on the government's part is a 'circumstance and
condition' that varies the 'notice required.'" *Id.* at 227
(quoting *Walker v. City of Hutchinson*, 352 U.S. 112, 115
(1956)).**[1]** Even when notice is reasonably calculated to reach
a party when first sent, the government's discovery that the
notice has failed to reach the intended recipient is a new

---

[1] This concept was latent in prior Supreme Court opinions. *See, e.g.*,
*Greene v. Lindsey*, 456 U.S. 444, 453–54 (1982) (holding notice of
detainer action posted on apartment door was inadequate where process
servers were aware the postings were torn down and unlikely to reach
intended tenants); *Robinson v. Hanrahan*, 409 U.S. 38, 40 (1972) (per
curiam) (holding notice of forfeiture proceeding was inadequate where
government officials knew vehicle owner was jailed and mailed notice
was unlikely to reach him); *Covey v. Town of Somers*, 351 U.S. 141, 146
(1956) (holding notice of foreclosure by mailing and publication was
inadequate where government officials knew the property owner was not
mentally competent to manage her affairs and was without a guardian).

condition requiring reassessment. *Id*. at 230. Under such circumstances, the Supreme Court concluded, the Commissioner was required to take additional, reasonable steps to effect notice, if it was practicable to do so. *Id.* at 234.

We have applied *Jones*'s due process analysis to evaluate the adequacy of notice in many contexts—from government proceedings affecting real property, chattel, and money to proceedings affecting licenses, privacy, and other protected legal interests. *See, e.g.*, *Yi Tu v. Nat'l Transp. Safety Bd.*, 470 F.3d 941, 946 (9th Cir. 2006) (applying *Jones* to pilot license suspension proceedings); *J.B. v. United States*, 916 F.3d 1161, 1173–74 (9th Cir. 2019) (applying *Jones* to subpoena of tax records); *Grimm v. City of Portland*, 971 F.3d 1060, 1067–68 (9th Cir. 2020) (applying *Jones* to towing of car); *Taylor v. Yee*, 780 F.3d 928, 935–38 (9th Cir. 2015) (applying *Jones* in action challenging California's escheatment statute).

Our sister circuits have also applied *Jones* to evaluate the adequacy of notice in various government proceedings. *See, e.g.*, *García-Rubiera v. Fortuño*, 665 F.3d 261, 276 (1st Cir. 2011) (financial action); *D.R.T.G. Builders, LLC v. Occupational Safety & Health Review Comm'n*, 26 F.4th 306, 311 (5th Cir. 2022) (OSHA action); *Echavarria v. Pitts*, 641 F.3d 92, 94–95 (5th Cir. 2011) (DHS action); *Lampe v. Kash*, 735 F.3d 942, 943–44 (6th Cir. 2013) (bankruptcy action); *Peralta-Cabrera v. Gonzales*, 501 F.3d 837, 845 (7th Cir. 2007) (DHS action). These decisions confirm that when notice is due in a government action, the *Mullane-Jones* framework governs whether such notice is constitutionally sufficient.

As we made clear in *Williams,* the same due process analysis governs the adequacy of notice afforded in immigration proceedings. *Williams*, 531 F.3d at 1042. In *Williams*, the petitioner moved to reopen a final order of removal pursuant to regulations implementing the United States' obligations under the Convention Against Torture ("CAT"). *Id.* at 1041. Petitioner missed the deadline established in the CAT regulations for filing a motion to reopen and argued that notice through publication in the Federal Register was insufficient to afford her due process. *Id.* at 1042. *Williams* held that petitioner's due process challenge must be evaluated under the *Mullane-Jones* "'analytical framework,'" that is, "due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Jones*, 547 U.S. at 226).**²**

The majority's contention that *Jones* does not apply in immigration proceedings flatly contradicts what was stated in *Williams* and contravenes the long-settled principle that only an en banc court or the Supreme Court can overrule a prior panel decision. *Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc). While *Williams* did not involve the government discovering that its notice to a petitioner had not succeeded, that left open the question of *how* the due process analysis under *Jones* would apply in a

---

² We rejected the petitioner's argument that she was entitled to actual notice and concluded that publication in the Federal Register was sufficient notice under the circumstances because "Petitioner cannot establish that the government had anything more than speculative knowledge that she was eligible for CAT relief when the regulations were promulgated." *Id.*

different immigration case, not *whether Jones* should apply to immigration proceedings at all. *Williams* squarely addressed whether the *Mullane-Jones* due process framework applies in immigration proceedings. It does, and it is error for this panel to ignore it. Because the district court below never addressed whether the government had reasonable alternatives available to effect notice in this case, I would remand and direct it to apply *Jones* in the first instance. *See Jones*, 547 U.S. at 234.

## III.

Even if *Williams* were not binding authority, the majority's assertion that immigration proceedings are different and less deserving of the same due process protections under *Jones* is unconvincing and breaks with decades of precedent. We have reaffirmed time and again that "[t]he Due Process Clause protects aliens in deportation proceedings and includes the right to a full and fair hearing as well as notice of that hearing." *Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir. 1997) (citing *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982)). *See also Dobrota*, 311 F.3d at 1210 ("Aliens facing deportation are entitled to due process under the Fifth Amendment to the United States Constitution, encompassing a full and fair hearing and notice of that hearing."); *Barraza Rivera v. INS*, 913 F.2d 1443, 1447 (9th Cir. 1990) ("The Fifth Amendment guarantees due process in deportation proceedings."); *Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir. 1999) (accord).

"'The fundamental requisite of due process of law is the opportunity to be heard.'" *Mullane*, 339 U.S. at 314 (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). "The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those

interested to make their appearance." *Id.* (internal citation omitted). Contrary to the majority's contention, personal service of the OSC on Rivera-Valdes did not satisfy due process because the OSC did not contain the specific date, time, or location of the removal hearing, which had yet to be calendared. The government concedes that the only document containing the specific date, time, and location of the removal hearing was the notice of hearing sent by certified mail, and that notice was returned to the agency as "unclaimed." The government also concedes that the agency took no other steps to notify Rivera-Valdes of his scheduled removal hearing. The due process analysis must therefore focus on whether any reasonable alternatives were in fact available to the government to effect notice.

The majority errs by relying on pre-*Jones* caselaw to resolve this appeal. These cases did not address the specific question at hand—"whether due process entails further responsibility when the government becomes aware prior to [the government action] that its attempt at notice has failed." *Jones*, 547 U.S. at 227. In *Farhoud*, the notice of hearing was sent by certified mail to the petitioner, who conceded he was living at that address on that date. 122 F.3d at 796. We held that due process does not require the government to provide actual notice of the hearing; rather, "due process is satisfied if service is conducted in a manner 'reasonably calculated' to ensure that notice reaches the alien." *Id.*

*Farhoud* did not involve a claim that the government was aware its notice had not reached the intended recipient and it failed to take additional steps to effect notice. *Id.* Nor does any other case cited by the majority. *See Dobrota*, 311 F.3d at 1211–12; *Urbina-Osejo*, 124 F.3d at 1317; *Hinojosa-Perez*, 206 F.3d at 837; *Popa v. Holder*, 571 F.3d 890, 893 (9th Cir. 2009), *abrogation recognized by Lopez v. Barr*, 925

F.3d 396 (9th Cir. 2019).**³**   Indeed, we have suggested in other immigration cases that, under *Jones*, government knowledge of failed notice is a circumstance the government must consider when determining the reasonableness of its chosen method of notice. *See Chaidez v. Gonzales*, 486 F.3d 1079, 1086 n.8, 1086–87 (9th Cir. 2007) (citing *Jones* but declining to reach constitutional question where statutory notice was defective); *Al Mutarreb v. Holder*, 561 F.3d 1023, 1027–28 (9th Cir. 2009) (citing *Jones* but avoiding constitutional question after finding removal order invalid for other reasons); *see also Rendon v. Holder*, 400 Fed. Appx 218, 219–20 (9th Cir. 2010) (unpublished) (applying *Jones* to uphold additional steps taken by INS to effect notice).   We recognized in these cases that whether notice of a deportation proceeding by certified mail comports with due process is a question governed by *Jones*.   The notion that *Jones*'s due process framework has no bearing on immigration proceedings is misguided.

In any event, even if our cases have held that notice of hearing sent by regular mail to an alien's last provided address is "constitutionally adequate," *Urbina-Osejo*, 124 F.3d at 1317, *Jones* requires a different due process analysis when the government learns its attempt at notice has failed. *Jones*, 547 U.S. at 227, 234.   We are bound by this intervening Supreme Court authority. *See Miller*, 335 F.3d at 893.

---

³ My colleagues cite two cases decided after *Jones*, but neither involved the government becoming aware that its attempt at notice had failed, and thus neither cites nor discusses *Jones* in its analysis. *See Popa*, 571 F.3d at 893; *Poursina v. USCIS*, 936 F.3d 868, 876 (9th Cir. 2019).   "[C]ases are 'not precedential for propositions not considered.'" *United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) (internal citation omitted).

The majority concludes that because the agency satisfied statutory notice provisions, it necessarily satisfied due process requirements as well. But *Jones* rejected this argument, making clear that "the government [must] consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case." *Jones*, 547 U.S. at 230. Although the Commissioner complied with state law when he sent notice of tax delinquency by certified mail, *id.* at 224–25, this did not insulate the Commissioner against claims his notice was constitutionally defective. *Id.* at 231–32. *See also Yi Tu*, 470 F.3d at 945–46 (rejecting agency claim that because it was statutorily authorized to give notice by certified mail, its notice of pilot license suspension proceedings sent by certified mail was constitutionally adequate) (citing *Jones*, 547 U.S. at 224).

Finally, the majority purports to apply a due process balancing test to justify ignoring *Jones*'s "government knowledge" analysis. According to the majority, the statutory regime in place at the time of Rivera-Valdes's 1994 deportation hearing was "reasonably calculated to ensure that Rivera-Valdes received notice" because it required aliens to update their addresses with the agency. Thus, the majority concludes, "by failing to comply with his statutory obligations, Rivera-Valdes 'relieve[d] the government of its responsibility to provide' him with any more notice of the hearing." *Id.* (quoting *Popa*, 571 F.3d at 897).

The majority's position suffers from two key flaws. First, the interest-balancing called for in *Mullane* and *Jones* is the very analysis the majority seeks to avoid here. To balance the interests of the government and individual, due process requires that the government provide "notice reasonably calculated, under all the circumstances, to

apprise interested parties of the pendency of the action and afform them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. Notice is generally sufficient "if it was reasonably calculated to reach the intended recipient when sent" and the government "heard nothing back indicating that anything had gone awry." *Jones*, 547 U.S. at 226. But the balance of interests changes when the government becomes aware that its efforts to provide notice have proven ineffective. As *Jones* explained, "[d]eciding to take no further action is not what someone 'desirous of actually informing' [the interested party] would do; such a person would take further reasonable steps if any were available." *Id.* at 230. The analysis in *Jones* cannot be divorced from *Mullane*, for it addresses what process is due when the government discovers that notice pursuant to its normal procedures has failed and the interested party has not been apprised of the hearing.

Second, *Jones* rejected the majority's view that by failing to comply with a legal requirement to register and keep an address updated, the interested party loses the right to reasonable follow-up measures. *See* 547 U.S. at 231–32 ("Jones' failure to comply with a statutory obligation to keep his address updated [did not] forfeit[] his right to constitutionally sufficient notice," because "[a] party's ability to take steps to safeguard its own interests does not relieve the State of its constitutional obligation.") (citation omitted). Whether in *Jones* or here, a person who fails to meet their statutory obligation to update their address, or to pay their property taxes, does not forfeit their due process

right to "adequate notice of the impending [government action]." *Id.* at 234.[4]

IV.

Judge Bumatay writes separately to convey his concern that I would break new constitutional ground to resolve this case. Not so. As I have explained, existing precedent already confirms two points: *first*, immigrants subject to removal are entitled to due process protections under the Fifth Amendment; and *second*, we and other circuits have already applied *Jones* in a variety of government proceedings affecting real and personal property, licensing, privacy, and other protected legal interests. I break no new ground by applying foundational due process principles from *Mullane* and *Jones* to another type of government proceeding. It is the majority who departs from our precedent by failing to apply this due process framework in the context of an immigration case. *See Williams*, 531 F.3d at 1042.

Judge Bumatay's concurrence expresses a novel and overly restrictive view of due process that has yet to gain purchase in our circuit. My colleague cites to his own

---

[4] The majority contends that it would be futile to remand to the district court. But remand was the appropriate remedy in *Jones* for determining whether additional reasonable steps were available to the State to effect notice. *See* 547 U.S. at 234–36. And in *Echavarria*, the Fifth Circuit left it to the district court to determine that "additional reasonable steps were in fact available, and were not used," by DHS to notify bond obligors about the breach of an immigration bond after notice was returned as undeliverable. 641 F.3d at 95–96 (applying *Jones* in immigration bond context). Because the existing record does not disclose what steps were available to the government here, the district court would be best positioned to determine that question in the first instance.

concurrence in *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) (Bumatay, J., concurring), for the proposition that removal proceedings are a "unique enclave" when it comes to due process. *Id.* at 1216. But he does not explain what makes removal proceedings different from or less deserving of the "elementary and fundamental" requisites of due process in any government proceeding—notice and an opportunity to be heard. *Mullane*, 339 U.S. at 314. And the stakes to an individual subject to removal are no less severe than other government proceedings. *See Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021) ("A notice to appear serves as the basis for commencing a grave legal proceeding," "it is 'like an indictment in a criminal case [or] a complaint in a civil case.'" (brackets in original)).

Judge Bumatay's reliance on *Trump v. Hawaii*, 585 U.S. 667 (2018), does little to support his position. There, the Supreme Court discussed "certain aliens abroad"—that is, noncitizens *outside* the United States. *Id.* at 675. The Due Process Clause applies to "persons," regardless of citizenship. *See* U.S. Const. amends V & XIV. Accordingly, this court has consistently held that the Constitution entitles a noncitizen facing removal within the United States to a "full and fair hearing and notice of that hearing." *Dobrota*, 311 F.3d at 1210; *see Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620 (9th Cir. 2006); *Barraza Rivera*, 913 F.2d at 1447; *Campos-Sanchez*, 164 F.3d at 450. Judge Bumatay's contention that due process protections should apply with less force to individuals suspected of being in the country unlawfully is squarely at odds with our precedent.

My colleagues' concern about the effect *Jones* would have on immigration proceedings is wildly overstated.[5] *Jones* simply prompts further inquiry into whether the government could have taken additional reasonable steps to effect notice when it becomes aware its method of providing notice was unsuccessful. Because this analysis was never undertaken by the district court, we do not know what evidence the government could or would present. To put things in perspective, *Jones* has been the law of the land since 2006, governing the constitutional adequacy of notice afforded to interested parties in countless federal, state, and local government proceedings. Millions of notices of government action have likely been delivered by governments in that time, and yet courts have not ground to a halt and government agencies have found ways to take additional steps to effect notice when it is practicable to do so.

More importantly, the protections enshrined in the Due Process Clause should not be given short shrift simply because of a person's immigration status. I can imagine few interests more important than avoiding persecution or torture—claims regularly raised in removal proceedings. Given the stakes involved, the constitutional protections described in *Mullane* and *Jones*—as well as the flexibility in their application—should find a natural home in immigration proceedings.

---

[5] Judge Baker raises the specter that some large portion of the 1.376 million *in absentia* orders issued since 1996 could be called into question, but nowhere in Judge Baker's addendum does it disclose the number of *in absentia* hearings that involved the return of unclaimed notices of hearing or otherwise reflected government knowledge that notice was ineffective.