No. 21-30177

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
———————————

UNITED STATES OF AMERICA,

PLAINTIFF-APPELLEE,

v.

LEOPOLDO RIVERA-VALDES,

DEFENDANT-APPELLANT.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

THE HONORABLE KARIN J. IMMERGUT, U.S. DISTRICT JUDGE
D.C. NO. 3:19-CR-00408-IM

———————————

PLAINTIFF-APPELLEE'S RESPONSE TO PETITION
FOR PANEL REHEARING AND REHEARING EN BANC

———————————

NATALIE K. WIGHT
UNITED STATES ATTORNEY
DISTRICT OF OREGON
SUZANNE MILES
CRIMINAL APPELLATE CHIEF
**SARAH BARR**
ASSISTANT UNITED STATES ATTORNEY
1000 SW 3RD AVENUE, SUITE 600
PORTLAND, OREGON 97204
TELEPHONE: (503) 727-1000

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

STATEMENT OF THE ISSUE .......................................................................... 1

STATEMENT OF FACTS .................................................................................. 1

    A.    Defendant received the Order to Show Cause and the
           court mailed a hearing notice to the address he provided......................... 1

    B.    Defendant moved to dismiss his illegal reentry indictment ..................... 2

    C.    On appeal, the majority affirmed the district court's denial
           of his motion to dismiss ........................................................................ 3

SUMMARY OF THE ARGUMENT .................................................................. 5

ARGUMENT ..................................................................................................... 6

    A.    The majority opinion is not clearly irreconcilable with *Jones* ..................... 6

           1.    The clearly irreconcilable standard is a high one ............................ 6

           2.    *Jones* is not clearly irreconcilable with Circuit precedent ................ 8

    B.    Defendant's arguments lack merit ............................................................. 12

    C.    Remand is inappropriate ............................................................................ 15

CONCLUSION ................................................................................................... 17

CERTIFICATE OF COMPLIANCE .............................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Al Mutarreb v. Holder*, 561 F.3d 1023 (9th Cir. 2009) ...................................... 13

*Alonso-Juarez v. Garland*, 80 F.4th 1039 (9th Cir. 2023) ................................. 7

*Arevalo v. Barr*, 950 F.3d 15 (1st Cir. 2020) ..................................... 10, 13

*Arrieta v. I.N.S.*, 117 F.3d 429 (9th Cir. 1997) .......................................... 14

*Chaidez v. Gonzalez*, 486 F.3d 1079 (9th Cir. 2007) ...............................12–13

*Close v. Sotheby's, Inc.*, 894 F.3d 1061 (9th Cir. 2018) ................................. 6

*Crum v. Vincent*, 493 F.3d 988 (8th Cir. 2007) ..................................... 10

*De Fontbrune v. Wofsy*, 39 F.4th 1214 (9th Cir. 2022)..................................... 9

*Derezinski v. Mukasey*, 516 F.3d 619 (7th Cir. 2008)................................ 9, 11

*Echavarria v. Pitts*, 641 F.3d 92 (5th Cir. 2011) ....................................... 13

*Generali España de Seguros y Reaseguros, S.A. v. Speedier Shipping, Inc.*,
    2023 WL 3362839 (2d Cir. May 11, 2023) ..................................... 10

*Jones v. Flowers*, 547 U.S. 220 (2006) ...............................................*passim*

*Keene Grp., Inc. v. City of Cincinnati, Ohio*, 998 F.3d 306 (6th Cir. 2021) .......... 10

*Lair v. Bullock*, 697 F.3d 1200 (9th Cir. 2012)........................................... 7

*Lahmidi v. I.N.S.*, 149 F.3d 1011 (9th Cir. 1998) ..................................... 11

*Leon Perez v. Garland*, 105 F.4th 1226 (9th Cir. 2024) ................................. 7

*Lopez v. Barr*, 925 F.3d 396 (9th Cir. 2019) ............................................. 4

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) ................................6–7, 13

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ..............8, 12–15

*Peralta-Cabrera v. Gonzales*, 501 F.3d 837 (7th Cir. 2007) ........................... 13

*Perez-Alevante v. Gonzales*, 197 F. App'x 191 (3d Cir. 2006)............................ 13

*Popa v. Holder*, 571 F.3d 890 (9th Cir. 2009) ......................................... 4, 6

## Cases (cont.)

*Rendon v. Holder*, 400 F. App'x 218 (9th Cir. 2010) ............................................................ 13

*Smith v. Marsh*, 194 F.3d 1045 (9th Cir. 1999) .................................................................... 16

*United States v. Estrella*, 69 F.4th 958 (9th Cir. 2023) .......................................................... 16

*United States v. Grandberry*, 730 F.3d 968 (9th Cir. 2013) .................................................... 7

*United States v. Green*, 722 F.3d 1146 (9th Cir. 2013) ........................................................... 7

*United States v. Rivera-Valdes*, 105 F.4th 1118 (9th Cir. 2024) .................................... *passim*

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) ......................................... 9

*Williams v. Mukasey*, 531 F.3d 1040 (9th Cir. 2008) ......................................... 4–5, 12–13

## Statutes

8 U.S.C. § 1252b ............................................................................................................... 14

8 U.S.C. § 1326 ............................................................................................................ 2, 16

## STATEMENT OF THE ISSUE

Is rehearing inappropriate and unnecessary where the majority opinion relied on settled circuit law that is not "clearly irreconcilable" with *Jones v. Flowers*, 547 U.S. 220 (2006), to find that the government complied with due process?

## STATEMENT OF FACTS

### A. Defendant received the Order to Show Cause and the court mailed a hearing notice to the address he provided.

Defendant Rivera-Valdes appeared in 1994 at an INS office to pick up an employment card associated with a false asylum application he filed. *United States v. Rivera-Valdes*, 105 F.4th 1118, 1120 (9th Cir. 2024); ER-121, 105–11. INS staff confronted him with his falsehoods; he admitted to them and withdrew his asylum application. ER-127.

An INS officer personally served him an Order to Show Cause ("OSC") at the office that day. *Rivera-Valdes*, 105 F.4th at 1120; ER-122–26. The OSC is written in English and Spanish and was read to him in Spanish. *Rivera-Valdes*, 105 F.4th at 1120; ER-126. It told defendant that deportation proceedings had commenced and the Immigration Judge would schedule a hearing within 14 days. ER-123. It warned that if he failed to appear at the hearing, he would be ordered deported. *Rivera-Valdes*, 105 F.4th at 1120; ER-125. It told him that he was required to immediately give an address where he can be contacted, that notices will be mailed only to the address he gave, and that he must update the court of any change in address within five business days.

*Rivera-Valdes*, 105 F.4th 1120; ER-125. Defendant does not dispute the service or content of the OSC. Def. Pet. Rehear'g at 4–5.

Defendant gave no address other than the one he acknowledged by signature on the OSC; the same one he listed on his asylum application, where he had received notice that his employment card was ready for pick-up. *Rivera-Valdes*, 105 F.4th at 1120; ER-105, 110–11, 126.

About seven weeks later, INS lodged the OSC with the Immigration Court, which then sent defendant a hearing notice. *Rivera-Valdes*, 105 F.4th at 1120; ER-128, 130. INS re-served defendant with another copy of the OSC by regular mail, and the court mailed its hearing notice to that same address by certified mail. *Rivera-Valdes*, 105 F.4th at 1120; ER-128, 131-33. The regular mail was returned to INS as "not deliverable," and the certified mail was returned to the court as "unclaimed." *Rivera-Valdes*, 105 F.4th 1120; ER-129, 131.

Defendant failed to appear at his deportation hearing. After finding proper service of notice, the Immigration Judge ordered defendant deported *in absentia*. *Rivera-Valdes*, 105 F.4th at 1120; ER-134. In 2006, ICE officers found him and deported him on the outstanding order. ER-183.

### B. Defendant moved to dismiss his illegal reentry indictment.

In 2019, ICE officers learned that defendant was back in Oregon and reinstated his removal order. ER-141. A federal grand jury charged him with illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a). ER-185–86.

Defendant moved to dismiss the indictment. He argued that his removal order violated due process because he never received the hearing notice; the due process violation necessarily satisfied the administrative exhaustion and deprivation of judicial review requirements; and he suffered prejudice because, in his view, he could have received voluntary departure. ER-160, 164, 167, 170. The district court denied the motion, finding he received due process without reaching the other questions. ER-11, 19, n.2.

### C. On appeal, the majority affirmed the district court's denial of his motion to dismiss.

Defendant appealed. He abandoned his arguments below, and instead argued for the first time that *Jones* supersedes this Circuit's precedent holding that notice of a deportation hearing is constitutionally sufficient when it's sent by certified mail to the address of record following personal service of the OSC. He argued that, when the subsequent hearing notice went unclaimed, due process required the government to take "additional reasonable steps" to provide notice.

In a split opinion, the majority rejected defendant's argument. The majority found defendant "did not attend this hearing despite being directly given an order to appear and then being sent the date of the hearing by certified mail at the address he provided to immigration officials." *Rivera-Valdes*, 105 F.4th at 1119. It found that the notice of the deportation hearing met due process under Circuit precedent. *Id.* at

1121–22 (citing cases); *see e.g., Popa v. Holder*, 571 F.3d 890 (9th Cir. 2009), overruled on other grounds by *Lopez v. Barr*, 925 F.3d 396 (9th Cir. 2019).

And it found that *Jones*, which held that the government must take additional reasonable steps, if practicable, to give notice of a tax sale when it knows its notice went unclaimed, does not require a different result. It gave three reasons. First, this Circuit has never applied the *Jones* "additional reasonable steps" framework to this context. *Rivera-Valdes*, 105 F.4th at 1123.

Second, *Jones*'s "additional reasonable steps" do not apply here because the notice given, consistent with the statutory scheme, was reasonably calculated to ensure defendant had notice and adequately balanced his and the government's interests. *Id.* Moreover, the backdrop of *Jones* is "quite different" because a property owner has no reason to ignore an imminent tax sale of his property while an unlawful entrant has "obvious reasons" to avoid his deportation hearing; requiring "additional steps" would reward evasion of service. *Id.*

Third, even assuming *Jones* supersedes this Circuit's notice-of-deportation-hearing precedent, the government satisfied due process here because no additional practicable steps existed: both certified and regular mail were sent and returned, and the government had no more information about defendant's whereabouts. *Id.* at 1124.

The dissent disagreed that this Circuit has never applied the *Jones* "additional reasonable steps" standard to the immigration context, pointing to *Williams v. Mukasey*, 531 F.3d 1040, 1042 (9th Cir. 2008), and argued the majority's opinion

improperly overrules *Williams*. *Rivera-Valdes*, 105 F.4th at 1133–34. It broadly declared that the *Jones* framework governs constitutional adequacy whenever "notice is due in a government action," and it was unconvinced by the distinction between deportation and tax proceedings for due process purposes. *Id.* at 1134.

It disagreed with the majority's consideration of the statutory scheme because, in its view, considering the statute ignores the change in interest-balancing when the government learns that notice failed, and because a party's non-compliance with statutory address obligations does not forfeit the right to due process. *Id.* Finally, it found the majority's consideration of pre-*Jones* circuit precedent problematic, deeming *Jones* "intervening Supreme Court authority" that requires a different outcome. *Id.* at 1135.

The dissent would have remanded to the district court to analyze defendant's due process challenge under *Jones*. *Id.* at 1131.

## SUMMARY OF THE ARGUMENT

Panel rehearing is inappropriate because the majority did not overlook or misapprehend *Jones*. It considered *Jones*, and properly distinguished it. *Jones* does not address the question of whether due process is satisfied when a non-citizen receives actual, personally served notice that deportation proceedings have started, requiring him to keep his address updated for the specific purpose of receiving a hearing notice, and the immigration court sends a hearing notice to the address given that goes unclaimed. The majority's reliance on circuit precedent unaffected by *Jones* was proper.

For that same reason, rehearing en banc is unnecessary to secure or maintain uniformity of this Circuit's decisions. The majority properly rejected the attempt to broaden *Jones* to different circumstances that *Jones* never considered. No circuit has found *Jones*'s "additional reasonable steps" required under the circumstances here.

## ARGUMENT

### A.    The majority opinion is not clearly irreconcilable with *Jones*.

Defendant argues that *Jones* supersedes this Circuit's deportation-notice precedent. It does not. *Jones* did not address due process where, like here, actual notice of the proceeding is made. Post-*Jones* decisions confirm that actual notice of the pendency of a proceeding satisfies due process even when related follow-up notices fail. *See, e.g.*, *Popa*, 571 F.3d 890.

### 1.    The clearly irreconcilable standard is a high one.

The three-judge panel here is bound by Ninth Circuit precedent unless that precedent is "effectively overruled," which occurs when "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). "The clearly irreconcilable requirement is a high standard." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) (quote omitted). "[I]t is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit

precedent." *Id.* (quote omitted). Or for it to just "chip[ ] away at" the theory underlying the lower case. *United States v. Green*, 722 F.3d 1146, 1150 (9th Cir. 2013).

The intervening authority "must have undercut the theory or reasoning" so significantly that the two are clearly irreconcilable. *Miller.* 335 F.3d at 900. This is because a "goal of [the] circuit's decisions, including panel and en banc decisions, must be to preserve the consistency of circuit law." *Id.* Thus, as long as this three-judge panel can apply prior circuit precedent "without running afoul" of *Jones*, it "must do so." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012).

A new case is not clearly irreconcilable with a prior case when the later one does not consider the question at issue in the earlier one. *United States v. Grandberry*, 730 F.3d 968, 974 (9th Cir. 2013); *Alonso-Juarez v. Garland*, 80 F.4th 1039, 1050 (9th Cir. 2023) (intervening "[c]ases that do not 'squarely address' an issue do not bind us"). Or when it is "far from clear" "that a rule governing one would govern the other." *Green*, 722 F.3d at 1150. Or when the intervening case "cabined its holding" to the specific context of the case that is different from the context of the lower case. *Leon Perez v. Garland*, 105 F.4th 1226, 1231–32 (9th Cir. 2024).

*Jones* did not consider due process when initial notice is actually received. Its holding is cabined to materially different facts. It is far from clear that the "additional reasonable steps" required in *Jones* are required here. The panel appropriately applied this Circuit's precedent without "running afoul" of *Jones*.

## 2. *Jones* is not clearly irreconcilable with Circuit precedent.

*Jones* asked and answered a narrow question: what are the constitutional implications when a person never gets the initial notice that government proceedings have commenced, and the government knows it? *Jones*, 547 U.S. at 223, 225.

*Jones* carried forward the long-settled premise that "due process requires the government to provide notice reasonably calculated, under all the circumstances, to apprise interested parties *of the pendency of the action* and afford them an opportunity to present their objections." *Id.* at 226 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)) (quotes omitted) (emphasis added). It applied that rule to facts presenting a "new wrinkle": the government learned before completing a tax sale that its attempt to notify the property owner of the sale proceedings failed. *Jones*, 547 U.S. at 227.

The "wrinkle" in *Jones* is not present here. Here, it is uncontested that defendant received notice that deportation proceedings were pending.

This case asks something different: does the government do enough to notify a defendant of a deportation proceeding by personally serving him with notice that such proceeding has commenced, telling him that he will get the hearing date, time, and location in the mail at the address he provides (and is required to update), and then sends that notice to that address by certified mail, even if it goes unclaimed?

The majority's answer to that question—yes, it is enough—fits neatly within *Jones*. First and foremost, defendant had actual notice that deportation proceedings

were started, that more information was coming, and that that information would come to him by mail at the address he provided. It is undisputed that defendant "had received notice to expect notice," *Derezinski v. Mukasey*, 516 F.3d 619, 622 (7th Cir. 2008). That puts him in a very different position than Jones, who was not told the tax sale was on and was not told to be on the lookout for mail related to that specific proceeding. *See Jones*, 547 U.S. at 232–33 ("knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending.").

Since *Jones*, the Supreme Court has confirmed that actual notice of the commencement of a proceeding meets due process even where other notices fail. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) (failure of bankruptee to serve company with summons and complaint did not deprive company of due process where the bankruptcy court served notice of the bankruptcy filing and the contents of the bankruptcy plan). There, the Supreme Court reiterated that "[d]ue process requires notice reasonably calculated, under all the circumstances, to apprise interested parties *of the pendency of the action* and afford them an opportunity to present their objections." *Id.* at 272 (emphasis added). It held that the receipt of "*actual* notice" "more than satisfied [their] due process rights." *Id.* (emphasis in original).

This Circuit, and others, have followed suit. *De Fontbrune v. Wofsy*, 39 F.4th 1214, 1232 (9th Cir. 2022), *cert. denied sub nom. Wofsy v. Sicre de Fontbrune*, 143 S. Ct. 1084 (2023) (indicating that actual notice informing recipient that "a proceeding was pending," and that there would be "an opportunity to participate in the proceedings,"

would meet due process despite failed attempted written notice by process server);

*Generali España de Seguros y Reaseguros, S.A. v. Speedier Shipping, Inc.*, 2023 WL 3362839,

at *2 (2d Cir. May 11, 2023) (actual notice of "the pendency of the action" meets the

*Jones* due process standard); *Keene Grp., Inc. v. City of Cincinnati, Ohio*, 998 F.3d 306,

312–13 (6th Cir. 2021) (*Jones* does not require additional steps where plaintiff was

actually "apprised of the pending proceedings"); *Arevalo v. Barr*, 950 F.3d 15, 19 (1st

Cir. 2020) (petitioner received due process under *Jones* because his counsel "had actual

notice" of the proceeding); *Crum v. Vincent*, 493 F.3d 988, 993 (8th Cir. 2007) (plaintiff

"received constitutionally adequate notice" when he received actual notice that his tax

deficiency could lead to revocation of his medical license).

Second, *Jones*'s analysis was tethered to the government action at issue—a tax

sale—leaving space for there to be different process due in deportation matters.[1] The

incentive to participate in proceedings to avoid the undue loss of property is markedly

different than the (dis)incentive of an unlawful non-citizen to participate in a process

---

[1] *Jones* repeatedly tied its analysis and holding to the notice-of-initiation-of-tax-sale milieu. *See e.g., Jones*, 547 U.S. at 226 ("Due process does not require that a property owner receive actual notice before the government may take his property"); *id.* ("We do not think that a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed"); *id.* at 234 ("But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking"); *id.* at 239 ("In this case, the State is exerting extraordinary power against a property owner—taking and selling a house he owns. It is not too much to insist that the State do a bit more to attempt to let him know about it when the notice letter addressed to him is returned unclaimed").

that may well result in deportation—especially where, as here, the non-citizen was also caught in, and confessed to, a criminal act of asylum fraud. *Compare Jones*, 547 U.S. at 230 (considering the property owner's interest in avoiding the undue loss of property), *with Rivera-Valdes*, 105 F.4th at 1123 (noting an unlawful non-citizen's "obvious reasons to avoid appearing for a deportation hearing"); *see also Lahmidi v. I.N.S.*, 149 F.3d 1011, 1016 (9th Cir. 1998) (noting the significant problem of failures to appear for deportation proceedings drove Congress to prescribe more comprehensive notice proceedings with stricter consequences). The majority properly acknowledged this distinction, as has the Seventh Circuit. *See Derezinski*, 516 F.3d at 622 (distinguishing *Jones* from the deportation hearing context, noting a non-citizen may be "unwilling to show up for a hearing where he might have been taken into custody").

*Jones* expressly declined to graft its framework onto every context. *Jones*, 547 U.S. at 227 (reaffirming that the "notice required will vary with circumstances and conditions"). That this Circuit has applied *Jones* to contexts in which the parties' interests are analogous to Jones's property interest does not dictate its application in non-analogous circumstances where the disincentive to appear is high. *See* Def. Pet. Rehear'g at 15–16 (citing cases involving pilot-license suspensions, subpoena of tax records, towing a car, escheatment). The majority opinion properly recognized *Jones*'s cabined holding here.

At its core, *Jones*, and the due process right itself, is about evaluating what steps are necessary to mitigate the risk that a person lacks notice of a government

proceeding against him. Actual notice is the goal and *Jones* requires nothing more. *Jones* is reconcilable with the panel's decision and this Circuit's precedent: actual notice of the OSC followed by an unclaimed certified hearing notice to defendant's address fulfills a defendant's rights.

Rehearing is unnecessary and inappropriate.

**B.    Defendant's arguments lack merit.**

Defendant argues this Circuit's decision in *Williams* already applied *Jones*'s "additional reasonable steps" framework to cases like defendant's. Def. Pet. Rehear'g at 13. The majority opinion considered that and correctly disagreed. *Rivera-Valdes*, 105 F.4th at 1123.

First, *Williams* did not involve individualized notice of a deportation proceeding; it involved notice in the federal register of a global rule change. Second, *Williams* did not address the "additional reasonable steps" standard. It cited *Jones* only to re-quote the *Mullane* premise that "due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Williams*, 531 F.3d at 1042 (citing *Jones,* 547 U.S. at 226) (quoting *Mullane*, 339 U.S. at 314). The majority accepted that premise and found it fulfilled by INS's direct notification to defendant that proceedings had started.

This Circuit regularly cites to *Jones* for the *Mullane* due process proposition. Def. Pet. Rehear'g at 14 (citing *Chaidez v. Gonzalez*, 486 F.3d 1079, 1086 n.8 (9th Cir. 2007);

*Al Mutarreb v. Holder*, 561 F.3d 1023, 1027 (9th Cir. 2009); *Rendon v. Holder*, 400 F.

App'x 218, 219 (9th Cir. 2010)). But that doesn't mean it has carried *Jones*'s "additional

reasonable steps" thread through those cases, as defendant claims. Defendant's own

string cite disproves his point. *Chaidez* and *Al Mutarreb* expressly declined to assess

due process. *Rendon* held that the defendant failed to state a due process claim, but *even*

*if* "additional steps" were necessary, they were taken. These cases do not analyze *Jones*,

do not apply *Jones* to a new context, and certainly do not hold that *Jones*'s "additional

reasonable steps" are required in the notice-of-deportation-hearing context where the

OSC was personally served. The panel was not bound by *Jones*, *Williams*, or any other

case to apply "additional reasonable steps." *Stare decisis* plays no role where the rule

explicated in *Jones* governs a different question than the one defendant raises.[2] *Miller*,

335 F.3d at 900.

---

[2] Defendant's string cite to out-of-circuit cases also does not help him. Def. Pet. Rehear'g at 16. *Arevalo*, 950 F.3d at 20, like *Williams*, cites *Jones* merely to pull through the *Mullane* "reasonably calculated" rule without addressing "additional reasonable steps." *Peralta-Cabrera v. Gonzales*, 501 F.3d 837, 845 (7th Cir. 2007), cites *Jones* for the general premise that it is the government's responsibility to ensure the hearing notice is adequately addressed; it did not discuss "additional reasonable steps." *Echavarria v. Pitts*, 641 F.3d 92, 94-95 (5th Cir. 2011), applied the "additional reasonable steps" analysis where the initial notice of a bond breach action failed; unlike this case, it falls within *Jones's* no-actual-notice scope. *Perez-Alevante v. Gonzales*, 197 F. App'x 191, 195–96 (3d Cir. 2006)—an unpublished case—considered *Jones* to inform its opinion that it is unreasonable, and thus violates due process, to fail to serve the hearing notice on the non-citizen's attorney of record; it relied in part on regulations that "provide for notice to an alien's attorney" and that "no such notice was given." *Id.* at 195.

That is not to say that this Circuit may never find that *Jones* applies in the immigration context.[3] The majority heeded *Jones*'s warning that the "notice required will vary with circumstances and conditions," 547 U.S. at 227, and decided correctly that defendant's actual notice sufficed. *Rivera-Valdes*, 105 F.4th at 1122–23.

Similarly, it did not run afoul of *Jones* for the majority to consider the statutory scheme. Def. Pet. Rehear'g at 17–18. Here, the statute required personal service of the OSC (or certified mail if personal service is impracticable) and provided a path for deportation proceedings to be reopened if a non-citizen established he did not receive the hearing notice. 8 U.S.C. § 1252b(a)(1) (1994); *Arrieta v. I.N.S.*, 117 F.3d 429, 432 (9th Cir. 1997). That scheme is different than the one in *Jones*, which did not require personal service, none was made, and the resulting tax sale was "irreversible." *Jones*, 547 U.S. at 230. At most, the majority's reference to the statutory scheme was superfluous; regardless of whether the statute required personal service of the OSC followed by a certified mail hearing notice, doing so met due process.

In any event, the majority *did* apply Jones's "additional reasonable steps"— alternatively assuming it applied. It found the government met *Jones*'s requirements because notice was sent by certified *and* regular mail, both returned, and it had no other information about his whereabouts. *Rivera-Valdes*, 105 F.4th at 1124. That is

---

[3] Judge Bumatay's concurrence says it shouldn't, but that opinion is not up for rehearing as it was not captured within the majority opinion.

enough under *Jones*. *Jones*, 547 U.S. at 235 (suggesting following up with regular mail could suffice); *id.* at 234 (government need only take additional steps if practicable).

What matters for due process is that the party receives notice of the pendency of an individualized proceeding against him, giving an opportunity to object. *Mullane*, 339 U.S. at 314. That didn't happen in *Jones*, but it did happen here. Applying *Jones* here unacceptably broadens its mandate. *See Rivera-Valdes*, 105 F.4th at 1130–35 (Sanchez, J. dissenting) (expanding scope of *Jones* to notices beyond the personally served OSC).[4]

## C.  Remand is inappropriate.

The pertinent facts are fully developed and undisputed. Moreover, the threshold question is one of law: does *Jones* supersede this Circuit's notice-of-deportation hearing precedent?

---

[4] The dissent misstates the government's position. The government did not contend that "sending notice by certified mail to the address listed on the asylum application was sufficient to satisfy statutory and constitutional requirements." *Rivera-Valdes*, 105 F.4th at 1132 (Sanchez, J. dissenting). It argued that sending notice by certified mail to the address listed on the personally-served OSC was sufficient, particularly where defendant acknowledged the information on the OSC by signature, the address was the same as what he gave on his own asylum application, he gave no other address, and he had been advised that he must give an address where he would receive a hearing notice and update any address change; moreover, his incentive to flee was high given his short time in the United States, his confession to committing a serious crime, and his ineligibility for relief from deportation. Gov't Ans. Br. at 1–4, 13–16, 20–25; *see, e.g.*, *Jones*, 547 U.S. at 221 ("[t]he government must consider unique information about an intended recipient").

The majority did not overlook or misapprehend *Jones*—it correctly found that defendant was adequately notified of the pendency of his deportation action and no additional steps were required. It relied on this Circuit's continuing precedent, obviating the need for rehearing en banc to secure or maintain uniformity. The case can and should be resolved on the current record.

Finally, even if defendant lacked due process, he must still meet the other three elements of 18 U.S.C § 1326(d): exhaustion of administrative remedies, deprivation of judicial review, and prejudice. He waived those arguments by not raising them in his opening brief. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[A]rguments not raised by a party in its opening brief are deemed waived."). Therefore, even if *Jones* supersedes this Circuit's pre- *and* post-*Jones* precedent on deportation notice (it doesn't), and even if there were "additional reasonable steps" that were practicable to accomplish (there weren't), reversal of the district court decision is still unwarranted. The remaining § 1326(d) elements fail for the reasons stated in the government's answering brief. *See* Govt' Ans. Br. at 7, 16–25. This Court can affirm on any basis supported by the record. *United States v. Estrella*, 69 F.4th 958, 964 (9th Cir. 2023), cert. denied, No. 23-6688, 2024 WL 899475 (U.S. Mar. 4, 2024).

## CONCLUSION

This Court should deny the petition for rehearing.

DATED this 25th day of September 2024.

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney
District of Oregon

SUZANNE MILES
Criminal Appellate Chief

*/s/ Sarah Barr*
SARAH BARR
Assistant U.S. Attorney

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**Form 11. Certificate of Compliance for Petitions for Rehearing/Responses**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 21-30177

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: 4,197 .

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ Sarah Barr | **Date** | Sep 25, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 11** 18 *Rev. 12/01/2021*