**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. LEOPOLDO RIVERA-VALDES, *Defendant-Appellant*. | No. 21-30177<br>D.C. No. 3:19-cr-00408-IM-1<br>OPINION |

Appeal from the United States District Court
for the District of Oregon
Karin J. Immergut, District Judge, Presiding

Argued and Submitted En Banc March 19, 2025
San Francisco, California

Filed September 18, 2025

Before: Mary H. Murguia, Chief Judge, and Ronald M. Gould, Consuelo M. Callahan, Milan D. Smith, Jr., Sandra S. Ikuta, Mark J. Bennett, Eric D. Miller, Danielle J. Forrest, Gabriel P. Sanchez, Holly A. Thomas and Roopali H. Desai, Circuit Judges.

Opinion by Judge Sanchez;
Dissent by Judge Bennett, joined by Judges Callahan and Ikuta, with whom Judges Miller and Forrest join as to Parts III.B and IV only;

Dissent by Judge Forrest, joined by Judge Miller.

---

## SUMMARY*

---

### Criminal Law / Due Process / Removal

The en banc court vacated the district court's denial of Leopoldo Rivera-Valdes's motion to dismiss an indictment alleging that he reentered the United States following deportation in violation of 8 U.S.C. § 1326, and remanded for further proceedings, in a case in which Rivera-Valdes asserts that the underlying removal order was invalid because he was not afforded "reasonably calculated" notice of his removal hearing when the Government learned that its notice sent by certified mail was returned unclaimed.

The en banc court held that the notice afforded to noncitizens subject to removal is governed by the due process standards articulated in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), and *Jones v. Flowers*, 547 U.S. 220 (2006). Notice by the Government must be reasonably calculated to apprise noncitizens of the pendency of removal proceedings and to afford them the opportunity to be present and to participate. The notice must be of such nature as to reasonably convey the required information, and it must afford a reasonable time for those interested to make their appearance. Where the Government learns that its notice efforts have not succeeded, that knowledge triggers an obligation on the Government's part

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

to take additional reasonable steps to effect notice, if it is practicable to do so. Notice is not "reasonably calculated" under the circumstances when the Government knows its method of service was ineffective and takes no additional steps that are reasonably available to it.

The en banc court rejected the Government's arguments that even if *Jones* applies to removal proceedings, its notice to Rivera-Valdes satisfied due process. First, *Jones* forecloses the Government's contention that by fulfilling its statutory notice obligations imposed by the Immigration and Nationality Act, it necessarily satisfied its constitutional due process obligations. Second, Rivera-Valdes did not receive constitutionally adequate notice simply by being personally served with an order to show cause conveying that a deportation hearing may be scheduled at some unknown point in the future. Third, the Government's premise that Rivera-Valdes forfeited his due process claim by not updating his address with the agency is not established by the record, and failure to comply with a statutory obligation to keep his address updated would not, in any event, forfeit his right to constitutionally sufficient notice.

The en banc court concluded that under *Jones*, the appropriate remedy is to remand to allow the district court to determine if the agency had other practicable alternatives through which to attempt notice on Rivera-Valdes. And even if Rivera-Valdes establishes a due process violation, he must demonstrate that he is entitled to relief under the other prongs of collateral attack under 8 U.S.C. § 1326(d)—prejudice, administrative exhaustion, and deprivation of judicial review. The district court left these questions undecided, and the en banc court declined to consider them in the first instance.

Judge Bennett, joined by Judges Callahan and Ikuta, and joined in part by Judges Miller and Forrest, dissented. He wrote that (1) the Constitution required nothing more where the Immigration and Naturalization Service served Rivera-Valdes with an order to show cause, informed him in person of an upcoming deportation hearing, confirmed his current address, instructed him to notify the immigration court within five days of an address change, served him via regular mail the motion to schedule a hearing, and sent him via certified mail a notice that his hearing had been in fact scheduled; (2) even after the mailed notices were returned, there were no further "additional reasonable steps" that the government was constitutionally required to undertake; and (3) Rivera-Valdes cannot meet his burden of showing a due process violation or resulting prejudice, which is required under § 1326(d) for collateral attacks on removal orders.

Judge Forrest, joined by Judge Miller, dissented. She agreed that *Jones* applies to immigration proceedings and, therefore, when the government learned that its attempt to notify Rivera-Valdes of his removal hearing failed, it was required to take additional reasonable steps to attempt to provide notice of the hearing to Rivera-Valdes, if practicable to do so. But under the facts presented here, there were no such steps available to the government. In addition, Rivera-Valdes cannot satisfy other requirements for collaterally attacking his removal order. Accordingly, she disagreed with the majority's decision to vacate the district court's denial of Rivera-Valdes's motion to dismiss his indictment.

## COUNSEL

Sarah Barr (argued), Assistant United States Attorney; Amy E. Potter and Suzanne Miles, Appellate Chiefs; Scott E. Asphaug, United States Attorney; Office of the United States Attorney, United States Department of Justice, Portland, Oregon; for Plaintiff-Appellee.

Stephen R. Sady (argued), Assistant Federal Public Defender, Office of the Federal Public Defender, Portland, Oregon; Kimberly-Claire E. Seymour, Assistant Federal Public Defender, Office of the Federal Public Defender, Eugene, Oregon; for Defendant-Appellant.

Katrina L. Eiland, Cecilia Wang, and Noelle Smith, American Civil Liberties Union, San Francisco, California; Sidra Mahfooz, American Civil Liberties Union, New York, New York; Kelly K. Simon, ACLU Foundation of Oregon, Portland, Oregon; Stephen Manning and Jordan Cunnings, Innovation Law Lab, Portland, Oregon; for Amici Curiae American Civil Liberties Union, ACLU of Oregon, and Innovation Law Lab.

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 6 of 66



## OPINION

SANCHEZ, Circuit Judge:

Seventy-five years ago in *Mullane v. Central Hanover Bank & Trust Co.*, the Supreme Court stated that an "elementary and fundamental requirement" of due process is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950). In *Jones v. Flowers*, the Supreme Court explained that one such circumstance is knowledge on the Government's part that its attempt to provide notice has failed. 547 U.S. 220, 225 (2006). Accordingly, under the *Mullane-Jones* due process analysis, when the Government learns that its notice effort has not succeeded, this knowledge triggers an obligation on the Government's part to take additional reasonable steps to effect notice, if it is practicable to do so. *Id.*

Defendant-Appellant Leopoldo Rivera-Valdes ("Rivera-Valdes") challenges the district court's denial of his motion to dismiss an indictment alleging that he reentered the United States following deportation in violation of 8 U.S.C. § 1326. Rivera-Valdes asserts that the underlying removal order was invalid because he was not afforded "reasonably calculated" notice of his removal hearing when the Government learned that its notice sent by certified mail was returned unclaimed. Because the district court did not apply the governing standard set forth in *Jones*, we vacate the district court's denial of Rivera-Valdes's motion to dismiss the indictment and remand for further proceedings.

## I.

Rivera-Valdes is a native and citizen of Mexico who unlawfully entered the United States in 1992. In December 1993, he filed an asylum application with the Immigration and Naturalization Service ("INS" or "agency") that falsely asserted he was a citizen of Guatemala and had suffered persecution. The parties agree the asylum application listed the following as his address: Leopoldo Rivera-Valdes, 4037 N. Cleveland Ave., Portland, OR 97212 ("Cleveland Avenue address"). Rivera-Valdes acknowledges that the Cleveland Avenue address is the only address he provided to the agency.

In January 1994, the INS sent a notice acknowledging receipt by regular mail to the Cleveland Avenue address. The following month, the INS mailed Rivera-Valdes notices approving the application and inviting him to retrieve his work authorization papers. When Rivera-Valdes arrived to retrieve his work authorization papers, INS officials told him that they knew the Guatemalan identity he presented was false. He immediately admitted to having purchased a false birth certificate and false paperwork, and withdrew his application for asylum. During this visit, the INS personally served Rivera-Valdes with an Order to Show Cause ("OSC"). The OSC stated that Rivera-Valdes would be subsequently notified of the date, time, and place of the hearing which would determine if he was deportable. It stated that the hearing would be calendared and notice would be mailed to the address he had last provided on his asylum application. The OSC further explained that he must inform the agency of any change of address and that if he failed to appear at his hearing after receiving written notice of the date, time, and location of the hearing, the immigration judge could order him deported in absentia. The OSC listed

Rivera-Valdes's address as 4037 N. Cleveland, Portland, OR, 97212, omitting "Ave." from the address Rivera-Valdes had provided the agency. Rivera-Valdes does not dispute that the OSC was read to him in his native language of Spanish.

On April 20, 1994, the INS filed the OSC with the Immigration Court and moved to schedule the case for a hearing. A copy of the OSC was sent by regular mail to 4037 N. Cleveland, Portland, OR 97212, and was returned as "not deliverable as addressed unable to forward" by the postal service. On April 25, 1994, the Immigration Court sent a notice of hearing by certified mail to 4037 N. Cleveland, Portland, OR 97212, providing the date, time, and location of the hearing. The hearing notice was stamped "returned to sender" and "UNCLAIMED."[1] The word "Ave." was omitted from both unsuccessful mailings. The notice of hearing was sent only once, by certified mail. The INS took no other steps to notify Rivera-Valdes of the date, time, and location of his removal hearing.

Four months later, in August 1994, the Immigration Court held a removal hearing and ordered Rivera-Valdes deported in absentia.[2] The record does not indicate whether the INS informed the Immigration Court that the mailings had gone unclaimed, though it is uncontested that the INS received the returned, unclaimed notice of hearing. Rivera-Valdes was removed in 2006. He later returned to the United States and, in 2019, was detained under the 1994 removal

---

1 Rivera-Valdes contends this means the addressee abandoned or failed to call for mail.

2 At the time of the hearing, both the INS and the Immigration Court were within the Department of Justice. *See About the Office*, U.S. Dep't Just., https://perma.cc/EGH6-YU53.

order and charged with one count of illegal reentry under 8 U.S.C. § 1326(a).

Rivera-Valdes conditionally pled guilty to illegal reentry, and moved to dismiss the indictment, asserting that the underlying removal order was invalid because he had not received adequate notice of the removal hearing. *See id.* § 1326(d). The district court, reaching only the due process challenge, held that the removal order was valid and denied the motion to dismiss. The district court reasoned that the Government's notice of hearing was "reasonably calculated" to reach Rivera-Valdes when it was sent by certified mail to the last known address listed on his asylum application. The district court observed that Rivera-Valdes was not entitled to actual notice of his hearing and that he had been warned of his obligation to apprise the agency of any change of address. The district court rejected Rivera-Valdes's contention that the address listed on the notice of hearing did not exist, noting that he had previously received mail from the Government at that address. The district court did not address the omission of the word "Ave." from the Cleveland Avenue address or the agency learning that the certified mailing of the hearing notice had gone unclaimed.

Rivera-Valdes timely appealed. A divided three-judge panel of our court held that *Jones* did not apply in the context of immigration proceedings and affirmed the district court's decision. *See United States v. Rivera-Valdes*, 105 F.4th 1118 (9th Cir. 2024) (per curiam), *reh'g en banc granted*, 125 F.4th 991 (9th Cir. 2025). Upon the vote of a majority of non-recused active judges, we granted rehearing en banc and vacated the three-judge panel decision.

## II.

A defendant may collaterally attack the removal order underlying an indictment under 8 U.S.C. § 1326 by arguing that the proceeding which produced the order violated his Fifth Amendment right to due process. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987); *see also United States v. Melendez-Castro*, 671 F.3d 950, 953 (9th Cir. 2012). To prevail, a defendant must show that (1) he exhausted administrative remedies for the removal order, (2) the deportation proceedings improperly deprived him of an opportunity for non-administrative judicial review, and (3) the removal order was fundamentally unfair. 8 U.S.C. § 1326(d); *see also United States v. Palomar-Santiago*, 593 U.S. 321, 324–25 (2021). An underlying removal order is fundamentally unfair if the defendant's due process rights were violated in the removal proceeding and the defendant suffered prejudice as a result. *United States v. Martinez*, 786 F.3d 1227, 1230 (9th Cir. 2015). We have jurisdiction under 28 U.S.C. § 1291. "We review de novo the denial of a motion to dismiss an indictment under 8 U.S.C. § 1326 when the motion is based on alleged due process defects in an underlying deportation proceeding." *Martinez*, 786 F.3d at 1229–30 (quoting *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014)).

Rivera-Valdes contends that his right to due process was violated in the underlying removal proceeding because the agency did not use means reasonably calculated to notify him of his hearing when it sent notice of his hearing by certified mail, learned the notice had gone unclaimed, and took no additional reasonable steps to effectuate notice. Rivera-Valdes further asserts that the Supreme Court's decision in *Jones* is controlling and that the district court erred when it relied on pre-*Jones* circuit authority that did

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 11 of 66



not address the Government's due process obligations when it becomes aware that mailed notice has been returned unclaimed.

The Government does not meaningfully dispute Rivera-Valdes's factual assertions nor his constitutional right to reasonably calculated notice. Instead, the Government contends that *Jones*'s "additional reasonable steps" requirement does not apply in the context of immigration removal proceedings. The Government further argues that even if *Jones* does apply to immigration removal proceedings, sending notice to Rivera-Valdes by certified mail was sufficient for various reasons discussed below. In short, the parties dispute whether notice was reasonably calculated under the circumstances presented here.[3]

**A.**

We begin with foundational precedent. In *Mullane*, the Supreme Court held that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be

3 Although Rivera-Valdes did not cite *Jones* in his motion to dismiss, the parties agree that he did not forfeit his due process claim on appeal. "Our traditional rule is that '[o]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.'" *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) (alteration in original) (quoting *Yee v. Escondido*, 503 U.S. 519, 534 (1992)); *see also Singh v. Garland*, 118 F.4th 1150, 1165 (9th Cir. 2024) ("[T]he court is not limited to the particular legal theories advanced by the parties, [and] retains the independent power to identify and apply the proper construction of governing law." (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991))). Because Rivera-Valdes challenged whether the notice of hearing was "reasonably calculated" to reach him in accordance with his due process rights, and the district court addressed and denied the substance of his due process claim, his challenge has been preserved for our review.

accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314. Therefore, "[t]he means employed [to provide such notice] must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315. In assessing the adequacy of a given form of notice, we must also balance the "interest of the State" against "the individual interest sought to be protected . . . ." *Id.* at 314.

In a series of cases following *Mullane*, the Court elaborated on the principle that "notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests." *Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956). In *Walker*, the Court explained that because it is impossible to establish a "rigid formula" for the type of notice that must be given, the "notice required will vary with circumstances and conditions." *Id.* The Court held that a notice of condemnation published in a local newspaper fell "short of the requirements of due process" in circumstances where the interested landowner's name and information were known to city officials and notice by mail to him was reasonable. *Id.* at 116.

That same year, the Court held in *Covey v. Town of Somers* that notice of a tax foreclosure by mailing, posting, and publication was inadequate where town officials were aware that the property owner was not competent to manage her own affairs and lacked a guardian to protect her. 351 U.S. 141, 146–47 (1956). Then, in *Robinson v. Hanrahan*, the Court held that notice of a forfeiture proceeding mailed to a vehicle owner's home address was not reasonably calculated where the state knew that the owner was in jail

and unlikely to receive it. 409 U.S. 38, 40 (1972) (per curiam).

Finally, in *Greene v. Lindsey*, the Court held that eviction notices posted on tenants' doorways in a multi-tenant building were constitutionally deficient where process servers knew that the notices were being torn down by children and others. 456 U.S. 444, 453–56 (1982). *Greene* explained that "[t]he sufficiency of notice must be tested with reference to its ability to inform people of the pendency of proceedings that affect their interests." *Id.* at 451. Whatever the efficacy of posting notice in other cases, the Court concluded that the "State's continued exclusive reliance on an ineffective means of service is not notice 'reasonably calculated to reach those who could easily be informed by other means at hand.'" *Id.* at 455–56 (quoting *Mullane*, 339 U.S. at 319).

As the Supreme Court's application of *Mullane* across many cases reflects, whether notice is reasonably calculated "will vary with [the] circumstances and conditions" of a particular case, *Walker*, 352 U.S. at 115, and notice "require[s] the government to consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case," *Jones*, 547 U.S. at 230. The Government need not provide actual notice to satisfy due process. *See Dusenbery v. United States*, 534 U.S. 161, 170 (2002). But adequate notice requires something more than employing means that knowingly result in a failure to provide notice—as *Jones* elaborated upon.

In *Jones*, the Arkansas Commissioner of State Lands sent two notices to Gary Jones by certified mail that his property taxes were delinquent and that, unless Jones

redeemed the property, it would be subject to public sale. 547 U.S. at 223–24. Both certified letters were sent to the address registered by Jones and both mailings were returned "unclaimed." *Id.* at 224. The Commissioner took no further steps to notify Jones of the impending foreclosure. *Id.* at 229. A few weeks before the foreclosure sale, the Commissioner also published a notice of public sale in the newspaper. *Id.* at 224. The home was sold to respondent Linda Flowers at a fraction of its fair market value. *Id.* Following the sale, Jones sued the Commissioner and Flowers in state court, asserting that the Commissioner's failure to provide notice of the tax sale and resulting loss of his property was a due process violation. *Id.* The Arkansas Supreme Court affirmed the trial court's grant of summary judgment in favor of Flowers and the Commissioner, holding that attempting to provide notice by certified mail satisfied due process under the circumstances. *Id.* at 225.

The Supreme Court reversed and held that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* Applying *Mullane*'s admonition that the means "must be such as one desirous of actually informing the absentee might reasonably adopt," *id.* at 229 (quoting *Mullane*, 339 U.S. at 315), the Court reasoned that "a person who actually desired to inform" another would not "do *nothing* when a certified letter . . . is returned unclaimed." *Id.* (emphasis added). *Jones* clarified that one of "the circumstances" relevant to determining whether notice was "reasonably calculated" is whether "the government becomes aware . . . that its attempt at notice has failed." *Id.* at 226–27. When the Government has actual knowledge that notice was not effective, it "must take

additional reasonable steps to attempt to provide notice . . . if it is practicable to do so." *Id.* at 225; *see id.* at 230 ("[T]he government's knowledge that notice pursuant to the normal procedure was ineffective triggered an obligation on the government's part to take additional steps to effect notice.").

**B.**

We have applied the *Mullane-Jones* due process analysis to evaluate the adequacy of notice in a variety of contexts. *See, e.g.*, *Yi Tu v. Nat'l Transp. Safety Bd.*, 470 F.3d 941, 946 (9th Cir. 2006) (pilot license suspension proceedings); *J.B. v. United States*, 916 F.3d 1161, 1173–74 (9th Cir. 2019) (subpoena of tax records); *Grimm v. City of Portland* (*Grimm I*), 971 F.3d 1060, 1068 (9th Cir. 2020) (municipal vehicle towing action); *Taylor v. Yee* (*Taylor V*), 780 F.3d 928, 935–38 (9th Cir. 2015) (state unclaimed property act procedures).

In *Yi Tu*, for example, we considered the notice afforded a pilot who faced Federal Aviation Administration ("FAA") license suspension for "'buzzing' (flying below proscribed minimum safe altitudes)" over Mount Rushmore. 470 F.3d at 943. After the pilot opted for an immediate suspension of his license so that he could appeal the agency's decision, the FAA sent the suspension orders and notices of appeal to him only by certified mail. *Id.* at 944. The suspension orders were returned "unclaimed," causing the pilot to miss the deadline in which to appeal the agency's decision. *Id.* Applying *Jones*, we held that the FAA provided constitutionally deficient notice of the pilot license suspension orders. *Id.* at 946. The FAA's notice was not "reasonably calculated" to reach the pilot because the FAA knew that its two previous certified mailings had been

returned "unclaimed," and yet the agency failed to take additional reasonable steps to notify the pilot of the suspension orders. *Id.* We observed that six weeks after the pilot's suspension, the FAA reverted to sending letters demanding the surrender of his pilot's license by both certified mail and first-class mail, demonstrating the feasibility of first-class mail. *Id.* We noted that when the agency actually desired to inform the pilot, it resorted to regular mail as an additional method of service. *Id.*

Several of our sister circuits have also applied the *Mullane*-*Jones* framework to evaluate the adequacy of notice in a variety of legal proceedings. *See, e.g.*, *Luessenhop v. Clinton Cnty.*, 466 F.3d 259, 268–72 (2d Cir. 2006) (property foreclosure); *Peralta-Cabrera v. Gonzales*, 501 F.3d 837, 845 (7th Cir. 2007) (removal proceedings); *García-Rubiera v. Fortuño*, 665 F.3d 261, 276 (1st Cir. 2011) (compulsory motor vehicle insurance reimbursement scheme); *Linn Farms & Timber Ltd. P'ship v. Union Pac. R.R. Co.*, 661 F.3d 354, 358–59 (8th Cir. 2011) (mineral rights forfeiture proceedings); *Echavarria v. Pitts*, 641 F.3d 92, 94–95 (5th Cir. 2011) (Department of Homeland Security ("DHS") action), *as revised* (June 21, 2011); *Lampe v. Kash*, 735 F.3d 942, 943–44 (6th Cir. 2013) (bankruptcy action); *Yang v. City of Wyoming*, 793 F.3d 599, 603 (6th Cir. 2015) (Section 1983 action involving building demolition); *D.R.T.G. Builders, LLC v. Occupational Safety & Health Rev. Comm'n*, 26 F.4th 306, 311 (5th Cir. 2022) (Occupational Safety and Health Administration ("OSHA") action).

For example, in *Echavarria*, the Fifth Circuit held that due process required the DHS to take "additional reasonable steps" to notify a certified class of bond obligors that their cash bonds (posted to secure the release of detained

noncitizens) were in breach after the agency learned that the bond demands sent by certified mail were returned as undeliverable. 641 F.3d at 93–95. In so concluding, the Fifth Circuit rejected the Government's argument that *Jones* should not apply in the immigration bond context, explaining that *Jones* stands for the "general principle of requiring additional reasonable steps when the sender knows that notice was not received . . . ." *Id.* at 95; *see also D.R.T.G. Builders*, 26 F.4th at 311 (concluding OSHA "took steps that were reasonably calculated" under *Jones* to provide petitioner notice of a workplace safety citation when it sent additional mailings after discovering its certified mail attempts had failed).

As the foregoing authorities make clear, the due process principles enshrined in *Mullane* and *Jones* apply generally across many legal proceedings and are not limited to tax foreclosure sales or only certain government actions. That is, whenever "notice is a person's due," *Mullane*, 339 U.S. at 315, the Due Process Clause requires that "notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests," *Walker*, 352 U.S. at 115. Under *Jones*, "knowledge on the government's part is a 'circumstance and condition' that varies the 'notice required.'" 547 U.S. at 227. As we explain next, these due process principles apply with equal force in the context of immigration removal proceedings.

**C.**

We have repeatedly reaffirmed that "[t]he Due Process Clause protects aliens in deportation proceedings and includes the right to a full and fair hearing as well as notice of that hearing." *Farhoud v. INS*, 122 F.3d 794, 796 (9th

Cir. 1997) (first citing U.S. Const. amend. V; and then citing *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982)); *see also Dobrota v. INS*, 311 F.3d 1206, 1210 (9th Cir. 2002) ("Aliens facing deportation are entitled to due process under the Fifth Amendment . . . encompassing a full and fair hearing and notice of that hearing."); *Barraza Rivera v. INS*, 913 F.2d 1443, 1447 (9th Cir. 1990) ("The Fifth Amendment guarantees due process in deportation proceedings."); *Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir. 1999) (accord). And, indeed, the Government agreed at oral argument that the Due Process Clause applies to everyone who is physically present within the sovereign territory of the United States.

Noncitizens are entitled to due process protections regardless of whether their presence in this country is lawful. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth . . . Amendment[]."); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."); *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903) (holding that noncitizens "alleged to be illegally here" are still protected by due process of law). And the stakes for an individual subject to removal are no less severe than other legal proceedings. *See Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021) ("A notice to appear serves as the basis for

commencing a grave legal proceeding. . . . [I]t is 'like an indictment in a criminal case [or] a complaint in a civil case.'" (citation omitted)).

In the context of a criminal prosecution for illegal reentry, criminal defendants are also entitled to a meaningful opportunity for judicial review of the underlying removal order, including an examination of whether the prior removal proceedings comported with due process. *See* 8 U.S.C. § 1326 (permitting a collateral challenge to underlying removal order); *see also Mendoza-Lopez*, 481 U.S. at 839; *Melendez-Castro*, 671 F.3d at 954–55 (holding that a defect in defendant's removal proceedings violated his right to due process and required the district court to determine if he suffered prejudice); *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004) ("In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." (quoting *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998))).

While no published Ninth Circuit decision has squarely applied *Jones* in the context of a removal proceeding, we have repeatedly suggested that *Jones* provides the correct framework to analyze due process claims in this context. In *Chaidez v. Gonzales*, for example, we considered whether a notice of hearing sent by certified mail was adequate when it was signed by an unknown person at that address rather than the person subject to removal. 486 F.3d 1079, 1081 (9th Cir. 2007). Citing *Jones*, we observed that the agency's policy of permitting any person at the noncitizen's address to sign a certified mailing could raise due process concerns. *See id.* at 1086 n.8. We avoided the question, however, after

determining that the Government's notice efforts failed to meet even statutory requirements. *See id.* at 1086–87 & n.8.

Likewise, in *Al Mutarreb v. Holder*, we cited *Jones* when considering the adequacy of a notice to appear for removal proceedings. 561 F.3d 1023, 1027 (9th Cir. 2009). There, the agency sent notice by certified mail, the notice was returned to the agency unclaimed, and the agency took no further steps to notify Al Mutarreb or his counsel of record. *See id.* at 1027–28 (citing *Jones*, 547 U.S. at 225). We again avoided the constitutional question—whether the agency's failure to take additional reasonable steps to effectuate notice violated due process—after concluding that the removal order was invalid on other grounds. *Id.* at 1028; *see also Williams v. Mukasey*, 531 F.3d 1040, 1042 (9th Cir. 2008) (clarifying that *Mullane*-*Jones* "provide[s] the 'appropriate analytical framework' for considering the adequacy of notice" in the context of an immigrant petitioner's motion to reopen before the Board of Immigration Appeals (quoting *Dusenbery*, 534 U.S. at 167)).

Today we make explicit what has been implied in our prior case law. We hold that the notice afforded to noncitizens subject to removal is governed by the due process standards articulated in *Mullane* and *Jones*. Notice by the Government must be reasonably calculated to apprise noncitizens of the pendency of removal proceedings and to afford them the opportunity to be present and to participate. *Jones*, 547 U.S. at 226. "The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance." *Mullane*, 339 U.S. at 314 (internal citations omitted). Where the Government learns that its notice efforts have not succeeded, that knowledge triggers an obligation on the Government's part to take additional

reasonable steps to effect notice, if it is practicable to do so. *Jones*, 547 U.S. at 234. Notice is not "reasonably calculated" under the circumstances when the Government knows its method of service was ineffective and takes no additional steps to effect notice that are reasonably available to it. *Id.* at 227, 229.

## III.

All eleven members of this panel agree that the due process principles of *Mullane* and *Jones* apply to immigration removal proceedings. The Government contends, however, that even if *Jones* applies to such proceedings, its notice to Rivera-Valdes satisfied due process for three reasons. First, it argues that because the agency met statutory notice requirements, it necessarily satisfied constitutional requirements as well. Second, it argues that Rivera-Valdes was afforded due process because he was made aware of the forthcoming deportation proceedings when he was personally served with the OSC. Finally, the Government argues that Rivera-Valdes forfeited any due process claim when he failed to update his address with the agency. We address each contention in turn.

### A.

First, the Government contends that by fulfilling its statutory notice obligations imposed by the Immigration and Nationality Act ("INA"), it necessarily satisfied its constitutional due process obligations to Rivera-Valdes. This argument is foreclosed by *Jones*. In 1994, the operative provision of the INA required that the Government prove "by clear, unequivocal, and convincing evidence" that "written notice" was "provided to the alien or the alien's counsel of record" before an immigration judge could order

removal in absentia.[4] 8 U.S.C. § 1252b(c)(1) (repealed 1996). At the time, section 1252b(a)(2)(A) specified that written notice of deportation proceedings "shall be given in person to the alien (or, if personal service is not practicable, written notice shall be given by certified mail to the alien or to the alien's counsel of record, if any), in the order to show cause or otherwise, of . . . the time and place at which the proceedings will be held." The term "certified mail" was defined as "certified mail, return receipt requested." *Id.* § 1252b(f)(1). The Government asserts that its compliance with these statutory requirements necessarily satisfied its due process obligations to Rivera-Valdes.

As *Jones* makes clear, however, compliance with statutory notice requirements does not resolve whether notice is reasonably calculated under the "practicalities and peculiarities of [an individual] case." 547 U.S. at 230–31 (quoting *Mullane*, 339 U.S. at 314–15). Even when a statute imposes requirements that are "reasonably calculated" to provide notice in the usual circumstance, notice may not satisfy due process in a particular case. *Id.* at 231–32. Although the Commissioner in *Jones* complied with state law by sending notice of Jones's tax delinquency to him by certified mail, *id.* at 224–25, doing so did not insulate the Commissioner against claims that the notice of foreclosure to Jones was constitutionally inadequate. *Id.* at 231–32. Rather, the Supreme Court emphasized that the "government

4 Under the 1994 statutory regime, notice by certified mail created a presumption in the Government's favor of effective service, which a petitioner could rebut by showing (i) that their mailing address had not changed; (ii) that neither the petitioner or a "responsible party working or residing at that address refused service"; and (iii) that there was "nondelivery or improper delivery by the Postal Service." *Arrieta v. INS*, 117 F.3d 429, 432 (9th Cir. 1997).

[is required] to consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case." *Id.* at 230.

Similarly, in *Yi Tu*, we rejected the FAA's argument that because it was statutorily authorized to give notice of license suspension proceedings by certified mail, its notice to the pilot necessarily satisfied due process. 470 F.3d at 945–46. We concluded that "[a] reasonable agency actually desirous of notifying an individual of his right to be heard would not resort to a 'mechanical adherence' to the minimum form of notice authorized by regulation in the very instance when timely notice is most crucial." *Id.* at 946 (quoting *Dobrota*, 311 F.3d at 1213). That the FAA complied with its statutory obligation to deliver notice by certified mail did not immunize the agency from the claim that its notice failed to satisfy due process under the particular circumstances of that case. *See id.*

**B.**

Second, the Government contends that Rivera-Valdes was afforded due process because he was personally served with an OSC advising him to expect a subsequent hearing notice. Our dissenting colleague places great emphasis on this point, noting that "Rivera-Valdes had received recent *actual* notice of his deportation proceedings through personal service of the OSC, which was written and read to him in his primary language of Spanish." Diss. at 40. According to the dissent, neither *Mullane* nor any of the cases before it has held that notice must contain the specific date, time, and location of a forthcoming hearing for due process to be satisfied. Diss. at 44. Because Rivera-Valdes knew from the OSC that a deportation proceeding had been

commenced against him, and the INS ultimately did send him notice by certified mail of the date, time, and location of his hearing (albeit unsuccessfully), the dissent and the Government contend that Rivera-Valdes was afforded constitutionally adequate notice. We disagree.

"The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). This "right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Greene*, 456 U.S. at 449 (quoting *Mullane*, 339 U.S. at 314). For that reason, "notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance." *Mullane*, 339 U.S. at 314 (internal citations omitted). Here, the relevant question is whether personal service of the OSC on Rivera-Valdes conveyed the "required information" which would "afford [him] an opportunity" to appear at his removal hearing and "present [his] objections." *Id.* It did not.

It is true, as our dissenting colleague observes, that Rivera-Valdes learned from the OSC that a deportation hearing would be forthcoming. But notice conveying that a deportation hearing may be scheduled at some unknown point in the future—without specifying the date, time, or location—hardly afforded Rivera-Valdes the opportunity to appear and be heard. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1971). But, as *Mullane* cautions, "when notice is a person's due,

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 25 of 66



process which is a mere gesture is not due process." 339 U.S. at 315.[5]

Our dissenting colleague relies on the notion that Rivera-Valdes received "actual notice to expect notice of his deportation hearing." Diss. at 42–43. But the Supreme Court in *Jones* rejected the argument that an individual having "inquiry notice" of a potential proceeding relieves a governmental entity of its constitutional obligations. *See* 547 U.S. at 232 ("[T]he common knowledge that property may become subject to government taking when taxes are not paid does not excuse the government from complying with its constitutional obligation of notice before taking private property.").

We have similarly rejected the notion that notice of earlier steps in a proceeding lessens the need to provide constitutionally adequate notice at later steps in a proceeding. In *Yi Tu*, not only was the pilot aware of the license suspension proceedings against him, he had participated in the earlier stages of those proceedings. *See* 470 F.3d at 944. In fact, the FAA sent nine mailings regarding these proceedings, and the pilot received at least four of them. *See id.* at 943–44. Nevertheless, the failure of the FAA to provide the pilot with adequate notice of the

5 Indeed, under the statutory regime that applied at the time of Rivera-Valdes's removal, personal service of the OSC only advised Rivera-Valdes that a deportation hearing *might* be scheduled. Service of the OSC did not itself trigger the scheduling of a hearing. *See* 8 U.S.C. § 1252b(a)(1)–(2). Both the INS and the Immigration Court were required to take additional steps for that to occur. *See* 8 C.F.R. § 3.14(a) (1994) (explaining that jurisdiction vests with the Immigration Court upon filing and service of a noticed motion to schedule deportation hearing); *id.* § 3.18 (explaining the Immigration Court's obligation to schedule hearing and send notice to the government and respondent).

order of suspension violated his due process rights. *See id.* at 945–46. Similarly, Rivera-Valdes did not receive constitutionally adequate notice simply by being personally served with the OSC.

## C.

Finally, the Government contends that Rivera-Valdes forfeited his due process claim when he failed to update his address with the agency. As we discuss below, the Government relies on a premise not established by the record. It is not at all clear that Rivera-Valdes had moved. But even if he had, *Jones* disposes of the Government's contention. Again, the Court explained that "Jones' failure to comply with a statutory obligation to keep his address updated [did not] forfeit[] his right to constitutionally sufficient notice." 547 U.S. at 232. So too here with Rivera-Valdes.[6]

## IV.

It is undisputed that in response to the returned, unclaimed notice of hearing, the Government did nothing. Under *Jones*, the appropriate remedy is to remand to allow the district court to determine if the agency had other

6 The dissent asserts that this case is distinguishable from *Jones*, *Robinson*, and *Covey*, speculating—with no support from the record—that unlike the individuals in those cases who had "every incentive to learn" of their proceedings, Rivera-Valdes was incentivized to "avoid his deportation proceeding, and to ignore or fail to claim mail." Diss. at 50 n.15. Even were this true, the dissent has not explained why Rivera-Valdes's motives would diminish his due process right to notice reasonably calculated to reach him. As *Jones* confirms, whatever the failings of the interested party, the relevant due process inquiry is whether government knowledge that notice has failed should obligate it to take additional steps to effect notice when it is practicable to do so. *See* 547 U.S. at 234.

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 27 of 66



practicable alternatives through which to attempt notice on Rivera-Valdes. 547 U.S. at 234; *see also Echavarria*, 641 F.3d at 95.

This is a quintessential factual inquiry best left to the district court to undertake in the first instance. In *Jones*, the Court described other reasonable measures the Government could have taken to effect notice, but cautioned that "[i]t is not our responsibility to prescribe the form of service that the [government] should adopt." 547 U.S. at 234 (alterations in original). Guided by this approach, we outline possible alternatives the district court may consider on remand.

One alternative is to consider whether the address in the A-file[7] matched the address to which the Government sent the notice of hearing by certified mail. The record indicates that, when the approval of Rivera-Valdes's employment authorization application was sent to the Cleveland address that included "Ave.," he showed up to retrieve his authorization papers. It was only after subsequent mailings were sent without the word "Ave." in the Cleveland address that the OSC and notice of hearing were returned as "not deliverable as addressed" and "unclaimed." The district court should consider if any discrepancy in the addresses was a basis for the unsuccessful mailings, and if so, whether the Government could have taken additional steps to correct it.

The dissent concludes that remand is unnecessary because Rivera-Valdes "confirmed" or "corroborated" that the address listed on the OSC—which omitted the word "Ave."—was his current address. *See, e.g.*, Diss. at 41. But

7 An "A-file" is the file DHS keeps on the deportable noncitizen. *See Echavarria*, 641 F.3d at 96 n.3.

the dissent misreads what the OSC actually states. The OSC did not prompt Rivera-Valdes to confirm the *accuracy* of the OSC. Rather, the OSC's signature line prompted Rivera-Valdes's "acknowledgment/receipt of this form." This stands in contrast, for example, to the signature line in Rivera-Valdes's application for employment authorization, which required that the signer "certify under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct." In that document, Rivera-Valdes listed his N. Cleveland address *with* the word "Ave."

This discrepancy between the addresses in the record warrants remand to the district court for further factual development. The Fifth Circuit took a similar approach in *Echavarria*, holding that the district court did not err in finding that "the reasonable steps available to DHS included reference to . . . the A-file of the bonded immigrant for alternate contact information." 641 F.3d at 96 (footnote omitted). *Echavarria* observed that "[t]he A-file is readily accessible to DHS. When the government can attempt to ascertain the necessary information through such minimal effort, it is incumbent on the government to do so." *Id.*

Another alternative for the district court to consider may be whether sending the notice of hearing by first-class mail was a feasible option. In *Yi Tu*, we observed that first-class mail may be a reasonably calculated alternative because it can "be examined at the end of the day, [whereas certified mail] can only be retrieved from the post office for a specified period of time." 470 F.3d at 943 n.1 (quoting *Jones*, 547 U.S. at 235); *see id.* at 945 ("[W]here mailed notice is returned unclaimed, the government must take additional steps to [e]nsure notice, if it is practicable to do so."). These suggestions are not exhaustive, and we leave it

to the parties to suggest whether other reasonable alternatives were available to the agency.

Even if Rivera-Valdes establishes a due process violation, that is not the end of the district court's inquiry. Rivera-Valdes must demonstrate that he is entitled to relief under the other prongs of collateral attack: prejudice, administrative exhaustion, and deprivation of judicial review. *See* 8 U.S.C. § 1326(d); *Martinez*, 786 F.3d at 1230. The district court left these questions undecided, and we decline to consider them in the first instance.

## V.

Under *Mullane* and *Jones*, due process requires that the notice afforded to individuals subject to immigration removal proceedings must be reasonably calculated to inform them of the pendency of the proceedings and a meaningful opportunity to appear and to contest the charges. When the Government learned that its only attempt to notify Rivera-Valdes of the date, time, and location of his removal hearing had failed, it was not enough for the Government to throw up its hands and do nothing. The Government was obligated to take additional reasonable steps to effect notice, provided it was practicable to do so. *See Jones*, 547 U.S. at 234. We therefore vacate the district court's judgment and remand for further proceedings consistent with this opinion.

**VACATED and REMANDED.**

BENNETT, Circuit Judge, dissenting, with whom CALLAHAN and IKUTA, Circuit Judges, join, and with whom MILLER and FORREST, Circuit Judges, join as to Parts III.B and IV only:

This case concerns whether the government provided Leopoldo Rivera-Valdes with constitutionally adequate notice of his deportation proceedings in 1994. The Immigration and Naturalization Service ("INS" or "agency") served him with an Order to Show Cause ("OSC"), informed him in person of an upcoming deportation hearing, confirmed his current address, instructed him to notify the immigration court within five days of an address change, served him via regular mail the motion to schedule a hearing, and sent him via certified mail a notice that his hearing had been in fact scheduled.

First, on these facts, the Constitution required nothing more. Second, even after the mailed notices were returned, there were no further "additional reasonable steps" that the government was constitutionally required to undertake. Third, Rivera-Valdes cannot meet his burden of showing a due process violation or resulting prejudice, which is required under 8 U.S.C. § 1326(d) for collateral attacks on removal orders. Because each of these three reasons independently precludes Rivera-Valdes's challenge to his indictment, I respectfully dissent.

## I.

On March 3, 1994, Rivera-Valdes, a citizen of Mexico, appeared at an INS office to collect his work permit after filing an application for asylum. His application falsely stated that he was a citizen of Guatemala who feared

persecution by guerrillas,[1] but it listed an address at which he was capable of receiving mail.[2] The INS had mailed Rivera-Valdes notices to that address about the receipt of his asylum application, and his grant of work authorization. As instructed by those mailed notices, Rivera-Valdes arrived at the INS office to pick up his employment authorization document. He presented a false Guatemalan birth certificate as proof of identity. When confronted with that falsity, Rivera-Valdes admitted to the fraud[3] and withdrew his

---

[1] The application falsely states, for example:

> I am seeking political asylum due to the fact that when I was 13 the guerrillas forced me to join their group. I didn't realy [sic] understand what was going on but when I realized that they were bad, I tried very hard to escape. My (2) brothers who were also guerrillas were killed, by the military soldiers. I got away, and fled to the United States. . . . I know that the guerrillas would hunt me down and kill me because I abandoned them. . . . I fear very much for my life. Please assist me to get political asylum.

[2] The asylum application uses "Clevenland" in the street name, while other documents in the record use "Cleveland." As the government notes, Rivera-Valdes has not argued below or on appeal that there is a material distinction between the two. Thus, like the majority, I treat it as a single address. *See* Maj. at 7.

[3] The INS Special Agent documented the encounter as follows:

> 1. Subject was encountered this date [March 3, 1994] when he appeared at the Portland Exams Office and presented a false Guatemalan Birth Cert. as proof of identity in order to pick up his EAD [(Employment Authorization Document)].

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 32 of 66



asylum application. INS officials personally served him with an OSC.

The OSC was written in English and Spanish and read to him in Spanish, his primary language. It stated in English that his deportation hearing would be held at a date "to be calendared and notice provided by the Office of the Immigration Judge," which was translated in Spanish as: "the Office of the Immigration Judge will mail a notice to the address provided by respondent with the date of the hearing."[4] The OSC instructed:

> You are required by law to provide immediately in writing an address (and telephone number, if any) where you can be contacted. You are required to provide written notice, within five (5) days, of any change in your address or telephone number to the office of the Immigration Judge listed

---

> 2. Subject freely admitted to being a native and citizen of Mexico who last entered the U.S. as stated above [in February 1993, near Nogales, Arizona, without inspection].
>
> 3. Subject claims that he purchased the false Guat. Birth Cert. and the political asylum paperwork from a man named "Juan" who lives in an apartment on Williams St. in Portland. Claims further that he paid $200 for the [birth certificate]/paperwork.

[4] The original Spanish text reads: "La Oficina del juez de inmigracion enviara un aviso a la direccion facilitada por demandado con la fecha de la Audiencia." The above English translation is based on how the OSC translates identical terms elsewhere.

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 33 of 66



> in this notice. Any notices will be mailed only to the last address provided by you.

The OSC did not list a telephone number. But Rivera-Valdes confirmed that he could be contacted at the following address, as typewritten on the OSC:

> 4037 N Cleveland
> Portland, Oregon 97212

Rivera-Valdes signed the OSC and provided his right thumbprint. The OSC also stated:

> [Y]ou will be ordered deported *in your absence*, if it is established that you are deportable and you have been provided the appropriate notice of the hearing. . . . If you are ordered deported *in your absence*, you cannot seek to have that order rescinded except that: (a) you may file a motion to reopen the hearing within 180 days after the date of the order if you are able to show that your failure to appear was because of exceptional circumstances, or (b) you may file a motion to reopen at any time after the date of the order if you can show that you did not receive written notice of your hearing and you had provided your address and telephone number (or any changes of your address or telephone number) as required . . . .

The OSC is attached as an appendix.

Two notices were mailed to the address confirmed by Rivera-Valdes on the OSC. On April 20, 1994, after filing the OSC with the immigration court and moving to schedule the case for a hearing, the government mailed via regular mail a copy of the scheduling motion[5] to the address listed on the OSC:

> Leopoldo Rivera-Valdes
> 4037 N Cleveland
> Portland OR 97212

This notice was returned as "Not Deliverable As Addressed[,] Unable to Forward." On April 25, 1994, once the hearing had been scheduled, the government mailed via certified mail a deportation hearing notice, providing the time and place of the hearing. The certified mail was addressed to:

---

[5] The Certificate of Service was signed by an INS legal technician, and stated:

> I certify that I served this motion on Respondent by sending a true copy to him, along with a copy of the legal aid list for Oregon and Form I-618, by regular mail, postage prepaid to the following address:
>
> > Leopoldo RIVERA-Valdes
> > 4037 N Cleveland
> > Portland OR 97212

RIVERA-VALDES, LEOPOLDO
4037 N CLEVELAND
PORTLAND OR 97212

This notice was "Returned to Sender" as "Unclaimed."[6]

On August 12, 1994, the immigration court held the hearing and ordered Rivera-Valdes deported in absentia. Rivera-Valdes was not apprehended and deported until 2006.

At some point following his deportation, Rivera-Valdes returned to the United States. In 2019, he was indicted on one count of illegal reentry. Rivera-Valdes moved to dismiss the indictment, collaterally attacking his 1994 deportation order. In a 2020 declaration, Rivera-Valdes stated that "[i]n 1994, [he] was never informed that any deportation hearing had been scheduled on [his] behalf" and that he "never received notice that [his] deportation hearing had been scheduled for August 12, 1994." His declaration did not state where he was living in 1994 or whether 4037 N Cleveland, Portland OR 97212 was his address at any relevant time.

In denying the motion to dismiss the indictment, the district court found that Rivera-Valdes "failed to provide *any* compelling evidence that notice of his removal hearing was not 'reasonably calculated' to reach him" and thus failed to

[6] As the majority notes, Rivera-Valdes concedes that according to the U.S. Postal Service, "unclaimed" means the addressee abandoned or failed to call for the mail. Maj. at 8 n.1.

meet his burden of showing a due process violation (emphasis added).[7]

## II.

I agree with the majority that "the due process principles" of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), and *Jones v. Flowers*, 547 U.S. 220 (2006), "apply generally across many legal proceedings," including "immigration removal proceedings." Maj. at 17; *see also* Maj. at 21. But in evaluating the notice afforded to Rivera-Valdes of his deportation proceedings, the majority fails to undertake the inquiry required under the *Mullane*-*Jones* framework. Instead, the majority holds that any time a mailed notice is returned, this "triggers an obligation on the Government's part to take additional reasonable steps to effect notice, if it is practicable to do so." Maj. at 6; *see also* Maj. at 14–15, 20–21. But this new and unjustified per se rule conflicts with the fact-specific and fact-dependent *Mullane*-*Jones* framework. A proper application of *Mullane*-*Jones* shows that the steps the government did take and the notice the government did provide were constitutionally adequate, which ends the due process inquiry.

### A.

As the majority acknowledges, the governing framework for evaluating the adequacy of notice sets forth a fact-

[7] In a collateral attack on a removal order, "the defendant bears the burden of establishing both that the 'deportation proceeding violate[d] [his] due process rights' and that the violation caused prejudice." *United States v. Raya-Vaca*, 771 F.3d 1195, 1202 (9th Cir. 2014) (alterations in original) (quoting *United States v. Leon-Leon*, 35 F.3d 1428, 1431 (9th Cir. 1994)), *abrogated in part on other grounds by DHS v. Thuraissigiam*, 591 U.S. 103 (2020).

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 37 of 66



intensive, case-specific inquiry. Maj. at 12 (quoting *Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956)). Due process challenges to the adequacy of notice are analyzed under *Mullane*. As explained by *Jones*, *Mullane* held that "due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jones*, 547 U.S. at 226 (quoting *Mullane*, 339 U.S. at 314). The notice required must be "appropriate to the nature of the case," *id.* at 223 (quoting *Mullane*, 339 U.S. at 313), and "will vary with circumstances and conditions," *id.* at 227 (quoting *Walker*, 352 U.S. at 115). But even in *Jones*, the Court noted: "Due process does not require that a property owner receive actual notice before the government may take his property." *Id.* at 226.

*Jones* applies *Mullane*'s due process principles in the context of analyzing the notice required for the tax sale of real property. The State of Arkansas began tax delinquency proceedings against a house owned by Gary Jones. *Id.* at 223–25. Jones never received the certified letters sent by the State containing notice of his tax delinquency or notice of the "pendency of the action" against his property. *Id.* at 226. Those letters informed Jones that he had a right to redeem the property; that unless he redeemed the property, it would be subject to public sale two years later; and that absent any bids in the public sale, the property would be privately sold by the State. *Id.* at 223–24.

The *Jones* Court held that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* at 225. The Court did not hold that any time mail is

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 38 of 66



returned, due process always requires more, no matter what preceded the return. Rather, "[u]nder the circumstances presented" in Jones's tax sale case, the Court held that additional reasonable steps were required and "were available to the State." *Id.* These steps included "resend[ing] the notice by regular mail [instead of certified mail], so that a signature was not required"; "post[ing] notice on the front door"; and "address[ing] otherwise undeliverable mail to 'occupant.'" *Id.* at 234–35. But the State was not required to go so far as to "search[] for [Jones's] new address in the Little Rock phonebook and other government records such as income tax rolls." *Id.* at 235–36. The Court repeatedly cabined its holding to the facts of the case. *See, e.g.*, *id.* at 223 ("*Before a State may take property and sell it for unpaid taxes*, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" (emphasis added) (quoting *Mullane*, 339 U.S. at 313)); *id.* ("We granted certiorari to determine whether, *when notice of a tax sale is mailed to the owner and returned undelivered*, the government must take additional reasonable steps to provide notice before taking the owner's property." (emphasis added)); *id.* at 227 ("[D]ue process requires the government to do something more *before real property may be sold in a tax sale*." (emphasis added)); *id.* at 239 ("The Commissioner's effort to provide notice to Jones *of an impending tax sale of his house* was insufficient to satisfy due process *given the circumstances of this case*." (emphases added)).

The other cases cited in the majority's discussion of foundational precedent similarly apply *Mullane*'s due process principles to specific factual contexts. Maj. at 12–

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 39 of 66



13 (citing *Walker*, 352 U.S. at 116 (holding publication notice of condemnation constitutionally deficient when the landowner's name was known to the city); *Covey v. Town of Somers*, 351 U.S. 141, 146–47 (1956) (holding mailed notices of tax foreclosure constitutionally deficient when the property owner was known by the municipality to be mentally incompetent and without a guardian); *Robinson v. Hanrahan*, 409 U.S. 38, 40 (1972) (per curiam) (holding mailed notice of vehicle forfeiture proceedings constitutionally deficient when the car owner was known by the state to be in jail); *Greene v. Lindsey*, 456 U.S. 444, 453–55 (1982) (holding door-posted notice of eviction proceedings constitutionally deficient when process servers observed those postings "not infrequently" being torn down by children and others)).

As the majority recognizes, *Mullane*-*Jones* makes clear that across various factual contexts, due process does not require the government to effect *actual* notice. Maj. at 13. Rather, due process "requires only that the Government's effort be '*reasonably calculated*' to apprise a party of the pendency of the action." *Dusenbery v. United States*, 534 U.S. 161, 170 (2002) (emphasis added) (quoting *Mullane*, 339 U.S. at 315). And "[i]t is not [a court's] responsibility to prescribe the form of service that the [government] should adopt." *Jones*, 547 U.S. at 234 (first and third alterations in original) (quoting *Greene*, 456 U.S. at 455 n.9). The government can "defend the 'reasonableness and hence the constitutional validity of any chosen method . . . on the ground that it is in itself reasonably certain to inform those affected.'" *Dusenbery*, 534 U.S. at 170 (omission in original) (quoting *Mullane*, 339 U.S. at 315).

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 40 of 66



**B.**

I begin with the fact-intensive inquiry required by *Mullane-Jones*. First, the government knew that Rivera-Valdes had recently provided knowingly false information in an attempt to avoid deportation. These actions were likely criminal.[8] The government knew Rivera-Valdes had received recent *actual* notice of his deportation proceedings through personal service of the OSC, which was written and read to him in his primary language of Spanish. The mailed notices, including the notice providing the time and place of the hearing, were sent to the address printed on the OSC. Rivera-Valdes had confirmed this address to be correct *in person* at the INS office less than two months before the notices were mailed. He knew to expect mail about his deportation hearing at this address—having been specifically informed at the INS office, in written and spoken

[8] *See* 18 U.S.C. § 1001(a) (making a felony "knowingly and willfully[] (1) falsif[ying], conceal[ing], or cover[ing] up by any trick, scheme, or device a material fact; (2) mak[ing] any materially false, fictitious, or fraudulent statement or representation; or (3) mak[ing] or us[ing] any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry" in "any matter within the jurisdiction of the executive . . . branch of the Government of the United States"); *id.* § 1546(a) (making a felony "knowingly forg[ing], counterfeit[ing], alter[ing], or falsely mak[ing] any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, or utter[ing], us[ing], attempt[ing] to use, possess[ing], obtain[ing], accept[ing], or receiv[ing] any such . . . document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained").

Spanish, that a notice would be mailed *to this address* with the date of the hearing. He promised to update the INS with any change in address within five days. And he acknowledged that any notices would be mailed only to the *last* address he provided.

The majority makes much of the fact that unlike the version of the address used on the earlier, successfully delivered mailings regarding his asylum application and work authorization, the version of the address on the OSC and subsequent returned mailings omitted "Ave." from the street name. But the version missing "Ave." is the *last* address Rivera-Valdes confirmed, while in person at the INS office. Again, that is the address Rivera-Valdes corroborated was his address, and the address he acknowledged was the precise address to which future mailings about his upcoming deportation hearing would be mailed. Although the majority asserts that "[t]he OSC . . . omitt[ed] 'Ave.' from the address Rivera-Valdes had provided the agency," Maj. at 7–8, Rivera-Valdes does not dispute that he confirmed the address as it was typewritten on the OSC. Below and on appeal, Rivera-Valdes has not discussed or even noted the omission of "Ave." from the version of his address printed on the OSC and the returned mailings. When asked at oral argument whether "Ave." was a necessary part of the address, counsel for Rivera-Valdes answered, "I don't know." Oral Arg. at 18:37–19:22. In any case, this alleged discrepancy is not material to the relevant question here—whether Rivera-Valdes was provided the process due to him under the Fifth Amendment of the United States Constitution. Regardless of whether "Ave." should have been part of the addresses on the mailed notices, "mailed notice of petitioner's deportation hearing to the address given [by the petitioner as statutorily

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 42 of 66



required[9]] . . . was reasonably calculated to ensure that notice reached the petitioner." *Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir. 1997). And the return of the mailed notices occurred *after* Rivera-Valdes received actual notice of his impending deportation hearing. It is an important fact that the government knew that Rivera-Valdes had received actual notice.

In *Jones*, by contrast, the government knew that Jones never received actual notice of the impending tax sale. The return of the certified letters made the government aware that Jones had failed to receive notice of his tax delinquency, let alone notice of the "pendency of the action" against his property. 547 U.S. at 223–24, 226. Jones had furnished the address to which the notices were mailed when he took out the mortgage, 33 years before the first notice of the tax sale proceedings, and he paid off his mortgage—without any continued contact with the State—three years before that notice was mailed. *Id.* at 223–24. Rivera-Valdes, on the other hand, received actual notice of the pendency of his

[9] I do not argue that an intended recipient's "failure to comply with a statutory obligation to keep his address updated [per se] forfeits his right to constitutionally sufficient notice"—which *Jones* forecloses in the context of a tax sale. 547 U.S. at 232. Rather, as *Jones* makes clear, both the government and the intended recipient's compliance or noncompliance with statutory notice obligations, even in a tax sale case, are facts to be considered in the case-specific *Mullane-Jones* inquiry. *See id.* ("Ark. Code Ann. § 26-35-705 provides strong support for the Commissioner's argument that mailing a certified letter to Jones at 717 North Bryan Street was reasonably calculated to reach him . . . ."); *id.* at 236 ("An open-ended search for a new address—especially when the State obligates the taxpayer to keep his address updated with the tax collector—imposes burdens on the State significantly greater than the several relatively easy options outlined above." (citation omitted) (citing Ark. Code Ann. § 26-35-705)).

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 43 of 66



deportation proceedings and actual notice to expect notice of his deportation hearing: he confirmed the address to which the hearing notice would be mailed only a month-and-a-half before that notice was mailed.

The majority nevertheless contends that the notice provided Rivera-Valdes was constitutionally deficient because he "learned from the OSC that a deportation hearing would be forthcoming" but not its specific "date, time, or location." Maj. at 24. The majority quotes *Mullane* for the propositions that (1) "[t]he notice must . . . convey the required information," and (2) the notice "must afford a reasonable time for those interested to make their appearance." Maj. at 20, 24 (quoting *Mullane*, 339 U.S. at 314). For the proposition about conveying the required information, *Mullane* in turn cites *Grannis v. Ordean*, 234 U.S. 385 (1914), which held that the challenged notice "was in due form" when "it contained such notice of the commencement of the action and of its purpose, and such warning to appear and answer." *Id.* at 397. The OSC likewise conveyed the commencement of deportation proceedings,[10] the purpose of the proceedings,[11] and a

[10] "Upon inquiry conducted by the Immigration and Naturalization Service, it is alleged that: 1) You are not a citizen or national of the United States; 2) You are a native of Mexico and a citizen of Mexico; 3) You entered the United States at or near Nogales, Arizona on or about an unknown date in February 1993; 4[)] You were not then inspected by an immigration officer . . . . [O]n the basis of the foregoing allegations, it is charged that you are subject to deportation . . . ."

[11] "The Immigration and Naturalization Service believes that you are an alien not lawfully entitled to be in or to remain in the United States."

warning to appear.[12] For the proposition about affording reasonable time for interested parties to appear, *Mullane* cites *Roller v. Holly*, 176 U.S. 398 (1900), which held that the challenged notice—in affording the recipient in Virginia five days to appear in Texas in the late nineteenth century—violated due process. *Id.* at 408, 413. By contrast, the OSC required Rivera-Valdes to appear at a hearing at his local immigration court "scheduled no sooner than 14 days" from the date of service.[13] Thus, under these precedents, the OSC personally served on Rivera-Valdes (1) "convey[ed] the required information" and (2) "afford[ed] a reasonable time for [Rivera-Valdes] to make [his] appearance." *Mullane*, 339 U.S. at 314.

None of these cases hold that a party must always learn the specific "date, time, or location" of a forthcoming hearing for notice to pass constitutional muster.[14] Maj. at 24.

[12] "You are required to be present at your deportation hearing . . . . If you fail to appear at any hearing after having been given written notice of the date, time and location of your hearing, you will be ordered deported *in your absence* . . . ."

[13] "You will have a hearing before an immigration judge, scheduled no sooner than 14 days from the date you are served with this Order to Show Cause . . . ."

[14] In fact, each case stresses the need for flexibility to accommodate the specific circumstances at hand. *See Mullane*, 339 U.S. at 314–15 ("But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied."); *Grannis*, 234 U.S. at 395 ("'[D]ue process of law' does not require ideal accuracy."); *Roller*, 176 U.S. at 409 ("That a man is entitled to some notice before he can be deprived of his liberty or property is an axiom of the law . . . but upon the question of the length of such notice there is a singular dearth of judicial decision. It is manifest that the requirement of notice would be of no value whatever, unless such notice were reasonable and adequate for the purpose.").

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 45 of 66



As the majority acknowledges, the notice of deportation hearing that the government ultimately sent by certified mail to Rivera-Valdes *did* contain the date, time, and location of his hearing. Maj. at 8. And as the majority acknowledges, due process required only that this hearing notice be "reasonably calculated" to reach him—not that this notice *actually* reach him. *See* Maj. at 13 (citing *Dusenbery*, 534 U.S. at 170). Even in the context of deportation hearings, our precedents have never required actual notice to comport with due process. *Farhoud*, 122 F.3d at 796 ("An alien does not have to actually receive notice of a deportation hearing in order for the requirements of due process to be satisfied."); *accord Popa v. Holder*, 571 F.3d 890, 897 (9th Cir. 2009), *abrogated on other grounds by Pereira v. Sessions*, 585 U.S. 198 (2018).

The majority argues that Rivera-Valdes's actual notice to expect notice of his deportation hearing is akin to the inquiry notice rejected in *Jones*. Maj. at 25. This comparison is inapt. The *Jones* Court stated that "the common knowledge that property may become subject to government taking when taxes are not paid does not excuse the government from complying with its constitutional obligation of notice before taking private property." 547 U.S. at 232. But here Rivera-Valdes did not have to rely on any "common knowledge" of what might happen—he had actual knowledge that his deportation hearing notice would be mailed to the address that he confirmed on the OSC. This fact was printed and read aloud to him in his primary language of Spanish. That an "OSC d[oes] not itself trigger the scheduling of a hearing," Maj. at 25 n.5, is beside the point when *this* OSC informed Rivera-Valdes that "the Office of the Immigration Judge will mail a notice to the

address provided by respondent with the date of the hearing."

Relying on *Tu v. National Transportation Safety Board*, 470 F.3d 941 (9th Cir. 2006), the majority also argues that "notice of earlier steps in a proceeding" cannot "lessen[] the need to provide constitutionally adequate notice at later steps in a proceeding." Maj. at 25. But *Tu* concerned notices that "were not 'reasonably calculated to reach the intended recipient *when sent.*'" 470 F.3d at 946 (quoting *Jones*, 547 U.S. at 226). From earlier notices, the government there "kn[ew] that certified mail was ineffective to reach" the intended recipient but that "[f]irst class mail worked" to reach the recipient, having elicited his timely responses. *Id.* *Under these circumstances*, the government's sending by certified mail alone of the later notices at issue violated due process. *Id.* Here, by contrast, the hearing notice at issue was "reasonably calculated to reach the intended recipient *when sent*"—addressed to the very address that Rivera-Valdes had confirmed, just a month-and-a-half prior, as where he could be reached and where his hearing notice should be sent. *Id.* (quoting *Jones*, 547 U.S. at 226). The majority's attempted analogy to *Tu* therefore fails.

The Fifth Amendment, as relevant here, provides Rivera-Valdes with "due" process before government can deprive him of his "liberty." The above facts show beyond doubt that Rivera-Valdes received at least the process that he was due. Whatever would be the case if Rivera-Valdes had not been personally instructed as to his responsibilities shortly before the mailings, as he was here, is of no moment. Neither is whatever would be the case if he had furnished his address many years before (as in *Jones*), instead of about 50 days before. Under the circumstances presented here,

Rivera-Valdes has failed to show that he did not receive the process he was due.

## III.

In the wake of returned mail, the *Mullane*-*Jones* framework does not establish that due process *always* requires further action by the government—only that in some cases, further action is required, and then only if reasonable and doable. As explained above, the government provided Rivera-Valdes with constitutionally adequate notice despite the returned mail, which ends the due process inquiry. But even if the due process inquiry did not end there, Rivera-Valdes does not, and cannot, identify any *reasonable* steps to effect notice that the government should have undertaken following the returned notices.

### A.

*Jones* does not require further action whenever mailed notice is returned. The State of Arkansas had argued that returned mail should never require further action. *See Jones*, 547 U.S. at 237. Rejecting the State's arguments, the *Jones* Court held that "when mailed notice *of a tax sale* is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* at 225 (emphasis added). In so holding, however, the *Jones* Court did not adopt a categorical rule that returned mail *always* requires further action, or even that returned mail *always* requires the government to evaluate the practicability of further action. Rather, the *Jones* Court again endorsed a fact-specific approach, under which the "additional reasonable steps . . . available to the [government]" depend on "the circumstances presented" by a given case. *Id.* And *Jones* held only that what is required in *some* cases are

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 48 of 66



"*reasonable* additional steps." *Id.* at 234 (emphasis added). Indeed, "if there were no *reasonable* additional steps the government could have taken upon return of the unclaimed notice letter, it [could ]not be faulted for doing nothing." *Id.* (emphasis added).

In the majority's characterization of *Jones*, the government's knowledge that "its notice effort has not succeeded . . . triggers an obligation on the Government's part to take additional reasonable steps to effect notice, if it is practicable to do so." Maj. at 6 (citing *Jones*, 547 U.S. at 225); *see also* Maj. at 14–15 (quoting *Jones*, 547 U.S. at 230); Maj. at 20–21 (citing *Jones*, 547 U.S. at 234). According to the majority, returned mail *always* requires the government to at least consider whether further action is doable. As explained above, this is an overreading of *Jones*.

Moreover, the language about an "obligation" that is "triggered" is taken from the following passage in *Jones*, which describes two specific cases:

> Under *Robinson* and *Covey*, the government's knowledge that notice pursuant to the normal procedure was ineffective triggered an obligation on the government's part to take additional steps to effect notice. That knowledge was one of the "practicalities and peculiarities of the case," that the Court took into account in determining whether constitutional requirements were met. It should similarly

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 49 of 66



> be taken into account in assessing the adequacy of notice in this case.

547 U.S. at 230–31 (citation omitted) (quoting *Mullane*, 339 U.S. at 314). In *Covey*, the government knew the intended recipient of notice was incompetent and lacking a guardian, but it made "no attempt . . . to have a Committee appointed for her person or property until after entry of the judgment of foreclosure in this proceeding." 351 U.S. at 146. And in *Robinson*, the government knew the intended recipient of notice was in jail, but it "mailed notice of the pending forfeiture proceedings, not to the jail facility, but to [his] home address." 409 U.S. at 38. No circumstances like those are present in this case; indeed, the government here knew the intended recipient of notice had confirmed his address in person to government officials as recently as a month-and-a-half ago.

The Court's application of *Robinson* and *Covey* in *Jones* further highlights that the majority's per se rule conflicts with *Jones*. The Court emphasized:

> In prior cases [*Robinson* and *Covey*], we have required the government to consider *unique information about an intended recipient* regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case.

*Jones*, 547 U.S. at 230 (emphasis added). Thus, the Court emphasized unique facts about Jones himself: he had made mortgage payments for 30 years (during which the mortgage company paid his property taxes), *id.* at 223; after he paid off his mortgage, the property taxes went unpaid, *id.*; not

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 50 of 66



until three years into tax delinquency was he mailed a notice letter, which "was promptly returned" weeks later, *id.* at 231; and he would have had two years under Arkansas law to exercise his right to redeem his property, *id.* It is those unique facts that triggered the government's further obligation in those three cases, not merely the returned mail. Unlike the unique facts in *Robinson*, *Covey*, and *Jones*, nothing about the "unique" facts here undercut that the steps taken by the government were constitutionally adequate despite the returned mail.[15]

---

[15] The government correctly points out that not only is the per se rule the majority establishes inconsistent with *Jones*, but it also has significant negative practical consequences:

> [T]he backdrop of *Jones* is "quite different" because a property owner has no reason to ignore an imminent tax sale of his property while an unlawful entrant has "obvious reasons" to avoid his deportation hearing; requiring "additional steps" would reward evasion of service.

Response to Pet. for Panel Reh'g & Reh'g En Banc at 4, Dkt. 54. Requiring the analysis for additional steps every time an immigration notice is returned would indeed reward evasion of service.

The "unique" facts here make the government's point. As discussed, Rivera-Valdes likely committed criminal acts in an effort to avoid deportation, including presenting the government a forged birth certificate and an asylum application consisting of false statements. This is the reverse of the unique circumstances present in *Jones*, *Robinson*, and *Covey*. Those three individuals had no incentive not to learn of the proceedings, and every incentive to learn. Rivera-Valdes had every incentive to avoid his deportation proceeding, and to ignore or fail to claim mail. While this factual difference does not "diminish his due process right," Maj. at 26 n.6, it does mean that returned mail *in this case*

### B.

If I am correct that Rivera-Valdes was afforded constitutionally adequate notice, despite the returned mail, and irrespective of what subsequently occurred, that ends the due process inquiry. But even if I am wrong, to the extent that Rivera-Valdes has not forfeited the argument that the government could have done something more after the mailed notices were returned,[16] this argument is unavailing. Again, under certain circumstances (which, as I argue above, are not present here), *Jones* requires "additional reasonable steps." 547 U.S. at 234. And the something more needs to be reasonable, not just doable.

The examples of something more offered by the majority and Rivera-Valdes on appeal are not reasonable *given the facts here*. In 1994, the government possessed no other information about Rivera-Valdes's whereabouts besides the one address of record—which he had corroborated in person at the INS office a month-and-a-half before the notices were mailed. The returned notices themselves did not reveal any

---

was not a unique circumstance requiring the government to do anything further.

One can imagine similar types of unique facts in the deportation context and other contexts featuring incentives to evade service. Simply put, as *Jones* makes clear, there can be no per se rules. And if there are no per se rules, Rivera-Valdes cannot possibly succeed in his challenge, given his unique facts.

[16] While the parties and district court did not address *Jones* below, the district court asked counsel for Rivera-Valdes at the hearing on the motion to dismiss: "[W]hat else should the Government have done . . . if they did not receive any written change of address from your client, other than send it to the last known address?" Rivera-Valdes did not offer any information or argument about what more the government could have done.

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 52 of 66



"new information" about where or how Rivera-Valdes could be reached, which could have in turn advised the government on what additional steps might be "reasonable in response." *Id.* Thus, there were no "*reasonable* additional steps" toward effecting notice that due process required the government to take. *Id.* (emphasis added). Without even considering what steps would be reasonable under the circumstances presented here, the majority remands for further factfinding on the practicability of "possible alternative[]" methods of notice, including those that it and Rivera-Valdes have proposed.[17] Maj. at 27. This remedy is misplaced.

Citing *Jones*, Rivera-Valdes argues that the government could have "easily undertaken" the additional step of posting notice on his front door. But the notices were returned undeliverable and unclaimed from the address Rivera-Valdes had just confirmed in person to INS officials about 50 days earlier. That hardly suggests posting a notice on the door of the same address would be reasonable. Rather, Rivera-Valdes's own recent interactions at the INS office show that effecting such a posting was not a reasonable additional step, even if possible. I do not claim that such a step would never be appropriate or required were the facts different. But given the facts outlined above, posting a notice was not reasonable.[18]

[17] The district court should not even reach what alternatives were practicable, because even if certain additional steps were practicable, they were not reasonable.

[18] Similarly, despite Rivera-Valdes's argument otherwise, the *Jones* Court's suggestion to address undeliverable mail to "occupant" does not fit this case, which involves not real property interests of an unknown

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 53 of 66



Again quoting *Jones*, Rivera-Valdes contends the government could have taken the additional step of resending the notice by regular mail. Under the circumstances here, a *third* mailed notice was not reasonable. The facts of *Jones* highlight why: in that case, two notices were returned, both sent by certified mail to Jones's address on record. 547 U.S. at 223–24. To address the possibility that Jones had not been home to provide the signature required for certified mail, the Court deemed reasonable the additional step of resending the notice to the same address by regular mail. *Id.* at 234. The Court reasoned that "[w]hat steps are reasonable in response to new information [about the effectiveness of attempted notice] depends upon what the new information reveals." *Id.*; *see id.* at 231. Here, by contrast, the first notice returned was sent by regular mail, while the second was sent by certified mail. Resending a notice by regular mail after that method had just failed would not be a reasonable response to the supposed new information revealed by the returned certified mail.[19]

occupant but due process interests of a specific noncitizen facing removal.

[19] Citing *Tu*, the majority suggests that the government could have resent the notice by first class mail. Maj. at 28. As explained above, based on earlier notices sent by both certified and first class mail, the government's information about the effectiveness of attempted notice in *Tu* included the "know[ledge] [that] certified mail would not reach [the intended recipient], *whereas first class mail would*." 470 F.3d at 942 (emphasis added). Although the government here likewise used two methods of mail, regular and certified, it did not know that one method would not reach Rivera-Valdes, while the other method would. Both methods had resulted in returned mail.

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 54 of 66



Citing *Echavarria v. Pitts*, 641 F.3d 92 (5th Cir. 2011), both Rivera-Valdes and the majority propose checking his A-file as a reasonable additional step that the government could have taken. Oral Arg. at 15:58–16:20, 21:37–21:40; Maj. at 27–28. But *Echavarria* concerned notice to bond obligors who posted bond to secure the release of immigrant detainees and whose later notices of bond demands were returned as undeliverable. 641 F.3d at 93. The Fifth Circuit held that the district court did not err in finding that reasonable steps under *Mullane*-*Jones* included "reference to . . . the A-file of the bonded immigrant for alternate contact information" for the obligor. *Id.* at 96 (footnote omitted). For Rivera-Valdes, however, there was no alternate point of contact or address potentially at issue. As in *Jones*, the circumstances of this case did not require the government to conduct "[a]n open-ended search for a new address" for Rivera-Valdes—even in other records readily accessible to the government (like the income tax rolls in *Jones* or the A-file here)—"especially when the [government] obligate[d] the [intended recipient] to keep his address updated" with the relevant agency and the government had no reason to believe the recipient had moved. 547 U.S. at 236. To the extent that the majority suggests that checking the A-file would have been an additional reasonable step to "correct" the "discrepancy between the addresses in the record" (i.e., the missing "Ave."), Maj. at 27–28, this proposal improperly moves the goalposts of the due process analysis from reasonably calculated notice to actual notice.

Indeed, nothing in the record could have made the government aware in 1994 that Rivera-Valdes might have been reached at a different address or through a different method. Rivera-Valdes does not dispute that he provided

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 55 of 66



only one address to the INS. And Rivera-Valdes does not dispute that he confirmed to INS officials that he could be reached at this address when personally served with the OSC—only a month-and-a-half before the notices were mailed. At oral argument, when asked if the record contained any evidence of where the government could have reached Rivera-Valdes in the weeks between when he confirmed his address at the INS office and when his deportation hearing took place, counsel for Rivera-Valdes conceded that such evidence "was not proffered." Oral Arg. at 2:49–3:17. Rivera-Valdes's 2020 declaration in support of his motion to dismiss states that he never received actual notice of his deportation hearing, but it contains no facts about how the mailed notices were in any way problematic—for instance, that he was no longer living at the address he had confirmed on the OSC or that he was not at home during business hours to sign for certified mail. And when asked at oral argument what new evidence Rivera-Valdes might seek to introduce on remand, his counsel did not identify any specific evidence.[20] Oral Arg. at 55:04–56:58. The majority's "remand to allow the district court to determine if the agency had other practicable alternatives through which to attempt notice on Rivera-Valdes" is therefore unnecessary.[21] Maj. at 26–27. As *Jones* contemplated, this is a case where "there were no *reasonable*

[20] Although the majority characterizes the government as "not meaningfully disput[ing] Rivera-Valdes's factual assertions," Maj. at 11, the government *does* dispute Rivera-Valdes's ability to develop additional facts on remand relevant to the due process analysis.

[21] Again, the district court should not reach what alternatives were practicable, because even if certain additional steps were practicable, they were not reasonable.

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 56 of 66



additional steps the government could have taken" in the wake of returned mail. 547 U.S. at 234 (emphasis added).

**IV.**

For the reasons above, Rivera-Valdes cannot show that the notice of his deportation proceedings violated due process. But even if Rivera-Valdes establishes a due process violation, that would not end the inquiry in his favor. As the majority recognizes, Rivera-Valdes would then have to "demonstrate that he is entitled to relief under the other prongs of collateral attack: prejudice, administrative exhaustion, and deprivation of judicial review."[22] Maj. at 29. Under 8 U.S.C. § 1326(d), Rivera-Valdes must show (1) the entry of his removal order was "fundamentally unfair"; (2) he "exhausted any administrative remedies that may have been available"; and (3) he was "deprived . . . of the opportunity for judicial review." 8 U.S.C. § 1326(d); *see United States v. Palomar-Santiago*, 593 U.S. 321, 329 (2021). All three prongs are mandatory. *Palomar-Santiago*, 593 U.S. at 329; *United States v. Nunez Sanchez*, 140 F.4th 1157, 1163 (9th Cir. 2025).

"An underlying removal order is 'fundamentally unfair' if: (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Martinez-Hernandez*, 932 F.3d 1198, 1203 (9th Cir. 2019) (quoting *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004)). To show prejudice, Rivera-Valdes

[22] Because the district court ended its § 1326(d) analysis after finding no due process violation, the majority declines to reach prejudice in the first instance. Maj. at 29. But "[w]e may affirm on any basis supported by the record." *Fisher v. Kealoha*, 855 F.3d 1067, 1069 (9th Cir. 2017) (per curiam).

"'does not have to show that he actually would have been granted relief,' but 'that he had a "plausible" ground for relief from deportation.'" *United States v. Melendez-Castro*, 671 F.3d 950, 955 (9th Cir. 2012) (per curiam) (citation omitted) (quoting *Ubaldo-Figueroa*, 364 F.3d at 1050). This "burden . . . rests with the defendant." *United States v. Valdez-Novoa*, 780 F.3d 906, 917 (9th Cir. 2015).

Rivera-Valdes cannot show any prejudice resulting from the allegedly deficient notice. To argue otherwise, he maintains that there was a plausible basis that he would have been granted voluntary departure at his 1994 deportation hearing. "To be eligible for voluntary departure, an alien must show in part that he has been a person of good moral character for the five years immediately preceding his application for voluntary departure." *Khourassany v. INS*, 208 F.3d 1096, 1101 (9th Cir. 2000). It is undisputed that within the year of his deportation hearing, Rivera-Valdes admitted filing a false asylum application and presenting a false and fraudulent birth certificate to the INS. And again, Rivera-Valdes did not simply lie about being Guatemalan; he submitted an application with a tale of joining the guerillas against his will, facing the murders of his brothers by the Guatemalan military, and fearing that the Guatemalan guerillas would "hunt [him] down and kill [him]."

Rivera-Valdes's admission to immigration fraud renders it (at best) implausible that he would have received a discretionary grant of voluntary departure. *Cf. Ahir v. Mukasey*, 527 F.3d 912, 916 (9th Cir. 2008) (noting "an alien found to have 'knowingly made a frivolous application for asylum' . . . becomes 'permanently ineligible for any benefits'" under the Immigration and Nationality Act, so a finding of a frivolous asylum claim requires an immigration judge, "[b]y operation of [law], . . . to deny [the petitioner's]

applications for adjustment of status and voluntary departure" (quoting 8 U.S.C. § 1158(d)(6))); *Limsico v. INS*, 951 F.2d 210, 215 (9th Cir. 1991) (finding petitioner's sworn testimony admitting to marriage fraud "would obviously factor into any discretionary determination concerning possible relief from deportation"). The parties dispute whether Rivera-Valdes's admission amounted to an admission of the commission of a crime of moral turpitude, which would have rendered him statutorily ineligible for a finding of good moral character, and thus ineligible for voluntary departure.[23] 8 U.S.C. § 1101(f)(3); *id.* § 1182(a)(2)(A)(i)(I). But statutory eligibility aside, the next step in determining the plausibility of voluntary departure would be to weigh the "negative and positive equities" in Rivera-Valdes's case as of 1994. *Valdez-Novoa*, 780 F.3d at 917. "The negative equities include 'the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident,'" while "[t]he positive equities 'are compensating elements such as long residence here, close family ties in the United States, or humanitarian needs.'" *Id.* (quoting *Matter of Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (B.I.A. 1999)). The undisputed fact of Rivera-Valdes's immigration fraud (and the details of that

[23] The offense of "knowingly and willfully . . . mak[ing] any false, fictitious or fraudulent statements or representations," or "us[ing] any false writing or document knowing [it] to contain any false, fictitious or fraudulent statement"—"in any matter within the jurisdiction" of the federal government—is a crime involving moral turpitude. *Matter of Pinzon*, 26 I. & N. Dec. 189, 194 n.1, 195 (B.I.A. 2013) (quoting 18 U.S.C. § 1001 (1994)).

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 59 of 66



fraud) constitutes a very significant negative equity. Both below and on appeal, he has proffered no countervailing positive equities. I find none in the record. I also note that in 1994, Rivera-Valdes had been in the United States for only about a year, and had no immediate family in the United States.

Rivera-Valdes fails to cite, and I cannot find, a single case in which a similarly situated noncitizen received voluntary departure. And we have even held that "the existence of a single case that is arguably on point means only that it is 'possible' or 'conceivable' that a similarly situated alien would be afforded voluntary departure," which "is plainly insufficient" to show prejudice. *Id.* at 920.

Because Rivera-Valdes cannot show a due process violation or resulting prejudice, he cannot establish that his 1994 deportation order was "fundamentally unfair." 8 U.S.C. § 1326(d)(3). Thus, § 1326(d) bars any collateral attack on his removal order.

**V.**

(1) The government provided Rivera-Valdes with constitutionally adequate notice of his deportation proceedings. (2) Rivera-Valdes cannot show that the government could have taken additional reasonable steps toward effecting notice after the mailed notices were returned. (3) Rivera-Valdes cannot establish prejudice from the alleged due process violation as required under § 1326(d), precluding any collateral attack on his removal order. For each of these three independent and sufficient reasons, I would affirm the district court's denial of Rivera-Valdes's motion to dismiss the indictment. I therefore respectfully dissent.

# APPENDIX

**U.S. Department of Justice**
Immigration and Naturalization Service

Order to Show Cause and Notice of Hearing

# ORDER TO SHOW CAUSE AND NOTICE OF HEARING
## *(ORDEN DE PRESENTAR MOTIVOS JUSTIFICANTES Y AVISO DE AUDIENCIA)*

***In Deportation Proceedings under section 242 of the Immigration and Nationality Act.***
***(En los trámites de deportación a tenor de la sección 242 de la Ley de Inmigración y Nacionalidad.)***

**United States of America:**
**(Estados Unidos de América:)**

**File No.** A72 697 680
***(No. de registro)***

**Dated** March 3, 1994
**(Fechada)**

In the matter of *(En el asunto de)*: Leopoldo RIVERA-Valdes (Respondent) *(Demandado)*

Address *(Dirección)*: 4037 N Cleveland
Portland, Oregon 97212

Telephone No. (Area Code) *(No. de teléfono y código de área)*:

Upon inquiry conducted by the Immigration and Naturalization Service, it is alleged that:
*(Según las indagaciones realizadas por el Servicio de Inmigración y Naturalización, se alega que:)*

1) You are not a citizen or national of the United States;
*(Ud. no es ciudadano o nacional de los Estados Unidos)*

2) You are a native of *(Ud. es nativo de)* Mexico and a citizen of *(y ciudadano de)* Mexico;

3) You entered the United States at or near *(Ud. entró a los Estados Unidos en o cerca de)* Nogales, Arizona on or about *(el día o hacia esa fecha)* an unknown date in February 1993 (fecha desconocido en Febrero 1993);

4. You were not then inspected by an immigration officer.
Ud. no fue inspeccionado entonces por un funcionario de inmigracion.

RECEIVED APR 21 PM 12:17 ... JUSTICE

EXHIBIT 1
AUG 12 1994
IMMIGRATION JUDGE

Form I-221 (Rev. 6/12/92) N

**U.S. Department of Justice**
Immigration and Naturalization Service

Order to Show Cause and Notice of Hearing

## NOTICE OF RIGHTS AND CONSEQUENCES

**The Immigration and Naturalization Service believes that you are an alien not lawfully entitled to be in or to remain in the United States. Read this notice carefully and ask questions about anything in this notice you do not understand. This notice identifies your rights as an alien in deportation proceedings, and your obligations and the conditions with which you must comply in order to protect your eligibility to be considered for certain benefits.**

Any statement you make before an Immigration Officer may be used against you in any immigration or administrative proceeding.

You may be represented, at no expense to the United States government, by an attorney or other individual who is authorized and qualified to represent persons in these proceedings. You will be given a list of organizations, attorneys and other persons who have indicated their availability to represent aliens in these proceedings. Some of these persons may represent you free of charge or for a nominal fee. You may also be represented by a friend, relative, or other person having a pre-existing relationship with you, provided his or her appearance is permitted by the immigration judge.

You will have a hearing before an immigration judge, scheduled **no sooner than 14 days from the date you are served with this Order to Show Cause (unless you request in writing an earlier hearing date).** The fourteen-day period is to allow you to seek an attorney or representative, if you desire to be represented. At your hearing, you will be given the opportunity to admit or deny any or all of the allegations in this Order to Show Cause, and whether you are deportable on the charges set forth herein. You will have an opportunity to present evidence and/or witnesses on your own behalf, to examine evidence presented by the government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the government. Any document that you present that is in a foreign language must be accompanied by a certified English translation. It is your responsibility to ensure that any witnesses you wish to present on your own behalf be present at the hearing.

The immigration judge will advise you regarding relief from deportation for which you may be eligible. You will be given a reasonable opportunity to make an application for any such relief. If you are not satisfied with the decision of the immigration judge, you have the right to appeal. The immigration judge will provide you with your appeal rights.

## AVISO DE DERECHOS Y CONSECUENCIAS

**El Servicio de Inmigración y Naturalización opina que Ud. es un extranjero sin derecho legal a estar o permanecer en los Estados Unidos. Lea este aviso cuidadosamente y pregunte acerca de cualquier parte del mismo que no entienda. Este aviso le explica los derechos que tiene como extranjero en los trámites de deportación, y las obligaciones y condiciones que debe cumplir con el fin de proteger su derecho a que se le considere para recibir ciertos beneficios.**

Las declaraciones que haga ante un funcionario del Servicio de Inmigración podrán usarse en su contra en cualquier trámite administrativo o de inmigración.

Ud. puede ser representado, sin costo alguno para el gobierno de los Estados Unidos, por un abogado o otra persona autorizada y calificada para representar personas en estos trámites. Ud. recibirá una lista de las entidades, abogados y demás personas dispuestas a representar a extranjeros en estos trámites. Algunas de esas personas pueden representarle gratuitamente o por honorarios nominales. También puede representarle un amigo, familiar o otra persona con la que tenga una relación establecida, siempre que el juez de inmigración permita su comparecencia.

Ud. tendrá una audiencia ante un juez de inmigración, fijada **con un mínimo de 14 días a partir de la fecha que se le expidio esta Orden (a menos que Ud. solicite por escrito una audiencia en plazo aún menor).** El plazo de catorce días le permitirá conseguir los servicios de un abogado o representante, si lo desea. En la audiencia se le dará la oportunidad de admitir o negar cualquiera de los alegatos de esta Orden o todos ellos, y se le informará si está sujeto a deportación por los cargos expresados en la misma. Ud. tendrá la oportunidad de presentar pruebas y testigos a favor suyo, de examinar las pruebas presentadas por el gobierno, de oponerse, con base en los razonamientos legales pertinentes, a la admisión de pruebas y de interrogar a cualquier testigo del gobierno. Todo documento que presente en un idioma extranjero debe ir acompañado de una traducción certificada al inglés. Sera responsabilidad suya asegurarse de que cualquier testigo suyo comparesca a la audiencia.

El juez de inmigración le informará sobre los recursos de deportación a los que tenga derecho y se le dará una oportunidad adecuada para solicitarlos. Si no está de acuerdo con la decisión del juez, puede apelarla. El juez de inmigración le informará acerca de sus derechos de apelación.

**U.S. Department of Justice**
Immigration and Naturalization Service

Order to Show Cause and Notice of Hearing

Continuation Sheet
*(Hoja complementaria)*

Dated *(Fechada)* March 3, 1994

Respondent *(Demandado)* Leopoldo RIVERA-Valdes

File No. *(No. de registro)* A72 697 680

**AND** on the basis of the foregoing allegations, it is charged that you are subject to deportation pursuant to the following provision(s) of law:
*(Y según los alegatos anteriores, se le acusa de estar sujeto a deportación de acuerdo con la(s) siguiente(s) disposicion(es) de la ley:)*

Section 241 (a)(1)(B) of the Immigration and Nationality Act (Act) as ammended, in that you entered the United States without inspection.

Secion 241 (a)(1)(B) de la Ley de Inmigracion y Nacionalidad (INA), segun enmendada, en que Ud. entro a los Estados Unidos sin inspeccion)

*See attachment page
Vea Pagina adjunta

**WHEREFORE, YOU ARE ORDERED** to appear for a hearing before an Immigration Judge of the Executive Office for Immigration Review of the United States Department of Justice at:
***(POR LO CUAL, SE LE ORDENA** comparecer ante un juez de inmigración de la Oficina Ejecutiva de Revisión de Inmigración del Departamento de Justicia de los Estados Unidos en:)*

Address *(Dirección)* to be calendared and notice provided by the Office of the Immigration Judge (La Oficina del juez de inmigracion enviara un aviso a la direccion facilitada por demandado con la fecha de la Audiencia)

On *(Fecha)* _______ at *(Hora)* _______ .m.

and show cause why you should not be deported from the United States on the charge(s) set forth above.
*(y mostrar motivos justificantes por cual no deberia ser deportado de los Estados Unidos por los cargos expresados anteriormente.)*

Dated *(Fechada)* March 3, 1994

Signature of Issuing Officer *(Firma del funcionario que la expide)* [signature] Joseph H. Shaffer

City and State of Issuance *(Ciudad y Estado donde se expide)* Portland, Oregon

Title of Issuing Officer *(Titulo del funcionario que la expide)* Assistant District Director, Investigations

**You are required to be present at your deportation hearing prepared to proceed.** If you fail to appear at any hearing after having been given written notice of the date, time and location of your hearing, you will be ordered deported ***in your absence***, if it is established that you are deportable and you have been provided the appropriate notice of the hearing.

You are required by law to provide immediately in writing an address (and telephone number, if any) where you can be contacted. You are required to provide written notice, within five (5) days, of any change in your address or telephone number to the office of the Immigration Judge listed in this notice. Any notices will be mailed only to the last address provided by you. If you are represented, notice will be sent to your representative. If you fail to appear at the scheduled deportation hearing, you will be ordered deported ***in your absence*** if it is established that you are deportable and you have been provided the appropriate notice of the hearing.

If you are ordered deported ***in your absence***, you cannot seek to have that order rescinded except that: (a) you may file a motion to reopen the hearing within 180 days after the date of the order if you are able to show that your failure to appear was because of exceptional circumstances, or (b) you may file a motion to reopen at any time after the date of the order if you can show that you did not receive written notice of your hearing and you had provided your address and telephone number (or any changes of your address or telephone number) as required, or that you were incarcerated and did not appear at your hearing through no fault of your own. If you choose to seek judicial review of a deportation order entered ***in your absence***, you must file the petition for review within 60 days (30 days if you are convicted of an aggravated felony) after the date of the final order, and the review shall be confined to the issues of validity of the notice provided to you, the reasons for your failure to appear at your hearing, and whether the government established that you are deportable.

In addition to the above, if you are ordered deported ***in your absence***, you are ineligible for five (5) years from the date of the final order for the following relief from deportation: voluntary departure under section 242 (b) of the Immigration and Nationality Act (INA); suspension of deportation or voluntary departure under section 244 of the INA; and adjustment of status under sections 245, 248, and 249 of the INA.

**The copy of this Order to Show Cause served upon you is evidence of your alien registration while you are under deportation proceedings. The law requires that you carry it with you at all times.**

**Está obligado a asistir a la audiencia de deportación y de estar preparado para ella.** Si no asiste a cualquiera de las audiencias después de haber sido notificado por escrito de la fecha, hora y lugar de la audiencia, se ordenará su deportación **en su ausencia**, si se establece que puede ser deportado y que recibió los avisos correspondientes.

La ley le obliga a informar inmediatamente por escrito de su domicilio (y número de teléfono, de haberlo) donde pueda ser localizado. Tiene la obligación de notificar por escrito, en el plazo de cinco (5) días, cualquier cambio de domicilio o de teléfono a la oficina del juez de inmigración que aparece en este aviso. Los avisos se enviarán solamente a la última dirección facilitada por Ud. Si ha decidido tener un representante, se enviarán los avisos a dicha persona. Si no asiste a cualquiera de las audiencias después de haber sido notificado por escrito de la fecha, hora y lugar de las mismas, se ordenará su deportación **en su ausencia**, si se establece que puede ser deportado y que recibió el aviso de la audiencia.

Si se ordena su deportación **en su ausencia**, no podrá solicitar la anulación de esa orden salvo que: a) pueda presentar un pedimento para tener otra audiencia en el plazo de 180 días después de la fecha de la orden si puede demostrar que no compareció debido a circunstancias excepcionales, o b) puede presentar un pedimento para tener otra audiencia en cualquier momento después de la fecha de la orden si puede demostrar que no recibió el aviso de la audiencia por escrito y que había facilitado su dirección y número de teléfono (o notificado los cambios de dirección o número de teléfono) según lo previsto, o que estaba encarcelado y no compareció a la audiencia por motivos ajenos a su voluntad. Si decide solicitar una revisión judicial de la orden de deportación **en su ausencia**, debe presentar la solicitud de revisión en el plazo de 60 días (30 días si ha sido condenado por un delito grave con agravantes) a partir de la fecha de la orden definitiva, y la revisión se limitará a decidir si el aviso que recibió es válido, las razones por las cuales no compareció a la audiencia y si el gobierno demostró que puede ser deportado.

Además de lo anterior, si se ordena su deportación **en su ausencia**, no podrá, en el plazo de cinco años después de la fecha de la orden definitiva, tener derecho a los siguientes recursos: salida voluntaria según la sección 242 (b) de la ley de Inmigración y Nacionalidad (INA); suspensión de la deportación o de la salida voluntaria según la sección 244 de la INA, y ajuste de condición según las secciones 245, 248, y 249 de la INA.

**Esta copia de la Orden de Presentar Motivos Justificantes que le ha sido notificada constituye la prueba de su registro de extranjero mientras se llevan a cabo los trámites para su deportación. La ley le exige que la lleve consigo en todo momento.**

This Order to Show Cause shall be filed with the Immigration Judge of the Executive Office for Immigration Review at the address provided below. You must report any changes of your address or telephone number in writing to this office:

Debe presentar esta Orden de Presentar Motivos Justificantes a la Oficina Ejecutiva de Revisión de Inmigración en la siguiente dirección. Debe notificar cualquier cambio de su domicilio o número de teléfono por escrito a:

**The Office of the Immigration Judge**

1000 2nd Ave, Suite 3150

Seattle, WA 98104

**Certificate of Translation and Oral Notice**

This Order to Show Cause ☒ was ☐ was not read to the named alien in the Spanish language, which is his/her native language or a language which he/she understands.

Mar. 3, 1994 — Date

Kelley Slaughter — Signature

Kelley Slaughter — Printed Name and Title of Translator

Address of Translator (if other than INS employee) or office location and division (if INS employee)

(If oral notice was not provided please explain)

| Manner of Service | Alien's Right Thumb Print |
|---|---|
| ☒ Personal Service to Alien<br>☐ Certified Mail - Return Receipt Requested<br>☐ Alien<br>☐ Counsel of Record | [redacted] |

**Certificate of Service**

This Order to Show Cause was served by me at Portland, OR on March 3 19 94 at 4:00 p m.

Kelley Slaughter — Officer's Signature

Kelley Slaughter — Printed Name

S/A — Title

POO — Office

Leopoldo Rivera Valdes

Alien's Signature (acknowledgment/receipt of this form)
*(Firma de extranjero/acuse de recibo)*

**Request for Prompt Hearing and Waiver of 14-Day Minimum Period**
***(Solicitud de audiencia inmediata y renuncia al plazo mínimo de 14 días)***

To expedite determination of my case, I request an immediate hearing, and waive my right to the 14 day notice.
*(Para agilizar la decisión sobre mi caso, solicito una audiencia inmediata y renuncio a mi derecho a un plazo mínimo de 14 días.)*

Signature of Respondent
*(Firma de demandado)*

Date
*(Fecha)*

Form I-221 (Rev. 6/12/92) N

Case: 21-30177, 09/18/2025, ID: 12938937, DktEntry: 79-1, Page 66 of 66



FORREST, Circuit Judge, joined by MILLER, Circuit Judge, dissenting:

I agree that *Jones v. Flowers* applies to immigration proceedings and, therefore, when the government learned that its attempt to notify Leopoldo Rivera-Valdes of his removal hearing failed, it was required to "take additional reasonable steps to attempt to provide notice" of the hearing to Rivera-Valdes, if "practicable to do so." 547 U.S. 220, 225 (2006). But under the facts presented here, there were no such steps available to the government, as Judge Bennett explains. I also agree with Judge Bennett that Rivera-Valdes cannot satisfy other requirements for collaterally attacking his removal order. Accordingly, I disagree with the majority's decision to vacate the district court's denial of Rivera-Valdes's motion to dismiss his indictment charging him with illegal reentry, and I join Parts III.B and IV of Judge Bennett's dissent.